IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

KENNEDY J. HYDE,

                Plaintiff,

                                      Civ. Action No.
       v.                            5:12-CV-0295 (NAM/DEP)


GKN AEROSPACE,

                  Defendant.


_____

APPEARANCES:

KENNEDY J. HYDE, *Pro Se*
14 College Street
Hamilton, New York 13346

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


<u>REPORT, RECOMMENDATION AND ORDER</u>

     Plaintiff Kennedy J. Hyde, who is proceeding *pro se* and seeks leave

to proceed in this matter *in forma pauperis* ("IFP") as well as appointment

of *pro bono* counsel, has commenced this employment discrimination

action, pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C.

§ 2000e *et seq.* ("Title VII"), as well as under the Age Discrimination in

Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*,

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,

and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,

additionally asserting claims under 42 U.S.C. §§ 1981 and the Family

Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

Having afforded plaintiff the deference to which he is entitled as a

*pro se* litigant and liberally construed his pleading, I have nonetheless

concluded that although plaintiff's IFP application will be granted, his

request for appointment of *pro bono* counsel will be denied without

prejudice, and his complaint should be dismissed as failing to state a

cause of action.

I.     <u>BACKGROUND</u>[1]

The facts alleged in plaintiff's complaint are rather sparse.  It

appears that prior to August 2009, plaintiff was employed by defendant

---

[1]     In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the court's initial review.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

2

GKN Aerospace ("GKN") in its information technology ("IT") department.[2]
Complaint (Dkt. No. 1) § 4.  According to plaintiff, in April 2009 Sheila
Foster became the chief financial officer of GKN and "began directing IT
staff in areas that violated company policies along with State and/or
Federal law."  *Id.*  The complaint alleges that beginning in June 2009,
Adam Wauligman began harassing IT employees in connection with their
job duties.  *Id.*  Plaintiff reported the harassment to human resources
personnel within GKN, but claims that the harassment continued.  *Id.*
Eventually, plaintiff reports, the frequency of the harassment declined,
although it did not completely subside.  *See id.*

Plaintiff also alleges that in July 2009 he made a request of his
employer under the FMLA for medical leave in relation to surgery that had
yet to be scheduled.  Complaint (Dkt. No. 1) Attachment.  Plaintiff was
unable to identify the specific dates for which he was requesting leave or
complete the necessary FMLA paperwork until he received a date for the
surgery.  *See id.*  It appears that the surgery was eventually scheduled for

---

[2]      Plaintiff states in his IFP application, however, that he was an "IT
contractor prior to severe injury in February 2011, thus limiting types of employment."
IFP Application (Dkt. No. 2) ¶ 2.

3

August 21, 2009.[3]  *See id.*

On August 20, 2009, plaintiff's employment at GKN was terminated, and he was advised that his position was being eliminated and he was being "laid off".  *See* Complaint (Dkt. No. 1) Attachment.  Nonetheless, plaintiff claims, shortly after his termination a younger employee was hired to replace him.  *See id.*

II.    PROCEDURAL HISTORY

Plaintiff filed his complaint, accompanied by an application to proceed *in forma pauperis*, on February 17, 2012.  Dkt. Nos. 1 and 2.  Thereafter, plaintiff made two separate requests to the court for appointment of *pro bono* counsel.  Dkt. Nos. 3 and 4.  Though prepared utilizing a form civil rights complaint for alleging claims under 42 U.S.C. § 1983, plaintiff's complaint does not reference that statute in its body, and does not appear to allege a claim under that section.  Instead, in a rather cursory manner, the complaint advances three separate causes of action relating to alleged discrimination in his employment with defendant, all under different federal statutes.  Encompassed within those causes of action, however, it appears, that plaintiff may also be asserting, as

---

[3]        It is unclear whether plaintiff ever informed defendant of this fact.

4

pendent claims, state law violations including under the New York Human

Rights Law, N.Y. Exec. Law Article 15, as well as for breach of contract.

Plaintiff also makes reference to being denied leave time and other

employment benefits, without alleging violation of any specific statutory or

common law right.[4]

III.   DISCUSSION

   A.   *In Forma Pauperis* Application

   As to plaintiff's *in forma pauperis* request, after a careful review of

that application, the court finds that he qualifies for IFP status.  Plaintiff's

request for permission to proceed *in forma pauperis* in this action will

therefore be granted.

   B.   Standard of Review

   Having found that plaintiff meets the financial criteria for

commencing this case *in forma pauperis*, the court must consider the

sufficiency of the allegations set forth in his pleading in light of 28 U.S.C. §

1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in

forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the

---

   [4]      It is therefore unclear whether plaintiff seeks to pursue a separate claim
for these alleged denials.

court determines that – . . . (B) the action . . . (I) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B).  Thus, the court has a gatekeeping responsibility
to determine that a complaint may be properly maintained in this district
before it may permit a plaintiff to proceed with an action *in forma pauperis*.
*See id.*

In deciding whether a complaint states a colorable claim a court
must extend a certain measure of deference toward *pro se* litigants,
*Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and
extreme caution should be exercised in ordering *sua sponte* dismissal of a
*pro se* complaint before the adverse party has been served and the
parties have had an opportunity to respond, *Anderson v. Coughlin*, 700
F.2d 37, 41 (1983).  There is, nonetheless, an obligation on the part of the
court to determine that a claim is not frivolous before permitting a plaintiff
to proceed.  *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221
F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint
*sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee);
*Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (district court

6

has power to dismiss case *sua sponte* for failure to state a claim).

"Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (Burns J.) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831 (1989) and *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[5]

When reviewing a complaint under section 1915(e), the court may also look to the Federal Rule of Civil Procedure 8.  That rule provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]" Fed.R.Civ.P. 8(a)(2).  The purpose of Rule 8 is to ensure that a complaint "'give[s] fair notice of the claim being asserted so as to permit the adverse

---

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

party the opportunity to file a responsive answer [and] prepare an adequate defense.'"  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  (citing *Twombly*, 550 U.S. at 555, 127 S. Ct.1955).  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id.* at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

Employment discrimination claims are subject to the standards set forth in *Twombly* and *Iqbal*.  *See Hooper v. Cnty. of Onondaga Dist. Attorney*, No. 5:08-CV-0603, 2008 WL2705477, at *2 (Mordue, C.J. & Lowe, M.J.) (N.D.N.Y. Jul. 9, 2008) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 122 S. Ct. 992 (2002)).  While "an employment discrimination plaintiff need not plead a prima face case of discrimination", *Swierkiewicz*, 534 U.S. at 506, 122 S. Ct. 992, he or she must still give fair notice of the basis of his or her discrimination claims and those claims must be facially plausible.  *Chang v. City of New York*, No. 11 Civ. 7062(PACP)(JLC), 2012 WL 1188427, at *3-4 (S.D.N.Y. Apr. 10, 2012).

Upon careful review of plaintiff's complaint in light of these standards, for the reasons discussed below, I recommend dismissal.

C.    Title VII

Plaintiff's Title VII claim, which is set forth in the first cause of action, is not plausibly stated.  Title VII of the Civil Rights Act makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her]

9

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a); *see also Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 436 (2d Cir. 1999) (citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006).  "In the context of an alleged discriminatory discharge, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination."  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (citing *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (citation omitted)).

At the outset, plaintiff has not alleged specific dates, or the events that occurred which give rise to his claim of discrimination.  Moreover, though he generally alleges employment discrimination, Hyde's complaint does not identify the specific position that he held before his termination and assert that he was qualified for the position, nor does it specifically aver that he was discharged or subjected to some other discriminatory employment practice because of his race, religion, gender, or other

protected class.  As such, plaintiff has failed to allege a *prima facie* claim of employment discrimination based upon a disparate treatment theory. *Chang*, 2012 WL 1188427, at *3-4.

Plaintiff's complaint does not specifically claim a violation of Title VII based upon a theory of hostile work environment.  Broadly construed, however, it may well be that plaintiff is attempting to pursue a hostile work environment claim.  To establish such a claim, a plaintiff must show that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult, that [wa]s sufficiently severe or pervasive to alter the conditions of the victim's employment."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (citation and internal quotations omitted).  Again, the basis for plaintiff's discrimination claim is not entirely clear, though it appears that he is claiming he was subjected to harassment, potentially based upon his membership in a class protected by Title VII.[6]  Assuming this to be the case, plaintiff seems to contend that he was subjected to repeated incidents of harassment, but alleges no specific instances or facts showing that he was subjected to omnipresent discriminatory

---

[6]     Plaintiff is advised that Title VII does not protect against disability discrimination.  *Bragg v. Buffalo Mun. Civil Service Comm'n*, No. 92-CV-823A, 1995 WL322559, at *3 (W.D.N.Y. May 24, 1995).

intimidation in his employment with the defendant, and perhaps most significantly, and there are no allegations of fact giving rise to a plausible claim that this harassment was based upon his race, religion, gender, or other protected class.[7]

For all of the foregoing reasons, I have concluded that plaintiff has failed to sufficiently state a claim for employment discrimination under Title VII and therefore recommend that that claim be dismissed for this merit-based reason.

I note further that plaintiff's complaint fails to establish the threshold requirement that he pursued his claim of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") before commencing this action.  It is well established that a plaintiff alleging discrimination in employment under Title VII must file a charge of discrimination with and obtain a right to sue letter from the EEOC before proceeding in federal district court.  *Pietras v. Bd. of Fire Comm'rs*, 180 F.3d 468, 474 (2d Cir. 1999) (holding notice of right to sue letter is a

---

[7]        The court has considered the possibility that plaintiff has attempted to state a retaliation claim based upon his complaints of harassment to GKN human resource personnel.  Such a claim, however, is not plausibly alleged based upon plaintiff's failure to set forth facts demonstrating that he suffered from an adverse action causally connected to his protected complaint activity.

12

precondition to bring a Title VII action); *see also Sank v. City Univ. of New York*, 1995 WL 314696, *5 (S.D.N.Y. May 24, 1995) (filing a charge with the EEOC is a prerequisite to a private civil action under Title VII and the Americans with Disabilities Act); *see also* 42 U.S.C. 12117 (adopting for claims under Title I of the ADA the administrative exhaustion requirement of Title VII codified at 42 U.S.C.2000e-5); *Bent v. Mount Sinai Medical Ctr.*, 882 F. Supp. 353, 355 (S.D.N.Y. 1995) (dismissing a complaint under the ADA for lack of subject matter jurisdiction where the plaintiff failed to file a charge with the EEOC).

There are no allegations in plaintiff's complaint suggesting that he filed a claim with the EEOC and received a right to sue letter.  Plaintiff is advised that if my recommendation is adopted in full and he is afforded leave to amend, should he choose to do so he should include allegations regarding his required EEOC filing and attach a copy of a right to sue letter to his amended complaint.

D.    Section 1981

Plaintiff's second cause of action is alleged under section 1981. That section protects equal rights, providing that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and

13

> enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.  In order to establish a claim under section 1981, a plaintiff must allege facts showing 1) membership in a racial minority, 2) an intent by the defendant to discriminate on the basis of race, and, 3) discrimination concerning at least one of the activities enumerated in the statute such as the making and enforcing of contracts, filing suit and being sued, or giving evidence.  *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085 (2d Cir. 1993) (citation omitted).  "[N]aked assertions of racial motivation will not suffice to state a cause of action" under section 1981.  *Boomer v. Bruno*, 134 F. Supp. 2d 262, 269 (N.D.N.Y. 2001) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994)).  Instead, a plaintiff must allege specific "events claimed to constitute intentional discrimination as well as the circumstances giving rise to a plausible inference of racially discriminatory intent."  *Yusuf*, 35 F.3d at 713 (citations omitted).  Additionally, the plaintiff must allege that similarly situated persons were treated differently.  *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

Plaintiff's section 1981 claim fails on its face.  Again, plaintiff has not alleged membership in a racial minority, and the complaint is utterly devoid of any facts demonstrating specific occurrences giving rise to a plausible inference that he was subjected to intentional discrimination based on his race.  As a result, plaintiff has failed to state a plausible claim under section 1981, and I therefore recommend dismissal of that claim as well.

E.    Claims under the ADEA, ADA, Rehabilitation Act and FMLA

Plaintiff's third cause of action, though briefly stated, seems to implicate the ADEA, the ADA and Rehabilitation Act, and the FMLA.

The ADEA "makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Chang*, 2012 WL 1188427, at *5 (quoting 29 U.S.C. § 623(a)(1)).  To sufficiently state an age discrimination claim the plaintiff must allege that "'he was a member of a protected class, his employer took an adverse employment action against him, and this action occurred under circumstances from which a discriminatory motivation can be inferred.'"  *Id.* (quoting *Shamilov*

*v. Human Res. Admin.*, No. 10 Civ. 8745(PKC), 2011 WL 6085550, at *7 (S.D.N.Y. Dec. 6, 2011)) (citation omitted).  Individuals over the age of 40 are in a protected class for purposes of the ADEA.  *Hooper*, 2008 WL 2705477, at *2 (citing 29 U.S.C. § 631(a)).  The plaintiff must further allege facts suggesting that his age "actually motivated the employer's decision and had a determinative influence on the outcome.  *Id*. (internal quotations and citations omitted).

Plaintiff alleges only that after he was terminated a younger person was "retained as a replacement."  Complaint (Dkt. No. 1) Attachment. Plaintiff does not allege that he is in a protected class, nor does he set forth any facts plausibly suggesting that his employment was terminated on the basis of his age.  Plaintiff has therefore failed to allege a plausible claim for age discrimination under the ADEA.

Turning to plaintiff's claims under the ADA and Rehabilitation Act, to establish a *prima facie* case of discrimination under the ADA in circumstances such as those now presented, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA;[8] (3) he could perform the essential

---

[8]      The ADA defines "disability" as:

functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability." *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149-50 (2d Cir.1998) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir.1998) (citations omitted)). If the plaintiff's claim is premised upon an employer's alleged failure to reasonably accommodate the plaintiff's alleged disability, rather than termination alone, then the plaintiff must demonstrate that her employer refused to make such accommodation. *Parker v. Columbia Pictures Indus.*, 203 F.3d 326, 332 (2d Cir. 2000).

Section 504 of the Rehabilitation Act, similarly provides that "no otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his

---

(A)   a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B)   a record of such an impairment; or

(C)   being regarded as having such an impairment.

42 U.S.C. § 12102(2). The regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Notably, though "working" is deemed a "major life activity," it has been held that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994) (citation omitted), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095 (1995).

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794; *see also Hedges v. Town of Madison*, No. 3:09CV1468, 2010 WL1279071, *5 (D.Conn. Mar. 30, 2010), *aff'd in part and reversed in part*, 2012 WL101199 (2d Cir. 2012). "A person may be disabled under the Rehabilitation Act if they are disabled under the ADA." *Hedges*, 2012 WL 101199, at *2 (citing 29 U.S.C. § 705(2)(A)).

Plaintiff has not identified a disability from which he suffers. Nor has he alleged any facts establishing that he was fired due to a disability as that term is defined by the ADA or the Rehabilitation Act. As a result, he has failed to allege a plausible claim under these statutes, and I therefore recommend that these claims be dismissed. *See Hedges*, 2010 WL 1279071, *5.

The final potential claim that can be gleaned from plaintiff's complaint arises under the FMLA. The FMLA requires employers to grant leave to an eligible employee when that employee suffers a serious health condition that makes him or her unable to perform the functions of his or her position. 29 U.S.C. § 2612(D). "To prevail on a claim under the

18

FMLA, the employee must show that the employer interfered with, restrained, or denied the exercise of his FMLA rights."[9]  *Alessi v. Monroe Cnty.*, No. 07-CV-6163, 2010 WL 161488, at * 7 (W.D.N.Y. Jan. 13, 2010) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155 (2002) (in turn citing 29 U.S.C. §§ 2615, 2617)).  More specifically, to prevail the plaintiff must show that 1) he is an eligible employee under the FMLA; 2) the defendant is a covered employer under that Act; 3) he was entitled to take leave; 4) he gave notice to the defendant of his intention to take leave; and, 5) he was denied benefits to which he was entitled.  *Alessi*, 2010 WL 161488, at * 8 (citing *Matya v. Dexter Corp.*, 2006 WL 931870, at *10 (W.D.N.Y. 2006); *Brown v. Pension Boards*, 488 F. Supp. 2d 395, 408 (S.D.N.Y.2007)).

When liberally construing plaintiff's complaint and affording him the special leniency to which he is entitled as a *pro se* litigant, it appears that he may be attempting to allege an FLMA retaliation claim, a claim that

---

[9]      29 U.S.C. § 2617 provides for civil actions by employees claiming a violation of section 2617.  "To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Section 2617 provides no relief, however, unless the employee has been prejudiced by the violation.  *Alessi*, 2010 WL 16148, at *7 n.3.

would be subject to the same type of analysis as those previously addressed in this report and recommendation.  *See Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 175-76 (2d Cir. 2006).  In that regard, plaintiff again would have to show that "(1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Alessi*, 2010 WL 161488, at *9 (citing *Sista*, 445 F.3d at 176).  Because plaintiff has plausibly alleged facts supporting these elements, I have concluded that he has not sufficiently alleged a claim under the FMLA and therefore recommend that that claim also be dismissed.

> E.   Leave to Amend

Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to amend his or her complaint.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir.1999). Affording plaintiff the deference to which he is entitled as a *pro se* litigant, I recommend that in the event the action is dismissed, plaintiff be permitted to amend his complaint in effort to state plausible claims.

In the event that leave to amend is granted and plaintiff chooses to

avail himself of that opportunity, he is advised that any such amended complaint, which will supersede and replace in its entirety the previous complaint filed by plaintiff, *see Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999) (citing *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994)); Fed. R. Civ. P. 10(a), must contain a caption that clearly identifies, by name, each individual or entity that plaintiff is suing in the present lawsuit, and must bear the case number assigned to this action.  Significantly, the body of plaintiff's complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph.  Fed. R. Civ. P. 10(b).  I further recommend that unless the plaintiff files such an amended complaint within thirty days from the date of the filing of any decision and order adopting my recommendation in full, his complaint be dismissed without further order of the court.

     F.    Appointment of *Pro Bono* Counsel

The court next addresses plaintiff's request for appointment of *pro bono* counsel.  In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In deciding whether to appoint counsel, the court should first determine whether the indigent's position

21

seems likely to be of substance.  If the claim meets this threshold

requirement, the court should then consider a number of other relevant

factors in making its determination.  *Terminate Control Corp.*, 28 F.3d at

1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).

As a prerequisite to requesting appointment of *pro bono* counsel, a

party must first demonstrate that he is unable to obtain counsel through

the private sector or public interest firms.  *Cooper v. A. Sargenti Co., Inc.*,

877 F.2d 170, 173-74 (2d Cir. 1989) (quoting *Hodge v. Police Officers*,

802 F.2d 58, 61) (2d Cir. 1986)).  Plaintiff appears to have satisfied this

initial requirement.

Based on my review of the limited, available materials I conclude

that plaintiff is not entitled to appointment of counsel under the applicable

statute at this time.  28 U.S.C. § 1915(e)(1) affords district courts broad –

though not limitless – discretion in determining whether to appoint counsel

to represent indigent civil litigants.  *Hodge*, 802 F.2d at 60.  In *Hodge*, the

Second Circuit noted that when exercising that discretion the court

> should first determine whether the indigent's
> position seems likely to be of substance.  If the
> claim meets this threshold requirement, the court
> should then consider the indigent's ability to
> investigate the crucial facts, whether conflicting
> evidence implicating the need for cross-

> examination will be the major proof presented to
> the fact finder, the indigent's ability to present the
> case, the complexity of the legal issues and any
> special reason in th[e] case why appointment of
> counsel would be more likely to lead to a just
> determination.

*Id.* at 61-62; *see also Terminate Control Corp. v. Horowitz*, 28 F.3d 1335,

1341 (2d Cir. 1994) (citing *Hodge*).  As can be seen, of the criteria

enunciated by the Second Circuit to be considered when determining

whether assignment of *pro bono* counsel is appropriate, the most

important is the merits – that is, "whether the indigent's position [is] likely

to be of substance."  *Cooper*, 877 F.2d at 172 (citations and internal

quotations omitted).  Where a plaintiff does not provide a court with

evidence, as opposed to mere allegations, relating to his or her claims,

that party does not meet this threshold requirement.  *See Harmon v.

Runyon*, No. 96 CIV. 6080, 1997 WL 118379, at *1 (S.D.N.Y. Mar. 17,

1997).

　　　This action has only recently been commenced, and I am

recommending dismissal of the plaintiff's complaint in its entirety based

upon my finding that he has failed to state a plausible claim.  As a result,

plaintiff's request for appointment of *pro bono* counsel will be denied as

premature to the extent that it has yet to be seen whether he will indeed

pursue these claims, and based upon the court's inability to determine whether his claims are likely to be of substance.  Plaintiff's application will therefore be denied at this time.

IV.   <u>CONCLUSION</u>

Plaintiff broadly asserts claims of employment discrimination, and arguably retaliation, under various federal statutes.  From a careful review of the scant allegations in plaintiff's complaint, even when broadly construed, however, it seems clear that plaintiff has failed to state even a single plausible claim for relief.  Nonetheless, at this early juncture, I am unable to conclude that if given the opportunity to amend his complaint plaintiff would not be able to do so.  For all of the foregoing reasons, it is therefore hereby respectfully

RECOMMENDED that plaintiff's complaint be DISMISSED in its entirety, with leave to file an amended complaint within thirty days of any decision and order adopting my recommendation in full, and that upon his failure to do so that the clerk dismiss the action without further order of the court.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.

 FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

 It is hereby ORDERED that plaintiff's application to proceed *in forma*

*pauperis* (Dkt. No. 2) be GRANTED; and it is further,

 ORDERED that plaintiff's motion for appointment of *pro bono*

counsel (Dkt. Nos. 3 and 6) be DENIED; and it is further,

 ORDERED that the clerk of the court serve a copy of this report,

recommendation, and order upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated: April 27, 2012
   Syracuse, NY



Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At*

> *2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* Spencer v. Doe, 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See* Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See* United States v. One Parcel Of Property Located At 414 Kings Hwy., 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See* United States v. One Parcel Of Property Located At 414 Kings Hwy., No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

2. *Due Process*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing sale of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

> is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

> is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546) ]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

END OF DOCUMENT



Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,
v.
Christopher ARTUZ, Warden Philip Coombe,
Commissioner Sergeant Ambrosino Doctor Manion
Defendants.
No. 95 CIV. 4768(JSR).

Nov. 30, 1998.

Mr. Theodore Hudson, Great Meadow Correctional
Facility, Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New
York.

### MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action
pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's
complaint alleges defendants violated his constitutional
rights while he was an inmate at Green Haven
Correctional Facility.[FN1] Plaintiff's complaint was
dismissed *sua sponte* by Judge Thomas P. Griesa on June
26, 1995 pursuant to 28 U.S.C. § 1915(d). On September
26, 1995, the Second Circuit Court of Appeals vacated the
judgment and remanded the case to the district court for
further proceedings.

> FN1. Plaintiff is presently incarcerated at
> Sullivan Correctional Facility.

The case was reassigned to Judge Barbara S. Jones on
January 31, 1996. Defendants moved to dismiss the
complaint pursuant to Fed.R.Civ.P. 12(c) on November
25, 1996. Thereafter, the case was reassigned to Judge Jed
S. Rakoff on February 26, 1997. On February 26, 1998,
Judge Rakoff granted defendants' motion to dismiss, but
vacated the judgment on April 10, 1998 in response to
plaintiff's motion for reconsideration in which plaintiff

claimed that he never received defendants' motion to
dismiss.

By Judge Rakoff's Order dated April 14, 1998, this
case was referred to me for general pretrial purposes and
for a Report and Recommendation on any dispositive
motion. Presently pending is defendants' renewed motion
to dismiss. Plaintiff filed a reply on July 6, 1998. For the
reasons discussed below, plaintiff's complaint is dismissed
without prejudice, and plaintiff is granted leave to replead
within thirty (30) days of the date of the entry of this
order.

### FACTS

Plaintiff alleges that he was assaulted by four inmates
in the Green Haven Correctional Facility mess hall on
March 14, 1995. (Complaint at 4.) He alleges that he was
struck with a pipe and a fork while in the "pop room"
between 6:00 p.m. and 6:30 p.m. (Complaint at 4–5.)
Plaintiff contends that the attack left him with 11 stitches
in his head, chronic headaches, nightmares, and pain in his
arm, shoulder, and back. (*Id.*) Plaintiff also states that
Sergeant Ambrosino "failed to secure [the] area and
separate" him from his attackers. (Reply at 5.) Plaintiff's
claim against Warden Artuz is that he "fail [sic] to qualify
as warden." (Complaint at 4.) Plaintiff names
Commissioner Coombes as a defendant, alleging Coombes
"fail [sic] to appoint a qualified warden over security."
(Amended Complaint at 5.) Plaintiff further alleges that
Dr. Manion refused to give him pain medication.
(Complaint at 5.) Plaintiff seeks to "prevent violent
crimes" and demands $6,000,000 in damages. (Amended
Complaint at 5.)

Defendants moved to dismiss the complaint, arguing
that: (1) the Eleventh Amendment bars suit against state
defendants for money damages; (2) the plaintiff's
allegations fail to state a claim for a constitutional
violation; (3) the defendants are qualifiedly immune from
damages; and (4) plaintiff must exhaust his administrative
remedies before bringing this suit.

### DISCUSSION

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

I find that plaintiff's complaint runs afoul of Rules 8 and 10 of the Federal Rules of Civil Procedure and dismiss the complaint without prejudice and with leave to amend. Federal Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C.1977)); see Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

**2** Rule 10 of the Federal Rules of Civil Procedure requires, inter alia, that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. Moore's Federal Practice, Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. Id.[FN2] The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." Sandler v. Capanna, 92 Civ. 4838, 1992 WL 392597, *3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1323 at 735 (1990)).

FN2. Rule 10 states:

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. Id.; see also Salahuddin v. Cuomo, 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. In those cases in which the court dismisses a pro se complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v.. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a pro se litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. See Salahuddin, 861 F.2d at 42–42; see also Doe v. City of New York, No. 97 Civ. 420, 1997 WL 124214, at *2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's pro se complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

S.D.N.Y.,1998.

Hudson v. Artuz
Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2008 WL 2705477 (N.D.N.Y.)

(Cite as: 2008 WL 2705477 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.
Pamela J. HOOPER, Plaintiff,
v.
COUNTY OF ONONDAGA DISTRICT ATTORNEY,
Defendant.
No. 5:08-CV-0603 (NAM).

July 9, 2008.
Pamela J. Hooper, Syracuse, NY, pro se.

*ORDER*

NORMAN A. MORDUE, Chief Judge.

**\*1** The above matter comes to me following a Report-Recommendation by Magistrate Judge George H. Lowe, duly filed on the 18th day of June 2008. Following ten days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report-Recommendation, and no objections having been submitted thereto, it is

ORDERED, that:

1. The Report-Recommendation is hereby approved.

2. Plaintiff's complaint (Dkt. No. 1) is dismissed for failure to state a claim. Plaintiff may file an amended complaint on or before **August 8, 2008.** If plaintiff fails to file an amended complaint on or before August 8, 2008, the Clerk shall enter judgment dismissing this action without further order of this court.

3. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

IT IS SO ORDERED.

*REPORT AND RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

The Clerk has sent to the Court for review a *pro se* complaint submitted for filing by Plaintiff, together with an application to proceed *in forma pauperis*. (Dkt. Nos. 1 and 2.)

The Complaint is quite difficult to interpret. Plaintiff used the form complaint for an action under the Age Discrimination in Employment Act ("ADEA"). By checking various boxes and filling in blanks on the form, she alleges that Defendant failed to employ her, terminated her employment, failed to promote her, imposed unequal terms and conditions of employment, reduced her wages, retaliated against her and committed other acts of "false indictments, entrapment of (B) and he engaged in other criminal activities to purpose & recklessly injure, deaths involved." (Dkt. No. 1 at 2.) In a handwritten 14-page attachment, Plaintiff appears to allege that she and her children were the victims of an elaborate conspiracy between county employees. The employees allegedly hired Plaintiff, fired her, subjected her and her family to surveillance by aircraft, murdered various people, bugged Plaintiff's phone, rendered her son deaf, falsely arrested either Plaintiff or someone in her family, and falsely accused her of being mentally ill.

Plaintiff filed a similar complaint in this court in 2004, which was *sua sponte* dismissed as frivolous with leave to amend. Plaintiff did not amend her complaint and the case was dismissed. *Hooper v. Tyann,* Case No. 5:04-CV-0599 (NAM/GHL).

Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that-... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[FN1] Thus, the court has a responsibility to determine that a complaint may be

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2705477 (N.D.N.Y.)

(Cite as: 2008 WL 2705477 (N.D.N.Y.))

properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis.*[FN2] *See id.* Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. See e.g. Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

> FN1. In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

> FN2. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327.

*2 Plaintiff's action is frivolous and fails to state a claim for age discrimination. The Supreme Court has held that, under the notice system of pleading established by the Federal Rules of Civil Procedure, "an employment discrimination plaintiff need not plead a prima facie case of discrimination." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002). Under Rule 8(a)(2), the pleading requirement is satisfied by "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz,* 534 U.S. at 512. Plaintiff's Complaint does not satisfy this standard. It is neither short nor plain nor designed to give Defendant fair notice of Plaintiff's claims.

Moreover, the face of the Complaint conclusively

demonstrates that Plaintiff will not, at a later stage in the litigation, be able to establish a prima facie case. "A prima facie case of age discrimination requires that plaintiffs demonstrate membership in a protected class, qualification for their position, an adverse employment action, and circumstances that support an inference of age discrimination." *Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir.2007). The "protected class" for ADEA purposes is "individuals who are at least 40 years of age." 29 U.S.C. § 631(a) (1999). The Complaint states that Plaintiff was 32 when the alleged discriminatory acts occurred. (Dkt. No. 1 at ¶ 8(b).) Plaintiff is therefore not a member of a protected class.

In addition to the problems noted above, to the extent that the Complaint alleges that Defendant wrongly prosecuted Plaintiff or a member of her family, Defendant is immune. "[P]rosecutors are absolutely immune from liability" in matters involving the prosecution of or the failure to prosecute individuals. *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (prosecutorial immunity covers virtually all acts, regardless of motivation, associated with the prosecutor's function, including conspiracies to present false evidence); *Schloss v. Bouse,* 876 F.2d 287, 290 (2d Cir.1995) (prosecutor protected by absolute immunity in suit challenging failure to prosecute).

Plaintiff's Complaint, in addition to failing to state a claim under the ADEA and naming a Defendant who is at least partially immune, does not state a claim for any other violation of Plaintiff's constitutional or statutory rights. Therefore, the pleading, as presented to this Court, cannot be supported by an arguable basis in law and should be dismissed pursuant to 28 U.S.C. § 1915(e).

Should Plaintiff claim that this action should not be dismissed, she is directed to file an amended Complaint *within thirty (30) days* of the filing date of any Order adopting this Report and Recommendation. Any amended Complaint, *which shall supersede and replace in its entirety Plaintiff's original Complaint,* must allege claims of misconduct or wrongdoing against the Defendant which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction.

*3 **WHEREFORE,** it is hereby

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2705477 (N.D.N.Y.)

(Cite as: 2008 WL 2705477 (N.D.N.Y.))

END OF DOCUMENT

**ORDERED,** that Plaintiff's *in forma pauperis* application is granted; [FN3] and it is further RECOMMENDED, that Plaintiff's Complaint (Dkt. No. 1) be dismissed for failure to state a claim; and it is further

> [FN3.] Plaintiff should note that although the application to proceed *in forma pauperis* has been granted, Plaintiff will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

**RECOMMENDED,** that Plaintiff may file an amended Complaint **within thirty (30) days** of the filing date of any Order adopting this Report and Recommendation, and it is further

**RECOMMENDED,** that if Plaintiff fails to timely file an amended Complaint, the Clerk shall enter judgment dismissing this action without further order of this Court due to Plaintiff's failure to comply with the terms of any Order adopting this Report and Recommendation, and it is further

**RECOMMENDED,** that upon the filing of Plaintiff's amended Complaint, the file in this matter be returned to the Court for further review, and it is further

**ORDERED,** that the Clerk serve a copy of this Order and Report and Recommendation on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2008.

Hooper v. County Of Onondaga Dist. Atty.
Not Reported in F.Supp.2d, 2008 WL 2705477 (N.D.N.Y.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.
Peter CHANG, Plaintiff,
v.
CITY OF NEW YORK DEPARTMENT FOR THE
AGING, Defendant.
No. 11 Civ. 7062(PAC)(JLC).

April 10, 2012.
*REPORT AND RECOMMENDATION*

JAMES L. COTT, United States Magistrate Judge.

**\*1 To The Honorable Paul A. Crotty, United States District Judge:**

Plaintiff Peter Chang ("Chang"), a former accountant employed by the New York City Department for the Aging ("the agency"), has brought this action *pro se* pursuant to federal, state, and local law alleging that he was discriminated against based on his race and age. The agency has moved to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) Chang has failed to plead facts sufficient to state plausible claims of discrimination under federal law; and (2) the state and local law claims are barred by Chang's election of remedies. For the reasons that follow, I recommend that the motion be granted.

**I.** *Background*

A. *Chang's Complaint*

The following facts are taken from the pro se form Complaint and the documents attached thereto that Chang filed on October 6, 2011 ("Compl.") (Doc. No. 1), and are accepted as true for purposes of this motion.<sup>FN1</sup> Chang was hired by the agency in 1996 and was employed as an accountant. *See* Attachment to Part B of Complaint ("Compl.Attachment"); *see also* Declaration of Assistant Corporation Counsel Adam E. Collyer dated December

29, 2011 ("Collyer Dec") (Doc. No. 9), Exhibit A, at 1 (N.Y.SDHR Determination and Order After Investigation dated May 31, 2011, Case No. 10147684). On August 19, 2010, Chang received a negative evaluation from his supervisor, Jean Pierre, which he appealed. Compl. Attachment. Chang's appeal was rejected, and he then filed a second appeal. *Id.*

> **FN1.** When deciding a 12(b)(6) motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). However, the court may also rely upon "documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010) (citations omitted). The court can also consider "matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (citation and quotation marks omitted).

On September 22, 2010, Chang received a "Notice and Statement of Charges" from the director of human resources at the agency allegedly criticizing him for violating the agency's code of conduct. *Id.*<sup>FN2</sup> Chang challenged this Notice, contending that the charges "related [to a] minor mistake that had been corrected." *Id.*

> **FN2.** Chang's Complaint says this occurred on September 22, 2011, but given that all of the other facts alleged occurred in 2010, this appears to be an error.

On October 8, 2010, Chang was given an informal conference regarding these charges, and was informed he was to be suspended without pay for five days. *Id.* Chang appealed this decision immediately. *Id.* On December 24, 2010, before any final decision had been made on his appeal, Chang resigned from the agency, claiming that he

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))

did so due to "constant harassment [which] was impacting [his] health negatively." *Id.,*

B. *Procedural History*

On March 29, 2011, Chang filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging that the agency had discriminated against him on the basis of his race and age. Collyer Dec, Exh. A, at 1. On May 31, 2011, after an investigation, the NYSDHR issued a "no probable cause" determination with respect to Chang's complaint. *Id.* Specifically, the NYSDHR found that Chang's retaliation charges against the agency were "not based upon protected activity," that his "voluntary resignation does not bear any of the marks of a constructive discharge[,]" and that his complaint was dismissed "[b]ased on the lack of evidence of discrimination." *Id.* at 2. On July 8, 2011, the United States Equal Employment Opportunity Commission issued a right to sue notice to Chang, advising that it had "adopted the findings of the [NYSDHR] that investigated the charge." FN3

> FN3. The EEOC Dismissal and Notice of Rights dated July 8, 2011 is attached to the Complaint.

**\*2** Chang commenced this suit on October 6, 2011. In his Complaint, he alleges that the charges the agency brought against him in August and September, 2010 were prosecuted in an effort to force him to resign, and he alleges that he was "forced to resign because [he is] Asian, and 67 years old and opposed discrimination." Compl. Attachment. In filling out the form pro se employment discrimination complaint, Chang checked off Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, and the New York City Human Rights Law, as the basis for his Complaint.

The agency moved to dismiss the Complaint on December 29, 2011 pursuant to Rule 12(b)(6) (Doc. No. 8).FN4 In its motion, it argues that the federal claims contained in the Complaint fail to state a claim because Chang has not alleged a plausible claim of employment discrimination. *See* Memorandum of Law In Support Defendant's Motion to Dismiss the Complaint dated December 29, 2011 ("Def.Mem.") (Doc. No. 10), at 5–8.

In particular, the agency contends that Chang has failed to meet the required pleading standard because he has acknowledged that he has not performed his duties in a satisfactory manner, *id.* at 5, and even if he had, his pleading is "entirely insufficient" because it "offers no dates, times, or actual events that occurred to plaintiff that could be construed as discriminatory, or that any of the alleged actions were motivated by his race." *Id.* at 6. In addition, the agency argues that Chang has not sufficiently pled that it took any qualifying adverse employment action against him, since he fails to allege that he was demoted or terminated as a result of a negative evaluation. *Id.* As to Chang's age discrimination claim, the agency contends that Chang has failed to allege a sufficient causal connection between any adverse employment action and his age. *Id.* at 7.

> FN4. While the agency moved solely under Rule 12(b)(6), it should have also moved under Rule 12(b)(1) as to its arguments with respect to the state and local claims, since it is arguing that the Court lacks subject matter jurisdiction as to them due to the election of remedies doctrine. *See, e.g., Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (granting Rule 12(b)(1) motion when state and local claims barred by election of remedies provisions). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence outside the pleadings. *Id.* at 223.

As to the state and local claims, the agency argues that they are barred by Chang's election of remedies. *Id.* at 8–9. In particular, because Chang elected to make his allegations with the NYSDHR, the agency contends that Chang is precluded as a matter of law from bringing claims in federal court under the state or city human rights law. *Id.* at 9.FN5

> FN5. The agency's reply brief essentially repeats these arguments (Doc. No. 14).

Chang filed an affirmation in opposition to the motion to dismiss dated February 14, 2012 ("Chang Aff.") (Doc. No. 13). In his affirmation, he asserts that the agency violated the Constitution and human rights law by

Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))

discriminating against him on the basis of race and age, and retaliated against him as well. Chang Aff. at 2. Chang acknowledges that he was not suspended for five days because he filed an appeal, and ultimately resigned from employment with the agency, claiming he had been forced to quit due to "an intolerable and hostile working environment." *Id.*[FN6]

> [FN6.] Chang also filed a memorandum of law in opposition to the motion attached to his affirmation.

Following the submission of the motion, the Court held a conference on March 13, 2012 to discuss the motion, as well as the possibility of settlement, (*See* Doc. No. 15). Having determined that the case could not be settled, the Court asked Chang to state on the record exactly what his claims were so that there was a complete record of them. *See* Transcript of Proceedings ("Tr.") dated March 13, 2012, at 4. After reviewing a number of prior incidents that he alleged demonstrated mistreatment, Chang set forth the following regarding the circumstances that allegedly occurred in 2010 giving rise to his Complaint:

> **\*3** And finally, finally in 2010, during the September [sic], I received a [sic] evaluation, the evaluation. I believe that evaluation is not based on whatever I preferred to my job because I always prefer my job in the same situation and the best server.

> And, also, I always provide service to help to other employees and to do the job, but the [sic] Jean Pierre gave me, what is it, the evaluation. I[sic] asking that maybe they can change it a little bit to just average, average evaluation, and he don't [sic] want to change, and my petition to his supervisor. His name is John Jones, but John Jones also reject [sic] my request.

> I file another petition to the assistant commissioner, second time, second time, exactly the day about September 22nd. Just as, you know, I file my second—I tried to file my second petition to that assistant commissioner. And the same day they send me a notice of discharge and to criticize about my work and that John Jones is talking about unsatisfy [sic] my work back

to six months ago.

Tr. 6:25–7:17. Chang acknowledged that "[e]verything is in [his] papers," Tr. 7:24, and confirmed that he did not serve the five-day suspension that had been proposed before he resigned. Tr. 8:1–5.

## II. *Discussion*

### A. *Applicable Legal Standards*

The agency has moved to dismiss the Complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC,* 568 F.3d 374, 376 (2d Cir.2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are not enough to survive a motion to dismiss. *Twombly,* 550 U.S. at 555.

For complaints such as Chang's that allege claims of employment discrimination, the *Iqbal* plausibility standard applies in conjunction with the pleading standards set forth in *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). *See Twombly,* 550 U.S. at 547 ("This analysis does not run counter to *Swierkiewicz ....* Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *Arista Records LLC v. Doe 3,* 604 F.3d 110, 119–21 (2d Cir.2010) (finding *Swierkiewicz, Twombly,* and *Iqbal* in agreement); *Jackson,* 709 F.Supp.2d at 224, 226. Indeed, "[t]he *Swierkiewicz* holding applies with equal force to any claim ... that the McDonnell *Douglas* framework covers" and "retains its

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))

vitality in the wake of *Twombly* and *Iqbal.*" *Shamilov v. Human Res. Admin.,* No. 10 Civ. 8745(PKC), 2011 WL 6085550, at *3 (S.D.N.Y. Dec.6, 2011) (citations omitted).

**\*4** "At the pleading stage, *Swierkiewicz* 'teaches that a plaintiff is not required to come forth with allegations sufficient to make a prima facie case of employment discrimination or to satisfy the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Shamilov,* 2011 WL 6085550, at *4. See *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir.2007). Rather, "a complaint must include ... a plain statement of the claim ... [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 512 (internal quotations omitted). Therefore, in order to defeat a motion under Rule 12(b)(6) in an employment discrimination case, a complaint must "give fair notice of the basis of plaintiff's claims and the claims themselves must be facially plausible." *Shamilov,* 2011 WL 6085550, at *4.

Complaints prepared by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Peay v. Ajello,* 470 F.3d 65, 67 (2d Cir.2006) (citations and quotation marks omitted). Because Chang filed his pleadings pro se, the Court must liberally construe them and interpret his Complaint "to raise the strongest arguments it suggests." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (citation omitted). However, the Court need not accept as true "conclusions of law or unwarranted deductions of fact." *See, e.g., First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (citation and quotation marks omitted). In addition, the fact that Chang is proceeding *pro se* "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (citation and quotation marks omitted). Finally, "even pro se plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.' " *Jackson,* 709 F.Supp.2d at 224 (quoting *Twombly,* 550 U.S. at 555)).

**B.** *Failure to State a Claim*

**1.** *Title VII*

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 492 (2d Cir.2010) (citation omitted).

Although Chang "need not allege a prima facie disparate treatment claim to survive a motion to dismiss," he must "at least satisfy the requirements of Rule 8(a) notice pleading." *Jackson,* 709 F.Supp.2d at 227. This he has failed to do. As a threshold matter, Chang has not alleged any dates, times, or events that occurred that gave rise to discrimination, or that any actions taken were motivated by race. As the agency argues, the allegations that Chang was impacted by "constant harassment," and that "other accountants have made similar mistakes ... without being charged," are what the Supreme Court in *Iqbal* characterized as " 'unadorned, the-defendant-unlawfully-harmed-me accusations' that cannot survive a motion to dismiss." Def. Mem. at 6 (citing Compl. Attachment; *Iqbal,* 129 S.Ct. at 1949).

**\*5** Moreover, Chang has failed to plausibly allege that the agency took an adverse employment action against him. An adverse employment action must "cause a materially adverse change in the terms and conditions of employment." *Patane,* 506 F.3d at 112. The action cannot be a "mere inconvenience," but may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Shamilov,* 2011 WL 6085550, at *6 (quoting *Leibowitz v. Cornell University,* 584 F.3d 487, 499 (2d Cir.2009) (internal quotations omitted)). The receipt of disciplinary

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))

notices alone does not amount to an adverse employment action. *See Jackson, 709 F.Supp.2d at 228* (citing *Anemone v. Metro. Transp. Auth., 410 F.Supp.2d 255, 266 (S.D.N.Y.2006)).* Morever, Chang resigned, and no discipline was ever imposed. There is simply nothing in his Complaint that sets forth a plausible claim of race discrimination given this lack of an adverse employment action, or lack of identification of any particular conduct that could be construed as giving rise to race discrimination.

Likewise, were the Court to construe Chang's allegation that his workplace was so "intolerable" that he resigned as an attempt to plead a claim for constructive discharge, such a claim would fail. Chang Aff. at 2. "Even assuming the truth of [Chang's] factual allegations and giving him the benefit of all reasonable inferences, he has failed to plead that the working conditions at his former place of employment were 'so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign.' " *Morris v. Schroder Capital Mgmt. Int'l, 481 F.3d 86, 89 (2d Cir.2007)* (quoting *Whidbee v. Garzarelli Food Specialties. Inc., 223 F.3d 62, 73 (2d Cir.2000)).* Additionally, as the agency notes, Chang "resigned prior to the resolution of the disciplinary charges pressed against him," thereby waiving the "opportunity to present his side of the story at a disciplinary hearing." Def. Mem. at 7. Chang's decision "not to participate in the process" which the agency made available to him weighs against a claim for constructive discharge. *See, e.g., Stembridge v. City of New York, 88 F.Supp.2d 276, 286 (S.D.N.Y.2000)* ("[T]he fact that a fair hearing was scheduled to address the situation prevents any reasonable inferences of discrimination.").

2. *Age Discrimination*

The Age Discrimination in Employment Act of 1967, *29 U.S.C. § 621 et seq.* ("the ADEA"), makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *29 U.S.C. § 623(a)(1).* These provisions were "modeled" on the "prohibitions of Title VII." *Mabry v. Neighborhood Defender Serv., 769 F.Supp.2d 381,*

*391–92 (S.D.N.Y.2011)* (quoting *McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)).* Accordingly, "interpretations of the substantive antidiscrimination provisions of Title VII apply 'with equal force' in the context of ADEA age discrimination cases." *Id.* (quoting *Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).*

**\*6** As with a Title VII claim, at this stage Chang must simply allege the essential elements of an employment discrimination claim so as to provide the employer with notice of his claim. More specifically, he must allege that "he was a member of a protected class, his employer took an adverse employment action against him, and this action occurred under circumstances from which a discriminatory motivation can be inferred." *Shamilov, 2011 WL 6085550, at \*7* (citation omitted). In alleging disparate treatment based on age, Chang must "further demonstrate that his age 'actually motivated the employer's decision' and had a 'determinative influence on the outcome.' " *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).*

Chang has not alleged any facts to support his claim based on his age. While he has alleged that he is 67, and therefore sufficiently pled that he is a member of the protected class, he has not otherwise set forth any facts to make his ADEA claim "plausible on its face." *Perry v. N.Y. State Dep't of Labor, No. 08 Civ. 4610(PKC), 2009 WL 2575713, at \*3 (S.D.N.Y. Aug.20, 2009)* (quoting *Patane, 508 F.3d at 111–12).* Chang simply states, in conclusory fashion, that he "believe[s][he] was forced to resign because [he is] Asian, and 67 years old and opposed discrimination." Compl. Attachment. This is not enough to survive a motion to dismiss. *See Shamilov, 2011 WL 6085550, at \*7* (granting motion to dismiss age discrimination claim when entirety of plaintiff's allegations appear to be written notation, "also age is factor," on single page of complaint). Nothing he alleges in his Complaint, in his Affirmation in opposition to the motion to dismiss, or at the court conference in March, raises an inference of possible discriminatory animus on the basis of age.

Moreover, as discussed with respect to his Title VII claim, Chang has not adequately alleged the existence of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))

an adverse employment action. He does not allege he was demoted or terminated, or otherwise experienced a material alteration in the terms and conditions of his employment, on the basis of age. Finally, given that Chang was hired by the agency in 1996 and worked for 14 years thereafter, he was always over the age of 40 during his agency employment and he has alleged nothing to suggest that his age actually motivated the agency's conduct.

3. *Retaliation*

Liberally construed, Chang's complaint also appears to allege retaliation, in that he alleges that "the notice of charge is merely acted [sic] as retaliation, because prior to it, [he] filed an appeal for protection." Compl. Attachment.[FN7] To state a claim for retaliation, a plaintiff "must demonstrate that (1) he engaged in [a] protected activity by opposing an employment practice made unlawful under the relevant statute; (2) his employer was aware of plaintiff's protected activity; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Shamilov,* 2011 WL 6085550, at *8; *see also Jackson,* 709 F.Supp.2d at 227 (citing *McMenemy v. City of Rochester,* 241 F.3d 279, 282–83 (2d Cir.2001)). At this stage, Chang need not establish a prima facie case of retaliation, but must nonetheless "allege facts that state a plausible retaliation claim." *Shamilov,* 2011 WL 6085550, at *8 (citing *Jackson,* 709 F.Supp.2d at 228).

> FN7. Chang also checked "retaliation" in his Complaint as the discriminatory conduct of which he complains. See Complaint, section II.A (Statement of Claim).

*7 It is not clear from Chang's complaint that he has satisfied the first two elements of a retaliation claim, in that he has not sufficiently described what protected activity he engaged in, or that the agency was aware of it. Moreover, even if he had, Chang has failed to plead a plausible claim for retaliation because he alleges no facts to suggest how he suffered an adverse employment action as a result of engaging in any protected activity. The most he offers is the statement that the agency "prosecuted the charges against [him] in an effect [sic] to push [him] to resign [his] position." Compl. Attachment. But he does not

articulate what the adverse employment action is in this context, and he acknowledges that he resigned before any suspension or other potential adverse action was imposed. Chang did not file his complaint with the NYSDHR until after he resigned, so there can be no connection between that protected activity and anything that occurred prior to that time.

C. *Election of Remedies*

Both the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") include an "election of remedies" provision, which precludes a plaintiff from initiating judicial action if he has already filed a complaint with the NYSDHR. New York Executive Law section 297(9) provides, in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction ... unless such person had filed a complaint hereunder or with any local commission on human rights ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

The NYCHRL "language ... is nearly identical ... and discussion of the latter applies equally to the former." *Jackson,* 709 F.Supp.2d at 225 (quoting *York v. Ass'n of the Bar of the City of N.Y.,* 286 F.3d 122, 127 (2d Cir.2002)); *see also* N.Y.C. Admin. Code § 8–502(a). If a plaintiff has his complaint dismissed by the NYSDHR, he may appeal that determination to the New York State Supreme Court. N.Y. Exec. Law § 298; *see also York,* 286 F.3d at 127.

It is well-settled that "[w]here a plaintiff files a claim with the [NYSDHR] and subsequently files suit in federal court raising substantially similar charges, the federal court lacks subject matter jurisdiction." *Lopez v. 845 WEA Mgmt. Inc.,* No. 11 Civ. 281(TPG), 2012 WL 661687, at *6 (S.D.N.Y. Feb.29, 2012). *See also Session v. N.Y.C. Dist. Council of Carpenters,* No. 10 Civ. 0298(SHS),

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))

2011 WL 497619, at *4 (S.D.N.Y. Feb.10, 2011) (court lacks jurisdiction over claims in federal action that were adjudicated before NYSDHR) (citing *Moodie v. Fed. Reserve Bank of N.Y.,* 58 F.3d 879, 882 (2d Cir.1995)). In this case, Chang filed a complaint with the NYSDHR, which was dismissed for lack of probable cause, that stems from the same set of allegations related to his receipt of a negative evaluation in August, 2010 as those set forth in his federal complaint. Therefore, Chang elected his remedies and the Court lacks subject matter jurisdiction over his claims under the NYSHRL and the NYCHRL.[FN8]

> [FN8]. Even if the NYSHRL and NYCHRL claims were not barred by the "election of remedies" doctrine, the Court has the discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over state and city claims after the dismissal of all claims over which it had original jurisdiction. Given the early stage of the litigation, the Court should alternatively decline to exercise jurisdiction over these claims and dismiss them without prejudice. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York,* 464 F.3d 255, 262 (2d Cir.2006) (where "federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendant jurisdiction over remaining state law claims") (citations omitted); *Cruz v. PS1 Contemporary Art Ctr.,* No. 10–CV–4899 (RRM)(JMA), 2011 WL 3348097, at *3 (E.D.N.Y. Aug. 1, 2011) (having dismissed federal discrimination claims, court determines state and city claims are "more appropriately determined in a state forum due to interests of comity and efficiency") (citation omitted).

D. *Leave to Amend*

*8 It is well-settled that a district court must liberally construe a *pro se* complaint, and "should generally not dismiss [it] without panting the plaintiff leave to amend." *Petway v. N.Y.C. Transit Auth.,* 2011 WL 6157000, at *1 (2d Cir. Dec.13, 2011) (citation omitted). Nonetheless, "leave to amend is not necessary when it would be futile." *Id.; see also Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (finding that leave to replead would be futile

where complaint, even when read liberally, did not "suggest[ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe"). In *Petway,* where the district court had dismissed the complaint *sua sponte* without granting leave to amend or making a finding that such an amendment would be futile, the Second Circuit affirmed, because the complaint gave "no indication that [the plaintiff] could have stated a colorable claim [under the Americans with Disabilities Act] had he been granted leave to amend." *Petway, 2011 WL 6157000, at *1* (citation omitted). The Circuit found that the plaintiff did not "plausibly suggest that any of the defendants in this case discriminated against him on the basis of his disability for purposes of an ADA claim." *Id.* (citation omitted).

In this case, leave to amend would be futile as well. Chang has been given three chances—in his complaint, in his papers in opposition to the motion, and on the record at a court conference—to articulate a plausible claim for age or race discrimination. He has not been able to do so. Accordingly, providing an additional opportunity at this juncture would be futile.

III. *Conclusion*

For the foregoing reasons, I recommend that the Court dismiss the Complaint in its entirety.

*PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ, P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007, Any requests for an extension of time for filing objections must be directed to Judge Crotty. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner &*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1188427 (S.D.N.Y.)

(Cite as: 2012 WL 1188427 (S.D.N.Y.))


*Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010). If Chang does not have access to cases cited herein that are reported on Westlaw, he should request copies from Defendant. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

S.D.N.Y.,2012.

Chang v. City of New York Dept. for the Aging
Slip Copy, 2012 WL 1188427 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp., 1995 WL 322559 (W.D.N.Y.)

(Cite as: 1995 WL 322559 (W.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,

W.D. New York.
Mary A. BRAGG, Plaintiff,

v.

BUFFALO MUNICIPAL CIVIL SERVICE
COMMISSION and New York State Human Rights
Commission, Defendants.
No. 92-CV-823A.

May 24, 1995.
Mary A. Bragg, Cheektowaga, NY, pro se.

Edward D. Peace, Corp. Counsel for City of Buffalo,
Rosemary Gavigan Bis (Asst. Corp. Counsel, of Counsel)
Buffalo, NY, for Buffalo Mun. Civ. Service Com'n.

G. Oliver Koppell, Atty. Gen. for State of NY, (Douglas
S. Cream Asst. Atty. Gen. of counsel), Buffalo, NY, for
N.Y.S. Human Rights Com'n.

ORDER

ARCARA, District Judge.

  *1 This case was referred to Magistrate Judge Leslie
G. Foschio, pursuant to 28 U.S.C. § 636(b)(1)(B) on
March 8, 1993. On August 31, 1994, Magistrate Judge
Foschio filed a Report and Recommendation
recommending that defendants' motions to dismiss the
complaint be granted and the action dismisssed with
prejudice.

  Plaintiff filed objections to the Report and
Recommendation on April 13, 1995.

  Pursuant to 28 U.S.C. § 636(b)(1), this Court must
make a de novo determination of those portions of the
Report and Recommendation to which objections have
been made. Upon a de novo review of the Report and
Recommendation, and after reviewing the submissions and

hearing argument from the parties, the Court adopts the
proposed findings of the Report and Recommendation.

  Accordingly, for the reasons set forth in Magistrate
Judge Foschio's Report and Recommendation, defendant's
motion to dismiss is granted and the action dismissed.

  IT IS SO ORDERED.

REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.
JURISDICTION

  This matter was referred to the undersigned for report
and recommendation on any dispositive motions by the
Hon. Richard J. Arcara on March 8, 1993. The matter is
presently before the court on Defendant Buffalo Municipal
Civil Service Commission's motion to dismiss the
complaint, dated February 25, 1993, and Defendant New
York State Human Rights Commission's motion to dismiss
the complaint, dated March 2, 1993.
BACKGROUND

  Plaintiff, Mary A. Bragg, filed this pro se action
alleging a violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C. §2000e et seq., and the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C.
§621 et seq., on December 14, 1992.[FN1] Plaintiff alleges
that the action of Defendant Buffalo Municipal Civil
Service Commission's ("BMCSC") in removing her name
from the eligible list for a position as a Buffalo police
officer was discriminatory. Plaintiff also asserts a cause of
action against the New York State Human Rights
Commission ("NYSHRC").

  On February 25, 1993, Defendant BMCSC filed a
motion to dismiss the complaint for lack of subject matter
jurisdiction, failure to state a cause of action, and the
expiration of the statute of limitations period. On March
2, 1993, Defendant NYSHRC filed a motion to dismiss the
complaint for lack of subject matter jurisdiction, lack of
personal jurisdiction, the expiration of the statute of
limitations period, and the failure to state a cognizable
claim. Plaintiff filed a reply to the motions on May 5,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 322559 (W.D.N.Y.)

(Cite as: 1995 WL 322559 (W.D.N.Y.))

1993, and, at the same time, requested appointment of counsel. This matter is addressed in a separate Decision and Order. Oral argument on the motions to dismiss was heard on May 6, 1993.

For the reasons as set forth below, Defendants' motions to dismiss should be GRANTED.

### FACTS

According to Plaintiff's Complaint and her response to Defendants' motions to dismiss, on October 22, 1984, Plaintiff filed a complaint with the New York State Division of Human Rights, alleging that the Buffalo Municipal Civil Service Commission had removed her name from the eligible list for positions as a Buffalo police officer because she suffered from a speech impediment disability. Plaintiff did not allege in her complaint that she had been discriminated against because of her age, race, color, or sex. *See* Exhibit A, BMCSC Motion to Dismiss, Complaint against BMCSC to N.Y.S. Division of Human Rights. After an investigation, the Division of Human Rights determined that there was no probable cause for Plaintiff's complaint as a background investigation of Plaintiff pursuant to the rules of the New York State Civil Service Law governing "Disqualification of Applicants" showed sufficient cause to remove Plaintiff's name from the eligible list, and that Plaintiff's speech impediment was only one factor, among several others, which caused the removal of her name from the list. While Plaintiff passed all of the civil service examinations, she conceded that she had one minor conviction on her record, allegedly unrelated to the qualifications for a police officer position.

**\*2** The complaint was thereafter dismissed and the file was closed. Plaintiff was notified that she was entitled to appeal the decision to the New York State Supreme Court by filing a petition within sixty days of the decision. Plaintiff never filed an appeal.

In her Complaint in this court, Plaintiff claims for the first time that Defendants discriminated against her because of her age, race, color, and sex. Plaintiff further states that she was told by the Division of Human Rights, on October 14, 1984, that her charge of discrimination would be cross-filed with the Equal Employment Opportunity Commission. Plaintiff contends that this

never occurred.

### DISCUSSION

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), the court looks to the four corners of the complaint and is required to accept plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Darcy v. New York County Lawyers' Association,* 423 F.2d 188, 191 (2d Cir. 1969), *cert. denied,* 398 U.S. 929 (1970). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985). This caution against dismissal applies with even greater force where the complaint is *pro se,* or where the plaintiff complains of a civil rights violation. *Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir. 1991), *cert. denied,* 112 S.Ct. 1943 (1992). The court is required to read the complaint with great generosity on a motion to dismiss. *See Yoder v. Orthomolecular Nutrition Institute,* 751 F.2d 555 (2d Cir. 1985).

Defendant BMCSC contends that the complaint should be dismissed as against them for lack of subject matter jurisdiction as Plaintiff failed to file a charge alleging age, race, color, or sex discrimination with either the Division of Human Rights or the EEOC prior to commencing this action. In addition, BMCSC claims that, even if Plaintiff had filed such a complaint, the statute of limitations bars her action as she failed to seek judicial review of her unfavorable determination in New York State Supreme Court.

Defendant NYSHRC argues that the complaint should be dismissed as against them as NYSHRC was never Plaintiff's employer, that her complaint had never been cross-filed with the EEOC, and that Plaintiff never received a right-to-sue letter from the EEOC.

Plaintiff contends that she was told by the Division of Human Rights, on October 14, 1984, that her charge of discrimination would be cross-filed with the EEOC. According to the BMCSC, the complaint was not cross-filed as Plaintiff did not allege any discriminatory

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 322559 (W.D.N.Y.)

(Cite as: 1995 WL 322559 (W.D.N.Y.))

practices under either Title VII or the ADEA in her administrative complaint.

Under either Title VII or the ADEA, a person alleging employment discrimination in New York must file a charge with the EEOC within 300 days after the discriminatory action or within 30 days after the end of a state investigation, whichever is earlier. 42 U.S.C. 2000e-5(e); 29 U.S.C. § 626(d)(2). *See also* Zipes v. Transworld, 455 U.S. 385-393-94 (1982); *Economu v. Borg-Warner Corp.,* 829 F.2d 311, 315 (2d Cir. 1987); *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 23 (2d Cir. 1985). In order to bring a federal unlawful discriminatory practice claim under either Title VII or the ADEA in federal court, an aggrieved person must first assert all claims, including state statutory claims, with the EEOC or the appropriate state agency having authority to grant or seek relief from the discriminatory practice. *Economu v. Borg-Warner, supra,* at 315; *Drummer v. DCI Contracting Corp.,* 772 F. Supp. 821, 825 (S.D.N.Y. 1991); *Hunnewell v. Manufacturers Hanover Trust Co.,* 628 F. Supp. 759, 761 (S.D.N.Y. 1986). The purpose of the filing procedures is to convey prompt notice to the employer, thereby encouraging conciliation wherever possible. *Drummer, supra,* at 825. The time periods for bringing the administrative claim commence upon the employer's commission of the discriminatory act. *Miller, supra,* at 24.

**\*3** There is no question that Plaintiff never filed a complaint against Defendant New York State Human Rights Commission with the EEOC. Therefore, Plaintiff has failed to meet the jurisdictional prerequisite to filing an action against the NYSHRC in federal court, and, accordingly, the action against NYSHRC should be dismissed.[FN2]

It is also undisputed that Plaintiff's claim against the BMCSC was never filed with the EEOC. Plaintiff, however, argues that she was informed by Richard E. Clark of the NYSHRC that her claim would be cross-filed with the EEOC.

The EEOC handles employment discrimination claims relating to alleged violations of federal employment laws. Under Title VII, it is an unlawful employment practice to

fail to hire any individual, or to otherwise discriminate against any individual because of that individual's race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a). Under the ADEA, it is unlawful to discriminate against an individual because of that individual's age. 29 U.S.C. §623(a). Neither Title VII nor the ADEA protect an individual against discrimination relating to a disability. Therefore, as Plaintiff's charge filed with the N.Y.S. Division of Human Rights alleged only discrimination based on a disability, the Division of Human Rights did not cross-file Plaintiff's claim. Rather, Plaintiff's claim was investigated pursuant to New York State Human Rights Law, Executive Law §296(1)(a) which makes it unlawful for an employer to discriminate against an individual because of that individual's disability. The Division of Human Rights completed its investigation of Plaintiff's charge, and determined that there was no probable cause for Plaintiff's claim. Plaintiff was then notified of the decision, and given information as to how to appeal the determination. Plaintiff failed to appeal, and the time period for the appeal expired.

Plaintiff's complaint against the BMCSC now alleges that she was discriminated against because of her age, race, color, and sex, along with her disability. However, these charges were never filed with either the EEOC or the N.Y.S. Division of Human Rights, and, as such, Plaintiff has failed to meet the jurisdictional prerequisite to file suit on these claims against the BMCSC in federal court. Further, the time period for filing such a charge with the EEOC has expired, as the complained of action took place in 1984. Accordingly, Plaintiff's claim against the BMCSC should also be dismissed.

*CONCLUSION*

Based on the foregoing discussion, Defendants' motions to dismiss the complaint should be GRANTED, and this action should be dismissed with prejudice.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 322559 (W.D.N.Y.)

(Cite as: 1995 WL 322559 (W.D.N.Y.))

within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

**\*4** *Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).*

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendants.

SO ORDERED.

DATED: August 31st, 1994

FN1. Plaintiff's complaint was filed using a standard form for filing a complaint under the Age Discrimination in Employment Act. However, Plaintiff also completed the standard form for filing a complaint under Title VII of the Civil Rights Act of 1964 which was placed in the Clerk's file, and stamped with the case docket number, but this document was not docketed. For purposes of Defendants' motions to dismiss, as Plaintiff is a *pro se* litigant, the court will consider Plaintiff's complaints as if she alleged causes of action under both Title VII and the ADEA.

FN2. The court notes that, even if Plaintiff had met the jurisdictional prerequisite as to the NYSHRC, Plaintiff has failed to allege any viable claim under either Title VII or the ADEA against the NYSHRC, as NYSHRC was never an employer or a potential employer of Plaintiff. Rather, Plaintiff's case against the NYSHRC appears to be premised upon the NYSHRC's failure to cross-file her claim against the BMCSC with the EEOC. This allegation is not actionable under Title VII or the ADEA, and, therefore, this case should also be dismissed as to NYSHRC for

failure to state a claim upon which relief can be granted.

W.D.N.Y. 1995

Bragg v. Buffalo Mun. Civil Service Com'n
Not Reported in F.Supp., 1995 WL 322559 (W.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340

(Cite as: 1995 WL 314696 (S.D.N.Y.))

**H**

United States District Court, S.D. New York.

Diane SANK, Plaintiff,
v.
The CITY UNIVERSITY OF NEW YORK, et al.,
Defendants.
94 CIV. 0253 (RWS).

May 24, 1995.
Prof. Diane Sank, Englewood Cliffs, NJ, pro se.

Dennis C. Vacco, Atty. Gen. of State of N. Y. (Marsha Rubin, Asst. Atty. Gen., of Counsel), New York City, for Moving defendants.

*O P I N I O N*

SWEET, District Judge.

**\*1** Defendants Joseph S. Murphy ("Joseph Murphy"), W. Ann Reynolds ("Reynolds"), Dr. Beverly Sowande ("Sowande"), James P. Murphy ("James Murphy"), The Board of Trustees of the City University of New York (the "Board of Trustees") as constituted in the years 1988 through 1992, have moved pursuant to Rule 12(b)(1) of the Fed. R. Civ. P. to dismiss the Title VII claims against them. Defendants Bernard Harleston ("Harleston"), Anthony F. Rodriquez ("Rodriquez"), Jeffrey J. Rosen ("Rosen"), Carol Laderman ("Laderman"), June Nash ("Nash") and Fremont E. Besmer ("Besmer") move pursuant to Rule 12(b)(1) of the Fed. R. Civ. P. to dismiss the Title VII complaints against them on the basis of discrimination due to religion, age and physical disability. Sowande also moves to have all claims against her dismissed for lack of subject matter jurisdiction. For the reasons set forth below, the discrimination claims based upon religion, age, and physical disability are dismissed.
*The Parties*

*Pro se* plaintiff, Diane Sank ("Sank"), is a white, Jewish woman, over the age of 66, who walks with the aid of a cane and uses a wheeled luggage cart due to a disability resulting from an accident in 1985. Sank is a Professor of Anthropology who has been employed as such by the City College of the City of New York ("CCNY") since 1968. She was the elected Chair of CCNY's Anthropology Department for a three year term beginning on July 1, 1987. She served in that capacity until June 1, 1988. Sank is a resident of New Jersey and a citizen of the United States.

Defendant Joseph Murphy was the Chancellor of the City University of New York ("CUNY") from 1987 to 1990.

Reynolds replaced Joseph Murphy as Chancellor of CUNY in September 1990.

James Murphy was the Chair of the Board of Trustees of the CUNY from 1987 throughout the time that the complaint was filed in this action.

Sowande, Associate Counsel in CUNY's General Counsel's Office, was the CUNY Freedom of Information Appeals Officer.

Harleston was the President of CCNY, at all times that he was mentioned in the complaint.

The Board of Trustees of CUNY and its members in 1988 through 1992 includes all of the individual trustees.

Rodriguez was the Assistant Vice President of Facility and Space Planning of CCNY at all times that he is mentioned in the complaint.

Rosen was the Dean, Division of Social Science of CCNY.

Laderman was the Chair and Professor in the Department of Anthropology (the "Department") of CCNY.

Besmer was Acting Chair in 1989-90 and 1992-93 and Associate Professor of Anthropology at CCNY.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340

(Cite as: 1995 WL 314696 (S.D.N.Y.))

Nash was a Professor (1971 to 1990) and Distinguished Professor (1990 to present) of Anthropology at CCNY.

*Prior Proceedings*

Sank filed her complaint in this Court on January 18, 1994 and an amended complaint (the "Complaint") was filed on May 27, 1994. This filing followed the events described below. The instant motions were made on October 26, 1994 and heard and marked submitted on February 15, 1995.

*Facts*

**\*2** On April 27, 1988 a letter from Harleston to Sank notified her of his decision to discontinue her designation as Department Chairman effective June 1, 1988. Also on April 27, Harleston sent a letter to Joseph Murphy informing him of his decision.

On May 11, 1988 the office of the Ombudsman at CCNY wrote to Harleston expressing surprise at having action taken with respect to Sank prior to meeting with the Ombudsman. That letter announced a May 18 faculty meeting to consider the matter of the President's actions with respect to Sank and the Department.

Sank promptly (according to her on May 12) pursued administrative remedies complaining about her removal. After being informed in a letter dated May 24, 1988 that the Professional Staff Congress of CCNY could not take the complaint to grievance because "it lacked merit," Sank sent a letter CCNY Dean of Faculty and Staff Relations Silberberg, filing a Step One Grievance against Harleston, the Provost and the Dean of Social Sciences of CCNY (Rosen) for improperly removing her as chair of the Department. This Step One Grievance letter did not mention allegations of discrimination. A September 15, 1988 letter to Silberberg from Sank makes reference to her enclosure of a report on The Status of Women and Faculty Appointment in CUNY.

On July 26, 1988, apparently in response to a letter to him from Sank, Vice Chancellor Bloom, on behalf of Joseph Murphy, sent a letter to Sank advising her that if her grievance got to Phase II it would be thoroughly reviewed.

On October 13, 1988 Silberberg informed Sank by letter that her grievance has been rejected. On December 9, 1988 Sank received a letter from the CCNY Acting Director of Affirmative Action advising her that "the Grievance Committee has not found a basis for your grievance of gender discrimination."

On June 8, 1989 a meeting of the Department was held to elect a chair for the remainder of the vacant term. The vote was to appoint Besmer as acting Chair. The lack of an appropriate quorum for the vote was successfully challenged through the University grievance process. Besmer was appointed properly by a vote in September. Sank alleges that the railroading of the interim appointment was part of the administration's further evidence of their discriminatory practices.

In a letter dated August 3, 1989 Ira Bloom, Vice Chancellor of CUNY, on behalf of Joseph Murphy, makes reference to Sank's July 12, 1989 letter to Joseph Murphy regarding her problems with the Department. Bloom states that is it not appropriate for the Chancellor's office to get involved at that time.

While continuing to address her complaints within the CCNY and CUNY system, Sank filed a complaint with the New York City Human Rights Commission (the "Commission") in late August 1988. On October 21, 1988 she filed a verified complaint with the Commission charging CUNY, CCNY and Harleston with sex discrimination. A copy of the verified complaint was filed with the Equal Employment Opportunities Commission ("EEOC") on September 12, 1989 for dual filing purposes.

**\*3** On June 27, 1989 Sank filed an amendment to her verified complaint adding charges of race discrimination.

On August 8, 1989 she again amended the complaint to allege the retaliatory seizure and dismantling of her research laboratory in late July. In this amendment she names Rodriguez as a person with whom she discussed the dismantling of her lab and states that "[h]e refused to give me back my lab room, even though there are alternative rooms to use for other departments." Correspondence

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340

(Cite as: 1995 WL 314696 (S.D.N.Y.))

between the Sank and the Commission and Rodriguez and Sank discuss his role in the decision to move her lab. Rodriguez was not added to the caption. (In the Court Complaint she alleges that Harleston, Rodriquez, Rosen and Besmer were all responsible for the retaliatory actions and her failure to be warned of same).

On March 3, 1990 she amended the Commission Complaint to add Besmer, the new Chair of the Department who Sank alleges threatened to take her research computer for his own use. Sank alleged in her Commission complaint that Besmer's acts were his way of thanking Harleston for appointing him as acting Chair.

Throughout and after the period that she was filing and amending her Commission complaint, Sank sought information through the Freedom of Information Act from CCNY and CUNY officials. The first letter request during this period was on June 9, 1988 and the last on January 2, 1992.

On July 24, 1991 the Investigator at the Commission indicated on a file memorandum regarding Sank's complaint that there was probable cause and forwarded the complaint to the Commission's Enforcement Bureau.

On January 22, 1993, the Commission issued a written determination and order finding "no probable cause to believe that respondents engaged in the unlawful discriminatory practices charged..." Sank unsuccessfully appealed the Commission's decision. She appealed the decision to the EEOC, which, according to the complaint, rejected the appeal without explanation.

On October 19, 1993 the EEOC issued a determination concurring with the conclusions of the Commission and granting her the right to sue within 90 days.

*The Court Lacks Subject Matter Jurisdiction over the Claims of Age Religious Discrimination and Discrimination based on Disability*

Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII or under the employment provisions of the Americans with Disabilities Act (the "ADA"). 42 U.S.C. § 2000e-5(e); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822 (1973); 42 U.S.C. § 12117(a); Kent v. Director, 792 F. Supp. 59 (E.D.Mo. 1992) (ADA). Judicial relief cannot be sought for claims not listed in the original EEOC charge unless they are "reasonably related" to the charge. See Butts v. City of New York Dep't of Hous., 990 F.2d 1397, 1401 (2d Cir. 1993); Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 197-98 (2d Cir. 1985); Chojar v. Levitt, 773 F. Supp. 645, 650 (S.D.N.Y. 1991).

*4 In *Butts,* the Court of Appeals recently described the three types of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge such that it would be unfair to civil rights plaintiffs to bar such claims in a civil action. The first type of "reasonably related" claim is "essentially an allowance of loose pleading": recognizing that charges are frequently filed *pro se,* such claims are permitted if the employer conduct complained of would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Butts,* 990 F.2d at 1402 (quoting *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n.10 (2d Cir. 1978)). The second type is a claim alleging retaliation by an employer against an employee for filing an EEOC charge. *Id.* The third type is where a plaintiff alleges further incidents of discrimination carried out in the same manner. *Id.* at 1402-03.

Nonetheless, where, as here, the alleged retaliatory termination based on race and gender form the basis of Sank's Commission complaint and EEOC charge, Sank has not alleged facts sufficient to put the EEOC on notice of her religious discrimination or discrimination based on disability claims so as to "trigger the investigatory and conciliatory procedures of the EEOC," the exercise of which underlies the requirement that plaintiffs exhaust their EEOC remedies before pursuing a judicial remedy for a Title VII or an ADA claim. *See Chojar v. Levitt,* 773 F. Supp. 645, 651 (S.D.N.Y. 1991) (Title VII); *Miller v. Smith,* 584 F. Supp. 149, 154 (D.D.C. 1984) (Title VII).

Courts in this Circuit have found a lack of subject matter jurisdiction of added claims where such additional claims could not reasonably be expected to grow out of the original charges before the EEOC. In *Waterman v.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340

(Cite as: 1995 WL 314696 (S.D.N.Y.))

*New York Telephone Co.,* 36 FEP Cases 41, 1984 WL 1482 (S.D.N.Y. 1984), the plaintiff checked the box designated "sex" in her SDHR and EEOC charges, and subsequently brought a Title VII action alleging both sex and race discrimination. The court held that it lacked subject matter jurisdiction over the race discrimination claim because plaintiff had not exhausted her administrative remedies with respect to the race claim. See also *Drummer,* 772 F. Supp. at 826 (under "relation back" standard applied to untimely amendments to a complaint, claim of religious discrimination does not "relate back" to sex discrimination charge filed before EEOC); *Peterson v. Ins. Co. of North America,* 1995 WL 217492 at *2 (S.D.N.Y. 1995) ("The Courts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge); *Dennis v. Pan Am. World Airways, Inc.,* 746 F. Supp. 288, 291 (E.D.N.Y. 1990) (court dismissed age discrimination claim under ADEA in Title VII action, where plaintiff asserted racial discrimination and only mentioned having to retire early in her initial EEOC charge. There is no indication in the voluminous submissions made by Sank of discrimination based on religion or disability.[FN1]

**\*5** Sank discusses a chilling effect that she felt which made it impossible for her to raise these other claims in fear of retaliation. In her Complaint, however, except for making the conclusory allegations of discrimination on these bases she has provided no concrete examples that would allow the court to find a *prima facie* case of discrimination on the basis of religion or disability. With this in mind and considering the importance of the notice requirements to the scheme established by Title VII and the ADA, this Court lacks subject matter jurisdiction with respect to the religious discrimination claims and the claims of discrimination based on disability and the motion for summary judgment dismissing these claims is granted.

With regard to her allegations of age discrimination, the ADEA provides that:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal

Employment Opportunity Commission ...

29 U.S.C. § 626(d).

The Court of Appeals for the Second Circuit has interpreted this provision to require plaintiffs who wishes to bring a discrimination claim under ADEA first to file charges with the EEOC, or in the case of a New York plaintiff, with the Commission. *Promisel v. First Am. Artificial Flowers,* 943 F.2d 251, 256 (2d Cir. 1991). It is undisputed that Sank did not file an age discrimination claim with the EEOC or the Commission. Nor for the reasons set forth above, can such claim be said to "reasonably relate" to the claims charged in those complaints. Therefore, the Court lacks subject matter jurisdiction over the age discrimination claims.

*There is No Subject Matter Jurisdiction over the Title VII Claims Sowande, and the Board of Trustees of CUNY as Constituted in the Years 1991 and 1992*

Sank has brought this action not only against defendants named and involved in the Commission investigation, but also against Joseph Murphy, Reynolds, Sowande, James Murphy, Board of Trustees as constituted in the years 1988 through 1992. They are sued for liability for each of Sank's Title VII causes of action although none of them was named as a respondent in either the Commission Complaint or the EEOC Charge.

Section 706(e) of Title VII provides that "a civil action may be brought against the respondent named in the [EEOC] charge." 42 U.S.C. § 2000e-5(f)(1). As a general rule, a party not named in the EEOC charge cannot be named in the subsequent civil suit. *Drummer v. DCI Contracting Corp.,* 772 F. Supp. 821 (S.D.N.Y. 1991); *Giuntoli v. Garvin Guybutler Corp.,* 726 F. Supp. 494, 497 (S.D.N.Y. 1989); *Seedman v. Alexander's, Inc.,* 683 F. Supp. 924, 928 (S.D.N.Y. 1987); *Allen v. Colgate-Palmolive Co.,* 539 F. Supp. 57, 69 (S.D.N.Y. 1981); *Travers v. Corning Glass Works,* 76 F.R.D. 431, 433 (S.D.N.Y. 1977). This notice requirement serves the two important purposes of notifying the charged party of the asserted violation and permitting the effectuation of Title VII'S primary goal of securing voluntary compliance with the law by bringing the charged party before the EEOC. *Travers,* 76 F.R.D. at 432 (guoting *Bowe v.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340

(Cite as: 1995 WL 314696 (S.D.N.Y.))

Colgate-Palmolive, 416 F.2d 711, 719 (7th Cir.1969)).

**\*6** None of these "new" parties were named in either the Commission Complaint or the EEOC Charge. Thus, applying the general rule, Sank may not maintain this civil action against any of these "new" defendants.

Sank argues, however, that these parties are amenable to suit under an exception to the general rule. One such exception is that individuals not named in the EEOC charge may be sued in a subsequent civil action if they have been given actual notice that their conduct is being investigated and notice of intent to sue is given to the corporate employer. Seedman, 683 F. Supp. at 928; Allen, 539 F. Supp. at 69.

While it appears that among these moving defendants, at least Joseph Murphy, and perhaps the Board of Trustees in 1989 through 1990 had notice of Sank's dissatisfaction with the way that she was removed as Chair of the Department, there is no indication that Murphy or the Board of Trustees actions were part of the Commission's investigation, nor is it apparent that they should have been. The other named defendants are not mentioned in any of the Commission proceedings. As such, the Court does not have jurisdiction over the Title VII claims naming them.

A second exception is described in Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991); the "identity of interest" exception. This exception "permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." Johnson, 931 F.2d at 209. The Johnson court made no reference to a notice requirement that had been found in earlier cases. In Johnson the Court of Appeals adopted the following four part test to determine whether an identity of interest exists:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its

absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Applying these factors, Joseph Murphy, Reynolds, James Murphy and members of the Board of Trustees in 1988 through 1990 may have an identity of interests with the named defendants, particularly CUNY and CCNY.

First, it is clear that Sank could have determined the individually named defendants at the time of her complaint; she knew who they were. As to the second factor, the interests of the named defendants CUNY and CCNY are quite similar to its agents, the Chancellor, the Chair of the Board of Trustees and the trustees themselves. See Minetos v. City Univ. of New York, 875 F. Supp. 1046, 1051 (S.D.N.Y. 1995) (finding that the unnamed defendants CUNY and a music professor could be sued under Title VII even though only Hunter College and other professors had been named in the EEOC complaint -- "Hunter College is a senior college of the CUNY system while the Music Professors are agents of Hunter College"); Gilmore v. Local 295, 798 F. Supp. 1030, 1037 (S.D.N.Y. 1992) (unnamed defendant, a regional field manager, had substantial identity with corporate defendant, who was named as respondent in EEOC charge, because he was the agent of the corporate defendant); Bridges v. Eastman Kodak Co., 822 F. Supp. 1020, 1025 (S.D.N.Y. 1993).

**\*7** Sank suggests in her submissions that notice of her removal as Chair of the Department was put into Joseph Murphy's report to the Board with his approval and forwarded to the Trustees.

As for the third factor, neither defendants nor the facts suggest prejudice to the unnamed parties and since in the end there was no probable cause found it is hard to imagine what prejudice resulted. Finally, Sank has stated that she believed that CUNY stood for the trustees and its employees. While including all employees under the umbrella of CUNY or CCNY is far fetched, it is not unreasonable that the Chancellor or the Board of Trustees could be captured in an allegation against CUNY or

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340

(Cite as: 1995 WL 314696 (S.D.N.Y.))

CCNY. "The control of the educational work of the city university shall rest solely in the board of trustees which shall govern and administer all educational units of the city university." N.Y. Educ. Law § 6204(1) (McKinney's 1985). In addition, since the same Law Department represents the individual defendants and the institutional defendants it is not unreasonable to assume that the Trustees were aware of the legal actions pending against the University and CCNY.

While proving the elements of Title VII claim remain for another day, there is sufficient possibility of identity of interest to preclude dismissing the Title VII claims against these defendants at this time.

Since the acts described in Sank's Complaint that fall under her Title VII claims do not extend past 1990, there is no basis for including members of the Board of Trustees who served only after that time. The claims against them will be dismissed. Finally, neither exception applies to Sowande. The Title VII claims against her are therefore dismissed.

*The Court Will Exercise Supplemental Jurisdiction over the Freedom of Information Act Claims Against Sowande*

Defendants have moved to dismiss the state law claims against Sowande because there are no federal causes of action pending against her.

28 U.S.C. § 1367 (a) states that:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of *additional parties.* (emphasis added)

The allegations by Sank against Sowande involving her failure to provide information requested under the Freedom of Information Law are integrally related to

Sank's retaliation and discrimination claims against other defendants. Since the underlying jurisdiction is based on federal questions, this Court may exercise discretion in hearing related actions that meet the relatedness test described in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966), 42 U.S.C. § 1367(a); *see In re Joint Eastern and Southern District Asbestos Litigation,* 14 F.3d 726, 730 n.2 (2d Cir. 1993) ("the court may not exercise supplemental jurisdiction over claims unless the court has 'original jurisdiction' over at least one of the plaintiff's claims").

**8** The claims relating to Sowande are involved in the entire picture of retaliation that Sank has painted in her Complaint. The motion to dismiss these claims on the basis that there is no supplemental jurisdiction over them is denied at this time.

*Claims Under 28 U.S.C. § 1983 are Time Barred*

Sank is entitled to bring Title VII and Section 1983 claims when the latter is based on substantive rights distinct from Title VII. *Carrero v. New York City Hous. Auth.,* 890 F.2d 569, 575-76 (2d Cir. 1989).

The statute of limitations for bringing a federal civil rights claim pursuant to 28 U.S.C. § 1983 is three years from the last allegedly discriminatory act. *Owens v. Okure,* 488 U.S. 235 (1988). The last act directed at Sank and attributed to any of the State defendants in the complaint was in July of 1990, more than three years before this Complaint in this action was filed in January 1994.

The claims against these defendants based on Section 1983 are time barred.

*Conclusion*

For the reasons discussed above, the claims for discrimination based on age, religion and disability are dismissed, the Title VII claims against Sowande and Trustees for the years of 1991 and 1992 are dismissed, and relief under Section 1983 is time barred.

It is so ordered.

FN1. There is an allegation that CCNY denied

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340

(Cite as: 1995 WL 314696 (S.D.N.Y.))

Sank continued use of a parking space she required after the accident that led to her disability. The events at issue occurred in 1985 and were not alluded to in her Commission complaint. Nothing the Court can find in the Complaint ties the parking space incident to the other allegations made in the Complaint.

S.D.N.Y.,1995.

Sank v. City University of New York
Not Reported in F.Supp., 1995 WL 314696 (S.D.N.Y.), 4 A.D. Cases 855, 10 A.D.D. 41, 6 NDLR P 340
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Benjamin SHAMILOV, Plaintiff,
v.
HUMAN RESOURCES ADMINISTRATION,
Defendant.
No. 10 Civ. 8745(PKC).

Dec. 6, 2011.
*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Benjamin Shamilov, proceeding *pro se,* brings this action for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991 ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 721 *et seq.* ("ADEA"). Plaintiff alleges that the defendant New York City Human Resources Administration ("HRA") discriminated against plaintiff on the basis of his national origin and age in misrepresenting plaintiffs employment data and failing to provide him with adequate assistance in securing employment according to his education and experience. Now before the Court is HRA's motion for judgment on the pleadings pursuant to Rule 12(c), FED. R. CIV. P. (Docket # 19.) For the reasons set forth below, HRA's motion is granted. Plaintiffs complaint is therefore dismissed.

*BACKGROUND*

Plaintiff is a Caucasian male bora in 1950 of Russian and Jewish descent. (Docket # 2 at 3.) Throughout the relevant time period, plaintiff has sought and received assistance from the HRA in the form of food stamps, cash assistance, and professional assistance in securing employment. (*See, e.g.,* Docket # 2–2 at 3.) Plaintiff previously brought suit against the HRA in this Court in 2001, alleging various claims of employment

discrimination. *See Shamilov v. N.Y. City Human Res. Admin.,* 01 Civ. 8990(PKC) (S.D.N.Y.2003) (Buhta Decl. Ex. A). In that case, I adopted Magistrate Judge Eaton's Report and Recommendation and granted summary judgment to HRA. (Order of Dec. 2, 2003; Docket # 37.)

Plaintiff's discrimination claims in the present case stem from HRA's alleged "failure to create [a] real and sufficient Employability Plan" for plaintiff. (Docket # 2 at 3.) Plaintiff's Complaint calls attention to a series of "Employability Plans" prepared by HRA case workers to assist plaintiff in securing employment. Each plan contains an assessment and evaluation of plaintiff's employability status across several categories, including language proficiency, prior work history, education, math and reading test scores, relevant personal characteristics and employment preferences. (*Id.*) Plaintiff's Complaint and accompanying exhibits reveal that HRA case workers have prepared for him at least four employability plans since 2006: a July 17, 2006 plan (Docket # 2–1 at 1–4), a May 12, 2009 plan (Docket # 2–1 at 27–29; Docket # 2–2 at 1–2), a July 24, 2009 (Docket # 2–2 at 11–18), and an August 3, 2009 plan (Docket # 2–2 at 28–30). After preparing each plan, the HRA assigned plaintiff to a job according to his skills, education, and experience. The public aid benefits that the HRA provided to plaintiff—such as cash and food stamps—were conditioned on plaintiff adequately complying with certain attendance and performance requirements at his assigned job location. (Buhta Decl. Exs. B, C.) Following plaintiff's first plan dated July 17, 2006, the HRA assigned plaintiff to perform maintenance work for the Department of Citywide Administrative Services beginning on September 25, 2006. (Docket # 2–1 at 4.)

**\*2** Plaintiff has filed two unsuccessful complaints with the New York State Division of Human Rights ("NYSDHR") in which he alleged that defendant HRA discriminated against him in preparing these plans. First, plaintiff filed a verified complaint with the NYSDHR on June 27, 2008 in which he alleged that an HRA case worker deliberately "mishandled his case" because plaintiff is Jewish, Caucasian, of Russian national origin, and "has dark skin." (Buhta Decl. Ex. B, at 2.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

Specifically, plaintiff claimed that his work assignment was "not commensurate with his educational background" and the HRA case worker who prepared his plan had "altered his personal and education data." (*Id.* (internal quotations omitted).) Plaintiff had been receiving public assistance benefits on the condition that he complied with the HRA's "work activity requirements" and those benefits were terminated by the HRA for noncompliance with those requirements. (*Id.*) Plaintiff claimed that in so doing, the HRA discriminated against him on the basis of his race, and creed and national origin in violation of the New York State Human Rights Law, N.Y. Exec. L., art. 15 ("NYSHRL"). (*Id.* at 1.)

Following an investigation and review of the available evidence, the NYSDHR issued a written determination on March 31, 2010 in which it found no probable cause to support plaintiff's claims. (*Id.*) Plaintiff's "belief that the work assigned to him was not commensurate with his educational background [did] not exempt him from" the HRA's work requirements. (*Id.* at 2.) The NYSDHR's investigation found "nothing in the record to suggest" that any HRA case worker had altered his employment data so as to support a "causal nexus between [HRA]' s treatment of [plaintiff] and his creed, race, color, national origin, and/or any opposition to discrimination." (*Id.*)

Plaintiff filed a second verified complaint with the NYSDHR on July 28, 2009 in which he alleged the HRA violated the NYSHRL by retaliating against plaintiff for opposing its discriminatory practices. (Buhta Decl. Ex. D.) Plaintiff alleged that his employability plan dated July 24, 2009 (Docket # 2–2 at 11–18) both contained inaccurate information regarding his employment and education history and incorrectly reflected his math and reading skills. (Buhta Decl. Ex. D, at 1–2.) Plaintiff's July 24, 2009 plan erroneously indicated that he had no work experience, had not achieved a high school diploma, and had reading and math "skills grade level[s]" of 0.4 and 0.7, respectively. (Docket # 2–2 at 15–16.)[FN1] Plaintiff claimed that HRA had deliberately "altered" his scores and misrepresented his education and employment history to retaliate against plaintiff for prior allegations of discrimination. (Buhta Decl. Ex. D, at 1–2.)

FN1. Plaintiff's employability plan dated May

12, 2009—which he also presented to the NYSDHR in his second verified complaint—reported the same incorrect math and reading grade levels as in his July 24, 2009 plan. (Docket # 2–2 at 1.)

Following an investigation, the NYSDHR issued a written determination concluding that no probable cause existed to support plaintiff's allegations. The DHR agreed with plaintiff that the HRA case worker incorrectly recorded several details of plaintiff's education and employment history on his employability plan, but noted that the HRA "promptly corrected" any errors. (*Id.* at 2.) Indeed, plaintiff's Complaint in this case shows that on August 3, 2009, the HRA issued a corrected plan that addressed the errors in the July 24, 2009 plan, which had been issued less than two weeks earlier. (Docket # 2–2 at 28–30.) The NYSDHR concluded that there was a "lack of evidence" of any discriminatory motivation or "retaliatory animus" by HRA employees and that, regardless, plaintiff had "continued to receive his public assistance benefits without interruption" following the July 24, 2009 plan. (Buhta Decl. Ex. D, at 2.)

**\*3** Plaintiff then sought relief from the United States Equal Employment Opportunity Commission ("EEOC"). Following its own investigation, the EEOC issued a "Dismissal and Notice of Rights" letter to plaintiff on August 11, 2010 in which it adopted the findings of the NYSDHR and informed plaintiff of his right to bring suit. (Buhta Decl. Ex. F.)

Plaintiff filed this *pro se* Complaint on November 10, 2010. (Docket # 2.) In his 106–page Complaint, which includes exhibits both numbered and unnumbered, plaintiff claims that the HRA discriminated against him on the basis of national origin and age for failing to hire plaintiff, failing to promote plaintiff, offering plaintiff unequal employment terms and conditions, and retaliating against plaintiff for "numerous previous complaints." (*Id.* at 3.) Plaintiff states the specific facts of his case as follows:

Very bad and long case of discrimination and intentionally misrepresentation by HRA and HRA vendors and their employees. Acts of sabotage because

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

misrepresented personally me and all my personal data. Fabricated directly cases with intentionally misrepresented, distorted facts and data. Failure to create real and sufficient Employability Plan which was required to get adequate assistance in job search in order to get job according education and experience[.]

(*Id.*) As relief, plaintiff seeks assistance in securing employment commensurate with his education and experience, monetary damages, and reimbursement for time in which plaintiff suffered from HRA's "injustice and discrimination." (*Id.* at 4.)

*LEGAL STANDARD*

A motion for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., is reviewed under "the same standard as that applicable to a motion under Rule 12(b)(6)." *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002) (quoting *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555). In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are accepted as true, *see id.* at 1949–50, and all reasonable inferences are drawn in plaintiff's favor. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (per curiam).

For complaints asserting claims of discrimination, the *Iqbal* plausibility standard applies in conjunction with the pleading standards set forth in *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). *See Twombly,* 550 U.S. at 547 ("This analysis does not run counter to *Swierkiewicz* .... Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *Arista Records LLC v. Doe,* 604 F.3d 110, 11921

(2d Cir.2010) (finding *Swierkiewicz, Twombly,* and *Iqbal* in agreement). Indeed, "[t]he *Swierkiewicz* holding applies with equal force to any claim ... that the *McDonnell Douglas* framework covers" and "retains its vitality in the wake of *Twombly* and *Iqbal.*" *Langford v. Int'l Union of Operating Eng'rs,* 765 F.Supp.2d 486, 497 (S.D.N.Y.2011) (citing *Bovkin v. KeyCorp,* 521 F.3d 202, 212–13 (2d Cir.2008)).

**\*4** At the pleading stage, *Swierkiewicz* teaches that a plaintiff is not required to come forth with allegations sufficient to make a prima facie case of employment discrimination or to satisfy the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Patane v. Clark,* 508 F.3d 106, 113 (2d Cir.2007). Rather, "a complaint must include ... a plain statement of the claim ... [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz,* 534 U.S. at 512 (internal quotations omitted). Accordingly, to overcome a Rule 12(b)(6) motion to dismiss in an employment discrimination case, a complaint must give fair notice of the basis of plaintiff's claims and the claims themselves must be facially plausible.

In this action, plaintiff proceeds *pro se.* Courts are to review *pro se* complaints under a more lenient standard than that applied to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Accordingly, the Court construes his submissions liberally and interprets them "to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 471 (2d Cir.2006) (emphasis in original) (internal quotations omitted). Although this applies with particular force when a plaintiff alleges civil rights violations, *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004), the Court need not accept as true plaintiff's "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994).

In ruling on a motion for judgment on the pleadings, this Court considers plaintiff's Complaint as well as exhibits or documents incorporated by reference without converting the motion into one for summary judgment. *See*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995). This Court may also consider any document integral to the complaint upon which it "relies heavily," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002), documents "in possession of the party opposing the motion," *Prentice v. Apfel*, 11 F.Supp.2d 420, 424 (S.D.N.Y.1998), or matters of public record for which it make take judicial notice. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

*DISCUSSION*

Plaintiff brings this employment discrimination action pursuant to Title VII and the ADEA. Defendant HRA has moved for judgment on the pleadings under Rule 12(c), FED. R. CIV. P.

I. *The HRA Is Not a Suable Entity Under New York Law*

In his Complaint, plaintiff names as defendant the "Human Resources Administration." (Docket # 2 at 1–2.) Under Rule 17(b), FED. R. CIV. P., the HRA's capacity to be sued is determined by state law. Chapter 17, section 396 of the New York City Charter provides that "all actions and proceedings for the recovery of penalties for violation of any law shall be brought in the name of the city of New York and not that of any agency except where otherwise provided by law."

**\*5** As a municipal agency of New York City, the HRA is not a suable entity. N.Y. City Charter, chap. 17 § 396; *see Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir.2008) ("In any case, Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."). Accordingly, all of plaintiff's claims against the HRA are dismissed.

Even if I were to construe plaintiff's claims as having been asserted against the City of New York, plaintiff has still failed to state a claim for the reasons set forth below.

II. *Plaintiff Fails to State a Claim Upon Which Relief May be Granted Under Either Title VII or the ADEA*

a. *Plaintiff Fails to State a Claim Under Title VII*

Title VII of the Civil Rights Act of 1964 prohibits

employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin," but it does not encompass claims based on general animus or hostility. 42 U.S.C. § 2000e–2(a). At the pleading stage, a complaint must allege the essential elements of an employment discrimination claim. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir.2007). To state a claim of national origin discrimination under Title VII, a plaintiff must allege that he belongs to a protected class, suffered an adverse employment action, and that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Sanders v. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir.2004).

"Title VII imposes liability for employment discrimination only on an 'employer.' " *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir.2005). As such, the existence of an employer-employee relationship is the "primary element" of a discrimination claim under Title VII. *See Gulino v. N.Y. State Ed. Dep't*, 460 F.3d 361, 37072 (2d Cir.2006). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir.1996) (citing 42 U.S.C. § 2000e(b)). The term "employer" is viewed functionally, encompassing persons who are not technically employers "but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *McCray v. City Univ. of N.Y.*, 2011 WL 1197467, at *4–5 (S.D.N.Y. Mar.25, 2011) (internal quotations omitted) (dismissing Title VII claim against defendant where plaintiff "failed to sufficiently allege that [defendant] CUNY was her employer").

Plaintiff's failure to allege an employer-employee relationship between himself and the HRA is fatal to his claim for employment discrimination under Title VII. "Title VII is an *employment* law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers." *Kern*, 93 F.3d at 45 (emphasis in original) (internal quotations omitted). Plaintiff has not alleged in his Complaint or accompanying exhibits that the City of New

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

York—the proper defendant in this case—was ever his employer or prospective employer, or that plaintiff ever sought or applied for a position with the City of New York.[FN2] Accordingly, plaintiff fails to state a claim for employment discrimination under Title VII. *See id.* (affirming denial of plaintiff's motion to amend complaint to add Title VII claim against the City of New York); *see, e.g., Krasner v. Episcopal Diocese of Long Island,* 374 F.Supp.2d 306, 309 (E.D.N.Y.2005) (granting motion to dismiss Title VII discrimination claim where complaint failed to allege an "employee-employer relationship between the parties"); *McCray,* 2011 WL 1197467, at *4 (same); *Lunts v. Rochester City Sch. Dist.,* 2011 WL 4074574, at *4 (W.D.N.Y. Sept.13, 2011) (same).

> FN2. A review of plaintiff's 106–page Complaint indicates only that plaintiff applied for—and was denied—employment at two potential employers: Princeton University's Plasma Physics Laboratory, and the Graduate School and University Center of the City University of New York. (Docket # 2 at 15, 16.) However, the rejection letters from these two entities that plaintiff includes with his Complaint are dated October 29, 1990, and August 31, 1994, respectively—long before the events at issue. (*Id.*)

**\*6** Plaintiff also fails to plausibly allege that the City of New York took an adverse employment action against him. An adverse employment action must "cause a materially adverse change in the terms and conditions of employment." *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007). The action cannot be a "mere inconvenience," but may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 499 (2d Cir.2009) (internal quotations omitted). Again, plaintiff has not alleged that he ever worked for or applied for any position with the City of New York, much less that the City demoted plaintiff, terminated plaintiff, or otherwise diminished his responsibilities. Accordingly, plaintiff cannot sustain a claim of employment discrimination against the City of

New York under Title VII. *See Jackson v. N.Y. State Dep't of Labor,* 709 F.Supp.2d 218, 226–28 (S.D.N.Y.2010) (dismissing Title VII claim alleging that defendant "transferred [plaintiff] to an undesirable work assignment").

Although not addressed by the parties, I note that plaintiff could have alleged discrimination under an "alternative theory of liability" in which the City, acting as an "employment agency" under Title VII, restricted plaintiff's access to employment. *See, e.g., Lunts,* 2011 WL 4074574, at *5 (raising *sua sponte* and dismissing possible Title VII "employment agency" claim against defendant where plaintiff had failed to allege defendant was her employer). An employment agency violates Title VII if fails or refuses "to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(b). An "employment agency" is "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." *Id.* § 2000e(c). To state a claim under this theory, plaintiff must allege that the City of New York refused or failed to refer plaintiff to an available position with an employer on the basis of discriminatory animus regarding his national origin. *See EEOC v. Kelly Servs., Inc.,* 598 F.3d 1022, 102931 (8th Cir.2010).

Read generously, plaintiff's Complaint fails to state a claim under such a theory of liability. First, plaintiff does not identify any specific position or occupation to which HRA refused to refer him, much less that HRA did so on the basis of his national origin. Moreover, plaintiff does not allege in his Complaint that HRA's failure or refusal to refer him to any such position constituted an "adverse employment action" under Title VII. *See EEOC,* 598 F.3d at 1030 (declining to decide whether alleged refusal to refer constituted an adverse employment action because plaintiff still "failed to show that [employer] had an available position to which [defendant employment agency] could actually refer"). Lastly, plaintiff has alleged no facts to show that any HRA case worker refused to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

refer plaintiff to an available position with an outside employer based on his Russian and Jewish heritage.

**\*7** Accordingly, defendant's motion for judgment on the pleadings as to plaintiff's claim for discrimination on the basis of national origin under Title VII is granted.

b. *Plaintiff Fails to State a Claim Under the ADEA*

The ADEA makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Congress "modeled" the substantive provisions of the ADEA "upon the prohibitions of Title VII." *Mabry v. Neighborhood Defender Serv.,* 769 F.Supp.2d 381, 391–92 (S.D.N.Y.2011) (quoting *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)). Accordingly, "interpretations of the substantive antidiscrimination provisions of Title VII apply 'with equal force' in the context of ADEA age discrimination cases." *Id.* (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111,121 (1985)).

As with a claim under Title VII, at this stage the plaintiff must allege the essential elements of an employment discrimination claim. *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007). Plaintiff must allege that he was a member of a protected class, his employer took an adverse employment action against him, and this action occurred under circumstances from which a discriminatory motivation can be inferred. *Mabry,* 769 F.Supp.2d at 391–92. In alleging disparate treatment based on age, a plaintiff must further demonstrate that his age "actually motivated the employer's decision" and had a "determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Plaintiff has not alleged any facts to support his claim that the City of New York discriminated against him on the basis of his age. Born in 1950, plaintiff has sufficiently alleged that he is a member of the protected class, but has not shown any facts to make his ADEA claim "plausible on its face." *Perry v. N.Y. State Dep't of Labor,* 2009 WL

2575713, at \*3 (S.D.N.Y. Aug.20, 2009) (quoting *Patane,* 508 F.3d at 111–12). Plaintiff's Complaint and its accompanying exhibits are replete with allegations that an HRA case worker prepared a "false," "fake," "altered," or "fabricated" employability plan for plaintiff (Docket # 2 at 3; *id.* # 2–1 at 25–26; *id.* # 2–2 at 3, 9, 21–25), but they allege no facts that raise an inference of possible discriminatory animus on the basis of age. Moreover, in neither of plaintiff s verified complaints to the NYSDHR did he plead any facts suggesting that HRA case workers were motivated by age-based animus in preparing his employability plans. (Docket # 2–1 at 25–26; Docket # 2–2 at 9–10.) The entirety of plaintiff's allegations of age discrimination appear to be his written notation, "also age is factor," on a single page of his Complaint. (Docket # 2 at 3.)

**\*8** Moreover, as discussed with respect to plaintiff's claim under Title VII, plaintiff has not adequately alleged the existence of an adverse employment action. Plaintiff asserts that the HRA engaged in a "[v]ery long and bad case of discrimination and intentionally misrepresentation by HRA" of his employment status (*id.* at 2), but does not allege that following the issuance of his employability plans, the City of New York or any of its agencies ever refused to hire or promote plaintiff or that he ever applied for a position with any such agency.

This Court is mindful that the pleading requirements in an employment discrimination action are "very lenient." *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998). However, "[t]he special solicitude afforded to a *pro se* litigant does not relieve the plaintiff of his obligations under Rule 8." *Perry,* 2009 WL 257513, at \*3 (dismissing amended *pro se* complaint where plaintiff "failed to set forth any allegations that raise a plausible inference of discriminatory motivation" as to race or age). In this case, plaintiff's allegations of age discrimination amount to his inclusion in the ADEA's protected class and the HRA's failure to "create real and sufficient Employability Plan[s]" by "misrepresent[ing]" and "fabricat[ing]" his personal data. (Docket # 2 at 3.) Read generously, these allegations standing alone are insufficient to properly plead a claim of age discrimination under the ADEA.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

Accordingly, defendant's motion for judgment on the pleadings as to plaintiff's claim of age discrimination under the ADEA is granted.

c. *Plaintiff Fails to State a Claim for Retaliation*

In addition to alleging that HRA failed to hire plaintiff, failed to promote plaintiff, and provided him "unequal terms and conditions" of his employment, plaintiff also claims retaliation "for numerous [sic] previous complaints." (*Id.* at 2–3.) To state a retaliation claim, a plaintiff must demonstrate that (1) he engaged in protected activity by opposing an employment practice made unlawful under the relevant statute; (2) his employer was aware of plaintiff's protected activity; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Jackson v. N.Y. State Dep't of Labor,* 709 F.Supp.2d 218, 227 (S.D.N.Y.2010) (citing *McMenemy v. City of Rochester,* 241 F.3d 279, 282–83 (2d Cir.2001)). At this stage, plaintiff need not establish a prima facie case of discrimination, but must nonetheless "allege facts that state a plausible retaliation claim." *Id.* at 228.

This Court assumes for the purposes of this motion that plaintiff has adequately alleged the first two elements of a retaliation claim. Plaintiff filed a verified complaint with the NYSDHR on June 27, 2008 alleging that the HRA discriminated against him on the basis of his national origin in preparing his employability plans. (Docket # 2–1 at 25–26.) "Participation in protected activity includes expressing opposition to employment practices unlawful under Title VII [or relevant statute] ...." *Swift v. Countrywide Home Loans, Inc.,* 770 F.Supp.2d 483, 486 (E.D.N.Y.2011); *see also Jackson,* 709 F.Supp.2d at 228 (finding that plaintiff's complaint with the NYSDHR constituted opposition to an employment practice for purposes of retaliation claim). This Court reads plaintiff's Complaint to mean that in retaliation for filing his first June 27, 2008 complaint with the NYSDHR, HRA case workers intentionally misreported his education, employment history, and math and reading skills on his July 24, 2009 employability plan—the precise claim he alleged in his second verified complaint to the NYSDHR, which it dismissed in a written determination dated March 31, 2010. (Buhta Decl. Ex. D.)

**\*9** Construing plaintiff's Complaint generously, this Court concludes that plaintiff has failed to plead a plausible claim of retaliation against the City of New York. Plaintiff alleges no facts to plausibly suggest how he suffered an adverse employment action as a result of filing his first verified complaint in June 2008. Not only was the City neither his employer nor prospective employer, but the NYSDHR specifically noted that plaintiff "continued to receive his public assistance benefits without interruption" following the July 24, 2009 evaluation. (*Id.* at 2.) Moreover, the HRA promptly corrected any errors in a subsequent plan dated August 3, 2009. (Docket # 2–2 at 28–30.) Plaintiff does not allege that the errors in his July 24 plan adversely affected his employment or receipt of public assistance benefits in any material way.

Furthermore, plaintiff pleads no facts to demonstrate the required causal connection between his June 27, 2008 NYSDHR complaint and any later adverse employment action. *See Jackson,* 709 F.Supp.2d at 228 (dismissing *pro se* retaliation claim where plaintiff "allege[d] no facts to plausibly suggest that "she suffered an adverse employment action, or that there was a causal connection between her complaints [with the NYSDHR] and an adverse employment action"). Indeed, plaintiff does not allege that the individual HRA case workers who prepared his plan were adversely affected by his filing of his June 2008 complaint such that they would have reason to retaliate against him in intentionally preparing erroneous employability plans later on. *See, e.g., Alers v. Human Res. Admin.,* 2008 WL 4415246, at *8 (E.D.N.Y. Sept.24, 2008) (dismissing retaliation claim against HRA where plaintiff offered only "vague arguments" that HRA employees retaliated against him for filing worker's compensation claim).

For the reasons set forth above, defendant's motion for judgment on the pleadings as to plaintiff's claim of retaliation is granted.

III. *Plaintiff Cannot Recover Against the City of New York Under Section 1983*

Plaintiff names only the HRA as defendant in his Complaint. (Docket # 2 at 1–2.) Were this Court to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6085550 (S.D.N.Y.)

(Cite as: 2011 WL 6085550 (S.D.N.Y.))

construe plaintiff's claims as having been asserted against the City of New York for *Monell*-type violations under 42 U.S.C. § 1983, plaintiff still fails to state a claim for municipal liability. Under such a theory, a plaintiff may sue a municipality under section 1983 when the allegedly unlawful action was pursuant to an official policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 689–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *"Monell does not provide a separate cause of action," but rather "extends* liability" where a municipal organization's policies "led to an independent constitutional violation." *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) (emphasis in original) (citing *Monell,* 436 U.S. at 694). Because plaintiff's potential claims against the City of New York depend upon the existence of independent violations of the Constitution or federal law—and as this Court has found that none have been stated—plaintiff's *Monell*-type claims are likewise dismissed. *See id.* (affirming dismissal of plaintiff's *Monell* claims where district court "properly found no underlying constitutional violation").

## CONCLUSION

**\*10** For the reasons set forth above, defendant's motion for judgment on the pleadings is GRANTED. (Docket # 19.) The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is directed to enter judgment in favor of the defendant.

Defendant's counsel is directed to provide to plaintiff copies of all unreported cases cited herein.

SO ORDERED.

S.D.N.Y.,2011.

Shamilov v. Human Resources Admin.
Slip Copy, 2011 WL 6085550 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 1279071 (D.Conn.)

(Cite as: 2010 WL 1279071 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court,

D. Connecticut.
Daniel R. HEDGES, Plaintiff,
v.
TOWN OF MADISON, Madison Police Department,
Madison Board of Police Commissioners, Emile
Geisenheimer, Garry Gyenizs, Edward Kritzman,
Lawrence Moon, David Smith, Allen Gerard and Trent
Fox, Defendants.
Civ. No. 3:09CV1468 (PCD).

March 30, 2010.
West KeySummary**Civil Rights 78** ⟨key⟩ **1532**

78 Civil Rights

   78IV Remedies Under Federal Employment
Discrimination Statutes
      78k1532 k. Pleading. Most Cited Cases

   Employee's allegation that his employer's decision to
terminate him was based on the fact that he was nearing
the age of retirement was insufficient to make a prima
facie case of age discrimination. The employee did not
make any factual allegations in support of his conclusion.
This was the employee's only allegation concerning age
discrimination by his employer. Age Discrimination in
Employment Act of 1967, § 2, 29 U.S.C.A. § 621.
Edmond Clark, Madison, CT, for Plaintiff.

Nicole D. Dorman, Scott M. Karsten, Karsten, Dorman &
Tallberg LLC, West Hartford, CT, for Defendants.

*RULING ON DEFENDANTS' MOTION TO
DISMISS*

PETER C. DORSEY, District Judge.
   **\*1** Plaintiff Daniel R. Hedges brings this fifteen count
complaint against Defendants Town of Madison et al.,
alleging violations of the Age Discrimination in

Employment Act, 29 U.S.C. § 621 et seq.; Title VII of the
Civil Rights Act, 42 U.S.C. § 2000e et seq.; the
Americans with Disabilities Act, 42 U.S.C. §§ 12101-17;
Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;
the Health Insurance Portability and Accountability Act,
42 U.S.C. § 1320 et seq.; the Connecticut Fair
Employment Practices Act, Conn. Gen.Stat. §§
46a-60(a)(1), 46a-60(a)(4), 46a-60(a)(5); and the
Connecticut Workers' Compensation Act, Conn. Gen.Stat.
§ 31-275 et seq. Plaintiff also alleges violations of his due
process rights, intentional infliction of emotional distress,
negligent infliction of emotional distress, negligent
supervision, defamation and civil conspiracy. Defendants
move pursuant to FED.R.CIV.P. 12(b)(6) to dismiss all
counts of the complaint [Doc. No. 11]. For the reasons
stated herein, this motion is **granted.**

**I. BACKGROUND**

   The following facts are recited according to the
complaint. *See Ashcroft v. Iqbal, --- U.S. ----, ----, 129
S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).* Plaintiff
Daniel R. Hedges is a resident of the State of Connecticut.
(Compl.¶ 4.) He is a 47 year old male and a career public
safety officer. (*Id.* ¶ 5.) Defendant Town of Madison is a
municipal corporation in the State of Connecticut.
Defendant Madison Police Department ("the
Department") is the police department of the Town as
established under the statutory authority of the State.
Defendant the Madison Board of Police Commissioners
("the Board") is an administrative agency charged with
authority over the Department. It consists of five
individuals. Defendant Emile Geisenheimer, sued in his
individual capacity, is a member of the Board. Defendant
Garry Gyenizs, sued in his individual capacity, is a
member of the Board. Defendant Edward Kritzman, sued
in his individual capacity, is a member of the Board.
Defendant Lawrence Moon, sued in his individual
capacity, is a member of the Board. Defendant David
Smith, sued in his individual capacity, is a member of the
Board. Defendant Allen Gerard, sued in his individual
capacity, is a member of the Department. Defendant Trent
Fox, sued in his individual capacity, is member of the
Department. (*Id.* ¶¶ 5-15.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1279071 (D.Conn.)

(Cite as: 2010 WL 1279071 (D.Conn.))

In 1991, Plaintiff sought employment as a police officer with the Department. The Board, which is responsible for the hiring and discipline of officers, reviewed Plaintiff's application and appointed him a Madison police officer. Plaintiff worked as a patrol officer for the next seventeen years. He was also responsible, in part, for the Department armory and served as a firearms safety instructor. He received several commendations for outstanding service. (*Id.* ¶¶ 21-30.)

During his employment, Plaintiff suffered from a variety of medical conditions, including lyme disease, dry eye syndrome, tendinitis, arthritis, high blood pressure and low testosterone levels as well as pain in his neck, back, shoulder and elbow. The Department was aware of Plaintiff's medical issues. Plaintiff states that these medical conditions caused stress and anxiety for which he continues to seek treatment. (*Id.* ¶¶ 32-35.) During his employ, Plaintiff was a member of the International Brotherhood of Police Officers and the terms and conditions of his employment were covered by a contract established through the collective bargaining process. Upon the attainment of twenty years of service, Plaintiff would have been eligible for retirement benefits. (*Id.* ¶¶ 36, 40.)

**\*2** On April 26, 2007, Plaintiff was involved in an automobile accident while on patrol duty. Plaintiff was transported by ambulance to Middlesex Hospital and suffered injuries to his neck, back, shoulder and elbow for which he continues to receive medical treatment. Plaintiff filed a worker's compensation claim, which the Town contested, arguing that he had a pre-existing injury. The worker's compensation claim is currently pending. Also on April 26, 2007, the Department began an Internal Affairs Investigation ("IA") concerning Plaintiff's automobile accident. On May 16, 2007, Chief of Police Paul Jakubson placed Plaintiff on unpaid administrative leave. (*Id.* ¶¶ 41-49.)

Plaintiff alleges that the IA stemming from his accident breached protocol. In 2007, the Board gave the Town Attorney, William Clendenen, control over and responsibility for IAs. The Chief of Police had previously held this authority. Plaintiff claims, without explanation, that this change in procedure "bastardized [sic] the IA

process" and eroded the relationship between the investigation and the Board as final decision maker. Plaintiff also claims that the investigation which led to his termination was "flawed, biased, prejudiced" and based upon untruths. (*Id.* ¶¶ 50-55.)

Lieutenant Gerard was assigned oversight of the IA. Sergeants Fox and Daniels were assigned as the chief investigators. The complaint alleges myriad violations of police protocol by officers Gerard, Stimpson, Dobbin and Fox. Most are unrelated to the investigation. (*Id.* ¶¶ 74-97.) Plaintiff further alleges that the investigation and the decision to terminate him were "not credible for reasons [sic] the individuals comprising the links in the investigation and prosecution of the Plaintiff were all tainted by their acts of broken trust and dishonest motivations." (*Id.* ¶ 98). Although the complaint is rife with such statements, factual details and allegations of specific wrongdoing are not provided.

On January 25, 2008, the Board advised Plaintiff that he was charged with seventeen counts of offenses and violations of Department rules and regulations including untruthfulness, disrespect to other officers, incivility, conduct unbecoming a police officer and absence without authority. He was told that the Board would be considering his termination. (*Id.* ¶¶ 110-112 .) According the complaint, Plaintiff was not interviewed during the investigation against him. (*Id.* ¶ 113.) On April 28, 2008, the Board held a hearing on the charges. To enter the hearing, Plaintiff and his family members were required to walk through a metal detector. Only Plaintiff and his family were submitted to this security measure. (*Id.* ¶ 115.)

At the hearing, Clendenen presented the case against Plaintiff and then accompanied the Board in its executive session. After this session, Clendenen introduced additional charges against Plaintiff. Plaintiff's counsel objected to the additional charges but was overruled. On May 29, 2008, the Board terminated Plaintiff's employment. Plaintiff argues that the grounds were "meritless." (*Id.* ¶¶ 116-121.) On October 6, 2008, the State of Connecticut Department of Labor began hearings in the grievance process initiated by Plaintiff's bargaining unit. On behalf of Plaintiff, the union argued that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1279071 (D.Conn.)

(Cite as: 2010 WL 1279071 (D.Conn.))

Plaintiff's termination violated his contract. (*Id.* ¶ 122.)

**\*3** On April 17, 2009, the internal affairs unit of the Connecticut State Police issued a report on the Madison Police Department concluding that the Department failed to implement all best practices, especially in the areas of supervision, communication and discipline. Plaintiff argues that this report corroborates his accusations of a "poisonous atmosphere within the department" and an "overzealous Board." (*Id.* ¶¶ 127-128.)

On November 25, 2008, Plaintiff filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). The CHRO released jurisdiction on July 14, 2009 and the EEOC released jurisdiction on August 7, 2009. (*Id.* ¶¶ 129-133.)

**II. STANDARD OF REVIEW**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir.1984)* (quoting *Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980)*). In ruling on a motion under FED. R. CIV. P. 12(b)(6), the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.2007).*

The district court may dismiss a claim under FED. R. CIV. P. 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft, 129 S.Ct. at 1949.*

For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." *Bell Atlantic, 550 U.S. at 555.*

**III. DISCUSSION**

**A. Discrimination**

**1. Age Discrimination in Employment Act**

Plaintiff asserts that Defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* "A plaintiff asserting an employment discrimination claim must meet an initial burden of presenting evidence sufficient to establish a *prima facie* case of the alleged violation.... A *prima facie* case of discharge resulting from age discrimination is established if the plaintiff shows, through direct or circumstantial evidence, that: (1)[s]he was within the protected age group, (2)[s]he was qualified for the position, (3)[s]he was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of discrimination." *Burger v. New York Institute of Technology, 94 F.3d 830, 833 (2d Cir.1996)* (citing *Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir.1995)*). Plaintiff states that he was 47 years old and therefore within the protected age group. However, in the entire 48 page complaint, Plaintiff's only allegation even remotely concerning age related discrimination is this single sentence: "their decision to terminate him from employment [sic] were made for reasons [sic] he was drawing close to the age of retirement under the terms and conditions of the collective bargaining agreement, and would soon be eligible for the full pension benefits as defined herein." (Compl.¶ 138.) This threadbare recital of a conclusion, unsupported by a single factual allegation, is simply insufficient to raise the inference of discrimination necessary for a *prima facie* case. Count I is therefore dismissed.

**2. Title VII and the Connecticut Fair Employment Practices Act**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1279071 (D.Conn.)

(Cite as: 2010 WL 1279071 (D.Conn.))

**\*4** Title VII of the Civil Rights Act makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Similarly, under the Connecticut Fair Employment Practices Act ("CFEPA"), it is unlawful "for an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness." Conn. Gen.Stat. § 46a-60(a)(1).

Plaintiff's claims for both discrimination and retaliation under these statutes fail because he does not allege that he is a member of any class protected under either statute. Plaintiff alleges that he was discriminated against because of his family responsibilities. In his response to the motion to dismiss, Plaintiff argues that his protected class is "gender plus" or "male plus family responsibilities in a family with health issues". The Second Circuit held that "sex plus" or "gender plus" discrimination, which involves a policy or practice by which an employer classifies employees on the basis of sex plus another characteristic, is actionable. However, "the term 'sex plus' or 'gender plus' is simply a heuristic. It is, in other words, a judicial convenience developed in the context of Title VII to affirm that plaintiffs can, under certain circumstances, survive summary judgment even when not all members of a disfavored class are discriminated against." *Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107, 119-120 (2d Cir.2004). [FN1] Therefore, Plaintiff must still allege discrimination or classification at least in part on the basis of gender. He fails to do so. He does not allege that Defendants took his gender into account when making decisions, nor does he allege a policy or practice that discriminates against the sub-class of "men with family responsibilities". To be actionable as sex discrimination, a decision must have been made at least in part because of

a plaintiff's gender. Here, Plaintiff does not allege that his gender influenced Defendants' decisions nor that he was treated differently from his female colleagues. Counts II, VI, VII and VIII are therefore dismissed.

FN1. Plaintiff also cites *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) and *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) as defining "gender plus" discrimination. Neither case establishes such a category.

**3. Americans With Disabilities Act**

Plaintiff alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability." *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 149 (2d Cir.1998) (citing *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869-70 (2d Cir.1998)). Although Plaintiff alleges that he suffered several job related injuries as well as stress and anxiety, he fails to allege that these impairments were disabilities within the meaning of the ADA. The ADA defines "disability" as an impairment that "substantially limit[s] one or more major life activities." 42 U.S.C. § 12102(1)(A). Although Plaintiff's opposition to the motion to dismiss discusses this legal definition at length, he asserts no facts tending to show that his medical conditions limited his life activities. The medical conditions listed in the complaint seem unlikely to have a substantial impact on his major life activities and Plaintiff has not alleged a physical handicap or impairment. In fact, Plaintiff's only discussion of his ability level is his claim: "by all indication, Plaintiff was capable of performing the essential functions of his position." (Pl.'s Opp. to Mot. Dismiss at 25.) Therefore, Count III is dismissed.

**4. Rehabilitation Act**

**\*5** Plaintiff also alleges discrimination under Section 504 of the Rehabilitation Act, which states: "no otherwise

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1279071 (D.Conn.)

(Cite as: 2010 WL 1279071 (D.Conn.))

qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794. However, as just discussed, Plaintiff fails to allege that he has a disability or that his health issues amount to a "substantial impediment." 29 U.S.C. § 705(20). Therefore, Count IV is dismissed.

**C. Health Insurance Portability and Accountability Act**

Plaintiff alleges that Defendant Gerard violated the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320 *et seq.*, by discussing Plaintiff's health with persons not involved in the internal investigation. (Compl.¶ 136.) However, there is no private right of action under HIPAA. *Rzayeva v. U.S.,* 492 F.Supp.2d 60, 78-80 (D.Conn.2007). Therefore, Count V is dismissed.

**D. Connecticut Workers' Compensation Act**

The Connecticut Workers' Compensation Act provides: "no employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." Conn. Gen.Stat. § 31-290(a). Plaintiff alleges that he filed a claim for compensation of a work-related injury and that "as a further and direct and proximate result of Defendants' actions and omissions, the Plaintiff suffered termination from employment to his financial detriment." (Compl.¶ 139.) Plaintiff completely fails to elaborate on his claim of discrimination, stating only that: "it is not the opposition that plaintiff claims as the act of discrimination, but his termination by the Defendants subsequent to the filing of his claim." (Pl.'s Opp. to Mot. Dismiss at 31.)

Plaintiff fails to make any factual allegations to support this contention. As noted above, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Ashcroft,* 129 S.Ct. at 1949. Although detailed factual allegations are not required, a plaintiff

must provide the grounds of his entitlement to relief beyond mere "labels and conclusions." *Bell Atlantic,* 550 U.S. at 555. Plaintiff has completely failed to assert the grounds for this claim beyond the bare statement of his own conclusion. Count IX is therefore dismissed.

**E. State Common Law Claims**

Plaintiff alleges intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, defamation and civil conspiracy pursuant to Connecticut common law. These claims stem from his termination and the process surrounding his termination.

**\*6** Plaintiff's employment relationship was governed by a collective bargaining agreement between the Town of Madison and the International Brotherhood of Police Officers. (Pl.'s Opp. to Mot. Dismiss at 41.) The agreement provides a three step procedure for filing a grievance relating to discharge, suspension or disciplinary action. Plaintiff followed the first two steps, first submitting the grievance in writing to the chief and then submitting the grievance in writing to the Board of Police Commissioners. Through union representation, Plaintiff then began step three, submitting the grievance to the Connecticut State Board of Mediation and Arbitration ("State Board"). However, on December 1, 2009, Plaintiff withdrew his grievance from arbitration. (Defs.' Mem. in Reply, Ex. A.)

Plaintiff argues that despite this withdrawal, he exhausted the administrative procedures available to him. He argues that the final step in the procedure is not mandatory. Plaintiff misunderstands the nature of exhaustion of administrative remedies. He is correct that it is not mandatory to file a grievance with the State Board in the sense that an allegedly wronged party is never forced to take administrative or legal action. However, exhaustion of administrative remedies is defined by the pursuit of all available administrative avenues of redress before filing a complaint in court. Therefore, a plaintiff has not exhausted his administrative remedies if he has chosen not to take advantage of an available administrative process, even if the process is not mandatory. In this case, Plaintiff was required to complete the third step of the grievance procedure in order to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1279071 (D.Conn.)

(Cite as: 2010 WL 1279071 (D.Conn.))

exhaust his administrative remedies.

"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement.... Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction.... The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes." *City of Hartford v. Hartford Municipal Employees Ass'n.,* 259 Conn. 251, 788 A.2d 60, 79-80 (Conn.2002) (citations omitted). Before resort to the courts is allowed, a union employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement. Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. *Id.; see also Hunt v. Prior* 236 Conn. 421, 673 A.2d 514 (Conn.1996).

Although Conn. Gen.Stat. § 31-51bb [FN2] "authorizes an employee who has failed to exhaust the grievance procedures in a collective bargaining agreement to pursue a cause of action in the Superior Court if the cause of action arises under the state or federal constitution or under a state statute," it does not apply to causes of action arising under common law. *Hunt,* 673 A.2d at 520, n. 22. The well established requirement that a union employee exhaust all possible grievance procedures applies to common law causes of action. Therefore, Counts X, XI, XII, XIII and XV are dismissed.

FN2. Conn. Gen.Stat. § 31-51bb states: "no employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."

### F. Procedural Due Process

**\*7** Plaintiff's withdrawal of his case from arbitration before the State Board is also fatal to his procedural due process claim. As just discussed, although a union member is not required to pursue remedies for perceived wrongs, if a plaintiff does not pursue all available administrative means of redress, he cannot claim to have fulfilled the exhaustion requirement. Although 42 U.S.C. § 1983 does not usually require exhaustion, a "plaintiff cannot claim a lack of due process when he chooses not to exhaust the process available to him.... If a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Carroll v. Ragaglia,* 292 F.Supp.2d 324, 341-42 (D.Conn.2003) (citing *Vialez v. New York City Hous. Auth.,* 783 F.Supp. 109, 113 (S.D.N.Y.1991); *Marino v. Ameruso,* 837 F.2d 45, 47 (2d Cir.1988); *Tall v. Town of Cortlandt,* 709 F.Supp. 401, 408 (S.D.N.Y.1989)).

Because Plaintiff failed to avail himself of all grievance procedures, "he cannot complain that his termination was in violation of due process. Although a plaintiff is generally not required to exhaust administrative remedies before bringing a § 1983 suit, this rule does not apply to procedural due process challenges if the plaintiff failed to avail himself of the very administrative procedures he attacks as inadequate." *Dotson v. Griesa,* 398 F.3d 156, 161 n. 2 (2d Cir.2005).[FN3] Therefore, Count XIV is dismissed.

FN3. *See also Narumanchi v. Bd. of Trs. of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988) (affirming dismissal of procedural due process claim because tenured teacher failed to submit to his union's grievance procedures, as set forth in a collective bargaining agreement); *Aronson v. Hall,* 707 F.2d 693, 694 (2d Cir.1983) (affirming dismissal of procedural due process claim because "[h]aving chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process").

### IV. CONCLUSION

Page 7

Slip Copy, 2010 WL 1279071 (D.Conn.)

(Cite as: 2010 WL 1279071 (D.Conn.))

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 11] is **granted.** The Clerk shall close the case.

SO ORDERED.

D.Conn.,2010.

Hedges v. Town Of Madison
Slip Copy, 2010 WL 1279071 (D.Conn.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

456 Fed.Appx. 22, 2012 WL 101199 (C.A.2 (Conn.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 456 Fed.Appx. 22, 2012 WL 101199 (C.A.2 (Conn.)))

H

This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Daniel R. HEDGES, Plaintiff–Appellant,
v.
TOWN OF MADISON, Madison Police Department,
Madison Board of Police Commissioner, Emile
Geisenheimer, Garry Gyenizs, Edward Kritzman,
Lawrence Moon, David Smith, Allen Gerard, Trent Fox,
Defendants–Appellees.
No. 10–1566–cv.

Jan. 13, 2012.

**Background:** Employee brought action against employer defendants, claiming employment discrimination under a number of federal and state laws. The United States District Court for the District of Connecticut, Dorsey, J., 2010 WL 1279071, dismissed all the claims. Employee appealed.

**Holdings:** The Court of Appeals held that:

(1) employee failed to state a claim under the Age Discrimination in Employment Act (ADEA), but
(2) district court abused its discretion by exercising its supplemental jurisdiction and dismissing employee's state law claims.

Affirmed in part, reversed in part, and remanded.

West Headnotes

[1] Civil Rights 78 ⚷ 1532

78 Civil Rights

    78IV Remedies Under Federal Employment Discrimination Statutes

        78k1532 k. Pleading. Most Cited Cases
    Employee's allegation that he was fired because he was nearing the age of retirement, did not, without more, state a claim under the ADEA. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

[2] Federal Courts 170B ⚷ 18

170B Federal Courts

    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk14 Jurisdiction of Entire Controversy; Pendent Jurisdiction
                170Bk18 k. Validity or substantiality of federal claims and disposition thereof. Most Cited Cases
    District court abused its discretion by exercising its supplemental jurisdiction and dismissing employee's state law employment discrimination claims after dismissing employee's federal claims for failure to state a claim, given the early stage of the proceedings and federal courts' deference to state courts.

*22 Appeal from the United States District Court for the District of Connecticut (Dorsey, J.).

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is AFFIRMED in part and REVERSED and REMANDED in part.Edmond Clark, Law Office of Edmond Clark, Madison, C.T., for Appellant.
Scott M. Karsten, Karsten, Dorman & Tallberg, LLC, West Hartford, C.T., for Appellees.

Present: PIERRE N. LEVAL, ROSEMARY S. POOLER, DEBRA A. LIVINGSTON, Circuit Judges.

**SUMMARY ORDER**

**\*\*1** Appellant Daniel Hedges brought suit against his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

456 Fed.Appx. 22, 2012 WL 101199 (C.A.2 (Conn.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 456 Fed.Appx. 22, 2012 WL 101199 (C.A.2 (Conn.)))

former employer, the Town of Madison, Madison's police department, and various Madison officials, claiming employment**23** discrimination under a number of federal and state laws. The district court dismissed all of his claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Hedges appeals the dismissal of his claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ( "ADA"); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60(a)(1); and the due process clause of the Connecticut Constitution. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) de novo. *Simmons v. Roundup Funding, LLC,* 622 F.3d 93, 95 (2d Cir.2010). The pleading standard for employment discrimination complaints is somewhat of an open question in our circuit. Prior to 2002, we required that plaintiffs claiming employment discrimination plead a prima facie case under the *McDonnell–Douglas* framework, which in turn required the plaintiff to show "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). This is the standard the district court applied to Hedges's ADEA and ADA claims. But the Supreme Court in *Swierkiewicz v. Sorema N.A.* expressly held "that an employment discrimination plaintiff need not plead a prima facie case of discrimination," *id.* at 515, 122 S.Ct. 992, indicating that notice pleading under Rule 8(a) was sufficient for employment discrimination act claims. *Swierkiewicz* came before *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), however, and it relied on the *Conley* standard of pleading which those cases rejected. *See Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992. In *Twombly,* the Court said that its analysis of the relevant pleading standard did not run counter to *Swierkiewicz,* because *Twombly* did not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief

that is plausible on its face." 550 U.S. at 570, 127 S.Ct. 1955. Still, *Swierkiewicz's* reliance on *Conley* suggests that, at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal,* even if pleading a prima facie case is not required. We need not resolve these conflicts here, however, for Hedges's claims fail any conceivable standard of pleading.

**\*\*2** [1] Hedges's first allegation is that he was fired by defendants because he was nearing the age of retirement. This, he alleges, constitutes a violation of the ADEA. Outside of those facts going to Hedges's age itself (which was not in dispute), this is the only fact alleged in the complaint to constitute evidence of age discrimination. But under any standard of pleading, this would not be sufficient, because the Supreme Court has held that firing an employee to "prevent his pension benefits from vesting," does "not, without more, violate the ADEA." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 612, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Without an allegation that Madison was using pension status as a proxy for age, in order to discriminate on the basis of age, *id.* at 612–13, 113 S.Ct. 1701, that the pension vested due to age and not years of service (which was not the case here), *id.* at 613, 113 S.Ct. 1701, or some other allegations supporting age discrimination, even if it were true that Madison fired Hedges to keep him from his pension, it would not violate the ADEA. Dismissal on this count was proper.

**\*24** Dismissal of Hedges's ADA and Rehabilitation Act claims was also proper. A person is disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities ..." 42 U.S.C. § 12102(1)(A). A person is disabled under the Rehabilitation Act when he "(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services...." 29 U.S.C. § 705(20)(A). A person may also be disabled under the Rehabilitation Act if they are disabled under the ADA. *Id.* at § 705(20)(B). Hedges does not allege in his complaint that he is disabled under either of these Acts. He argues instead that the district court should have *inferred* he was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

456 Fed.Appx. 22, 2012 WL 101199 (C.A.2 (Conn.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 456 Fed.Appx. 22, 2012 WL 101199 (C.A.2 (Conn.)))

disabled because he alleged that he has "suffered a variety of medical conditions, including Lyme Disease, Dry Eye Syndrome, tendonitis, arthritis, high blood pressure, low testosterone levels, and pain in his neck back, shoulder and elbow." But even the most liberal standard of pleadings does not require a court to make such inferences. Even if it did, and Hedges adequately pleaded disability, he has not adequately pleaded discrimination on the basis of disability. Assuming the most minimal of notice pleading standards, a plaintiff is still required to give fair notice to the defendants of the factual bases for his claims. Hedges has not done that, alleging not a single fact in support of his claims of discriminatory treatment which might conceivably give notice of the basis of his claims to the defendants. These counts were also properly dismissed under Rule 12(b)(6).

[2] In addition to his federal law claims, Hedges made a multitude of state law claims, sounding in Connecticut common law, the Connecticut Fair Employment Practices Act ("CFEPA") and due process under the state constitution. The district court exercised its supplemental jurisdiction to dismiss those claims. We review the district court's decision to exercise its supplemental jurisdiction for abuse of discretion. *Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006). The Supreme Court has directed federal courts to consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). It has further directed that "[w]hen the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* On the record before us, there is nothing to suggest that the district court conducted the required inquiry. Given the early stage of these proceedings and our deference to state courts, we find the *Carnegie–Mellon* factors all weigh in favor of a dismissal without prejudice as to Hedges's CFEPA and procedural due process claims arising under the Connecticut Constitution. Accordingly, we reverse the

district court's dismissal of those state law claims. We remand with instructions to the district court to dismiss those claims without prejudice for reassertion in state court.

**\*\*3** Finally, we reject Hedges argument that he should have been granted leave to amend, despite his failure to request such a leave. "While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' no court can be said to have erred in failing to grant a request that was not made. As a result, the 'contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous.' " **\*25** *Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir.2011) (*quoting Horoshko v. Citibank, N.A.,* 373 F.3d 248, 249–50 (2d Cir.2004) (internal citation omitted)).

We have examined appellant's remaining arguments and find them to be without merit.

Accordingly, the judgment of the district court is hereby AFFIRMED in part and REVERSED and REMANDED in part.

C.A.2 (Conn.),2012.

Hedges v. Town of Madison
456 Fed.Appx. 22, 2012 WL 101199 (C.A.2 (Conn.))
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

W.D. New York.
Gary ALESSI, Plaintiff,
v.
MONROE COUNTY, Monroe County Sheriff's Department, and Robin Brown, in his own Official and Individual capacity, Defendant.
No. 07-CV-6163.

Jan. 13, 2010.

Christina A. Agola, Rochester, NY, for Plaintiff.

James L. Gelormini, Office of the New York State Attorney General, Howard A. Stark, Anthony M. Sortino, Gallo & Iacovangelo LLP, Rochester, NY, for Defendant.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.
**INTRODUCTION**
*1 Plaintiff Gary Alessi, Jr. ("plaintiff") a Sheriff's Deputy employed by the defendant Monroe County Sheriff's Department ("Sheriff's Department"), brings this action pursuant to 42 U.S.C. § 1983 and the New York State Human Rights Law ("NYSHRL") claiming that the defendants retaliated against him for exercising his right to freedom of speech. Specifically, plaintiff alleges that the defendants retaliated against him for complaining of hostile and dangerous working conditions allegedly created by defendant Robin Brown, a Lieutenant who, at the relevant times, supervised plaintiff. In addition, plaintiff claims violations of the Family Medical Leave Act ("FMLA").
Defendants, Monroe County and the Sheriff's Department [FN1] ("Monroe County defendants") move to dismiss the Complaint pursuant to Federal Rules of Civil

Procedure 12(c) on grounds that plaintiff has failed to state a cause of action for the violation of his right to be free from retaliation for exercising his rights under the First Amendment. The Monroe County defendants also claim that the plaintiff has failed to establish that the speech he engaged in was protected by the First Amendment. Moreover, the Monroe County defendants contend that no municipal policy or custom is alleged as to Monroe County. In addition, the County argues that plaintiff has failed to allege sufficient facts to state a claim regarding violations of the FMLA. For the reasons set forth below, I grant the Monroe County defendants' motion for judgment on the pleadings. Accordingly, the Complaint is dismissed as to the Monroe County defendants.[FN2]

> FN1. The defendants seek dismissal of the Complaint against the Sheriff's Department on the ground that it is not a proper defendant. See Def. Br. at 3. They argue that the Sheriff's Department is not a separate legal entity subject to suit. See id. Plaintiff has not opposed and in fact has conceded that the Sheriff's Department is not a proper defendant. See Pl. Opp. Br. at 9. Thus, the Sheriff's Department is dismissed as a defendant with prejudice. The Court will address claims relating only to defendant Monroe County.

> FN2. The Monroe County Attorney does not appear for, and has not moved on behalf of the remaining defendant Robin Brown. Sgt. Brown appears by separate counsel.

**BACKGROUND**

Unless otherwise noted, the following facts are taken from plaintiff's Complaint, including documents incorporated by reference or upon which plaintiff relied in drafting the Complaint. Plaintiff Alessi is a Deputy in the Monroe County Sheriff's Department. Plaintiff, who has worked for the Sheriff's Department for over 18 years, was, at the time the Complaint in this case was filed,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

assigned to the Monroe County Jail located in Henrietta, New York. In 2006, defendant Robin Brown, a Sergeant in the Sheriff's Department ("Brown"), was transferred to the Henrietta jail, and became plaintiff's supervisor. In April 2006, Brown called plaintiff into his office and reprimanded, yelled and screamed at him regarding something plaintiff allegedly did a few days earlier when plaintiff became sick at work. The reprimand related to an incident in which plaintiff became sick at work and after informing Brown, he was told to go home because of his "extreme illness."

Plaintiff asserts that several days later on or about April 2006, Brown called plaintiff into his office and said that when plaintiff went home early " 'you fucked me,' because plaintiff was supposed to do another relief that night for" another deputy. Further, plaintiff claims that he then spoke to that deputy regarding the incident and that deputy informed him that "it is O.K." Thereafter, plaintiff informed Brown that he spoke to the deputy involved about not relieving him and he was told it was "O.K." Upon hearing this Brown became extremely upset and yelled and screamed at plaintiff. Brown told plaintiff not to go behind his back. Plaintiff claims he felt threatened and so he started to walk out but Brown screamed at him to "get the fuck back in here." Brown then closed the door with plaintiff inside and threatened plaintiff saying "I'm not afraid of you" and "we can settle this right here."

**\*2** Immediately after the incident, plaintiff contacted the Union, claiming that Brown had created a hostile and abusive working environment. An investigation into the matter was commenced by the Sheriff's Department Internal Affairs Unit ("IAU"), and several months later, plaintiff was informed that the investigation found that Brown had acted in an unprofessional manner with respect to his conduct towards the plaintiff and he was reprimanded for his conduct. The investigation also found that the alleged threats Brown made to plaintiff were unfounded. Plaintiff was not satisfied with the Sheriff's Department's investigation, and contacted a member of the Department's Human Resources office. Plaintiff then met with the Undersheriff in October of 2006, who agreed to reopen the investigation into Brown's conduct. According to the Complaint, Brown continued to engage in harassing and demeaning conduct towards him. Plaintiff claims that in January 2007, Brown had an incident with another

deputy in front of the inmates and after such incident Brown was permanently transferred out of Henrietta and back to the Downtown Monroe County Jail.

With respect to plaintiff's FMLA claims, plaintiff alleges that in or about 2005, plaintiff's wife was diagnosed with Multiple Sclerosis, which severely affected her ability to take care of their two children ages 8 and 5. According to the Complaint, plaintiff filed the necessary paperwork for the FMLA qualifying leave and it was granted by the Monroe County Human Resources Department in June 2006. Plaintiff alleges that he took about 25 days of intermittent leave for each of the following one to two years, without incident. In February 2007, seven months after the June 2006 grant of FMLA leave rights to plaintiff, Monroe County sent a letter to plaintiff informing him that a medical re-certification for his FMLA was necessary. Thereafter, the County re-certified plaintiff for FMLA leave. Further, plaintiff claims that six months after he was granted the FMLA leave in June 2006, he started suffering retaliation concerning his FMLA qualifying leave. In January 2007 Capt. Palma allegedly disciplined plaintiff for calling Central Control when he needed to be out sick in December 2006. Capt. Palma issued a counseling memorandum, which plaintiff signed stating that plaintiff failed to comply with call-in requirements for two successive work absences. Plaintiff is still currently employed at the Monroe County Jail.

### DISCUSSION

#### I. *Motion for Judgment on the Pleadings*

In deciding a Rule 12(c) motion, courts apply the same standard as that applicable to a motion to dismiss under Rule 12(b)(6). *See Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Accordingly, when considering a motion to dismiss under Rule 12(b) (6), a trial court must "accept as true all factual statements alleged in the Complaint and draw all reasonable inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007) (citation omitted), although mere " 'conclusions of law or unwarranted deductions' " need not be accepted. *See First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore, James William & Jo Desha Lucas, Moore's Federal Practice ¶ 12. 08, at 2266-69 (2d

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

ed.1984)). Conclusory allegations " 'will not suffice to prevent a motion to dismiss.' " *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (quoting *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000)). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quotations omitted).

**\*3** Moreover, under Supreme Court precedent, a district court must determine whether the "[f]actual allegations ... raise a right to relief above the speculative level, on the assumption that all the allegations in the Complaint are true (even if doubtful in fact) ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the allegations in the Complaint must meet the standard of "plausibility." *See id.* at 563 n. 8, 564. *Twombly* does not require that the complaint provide "detailed factual allegations," *id.* at 555, however, it must "amplify a claim with some factual allegations ... to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2d Cir.2007).

Although, in the Rule 12(b)(6) context, the court is "normally required to look only to the allegations on the face of the complaint," it may also "consider documents ... that are attached to the complaint or incorporated in it by reference...." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). "[E]ven if not attached or incorporated by reference, a document 'upon which the complaint *solely* relies and which is *integral to* the complaint' may be considered by the court in ruling on such a motion." *Id.* (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)) (emphasis in original). "And whatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.' " *Id.* at 510 (quoting *Twombly,* 550 U.S. at 563.)

Here, the Complaint expressly references the joint complaint attached as exhibit 1 to the Declaration of James L. Gelormini ("Gelormini Decl.") in support of Monroe County's motion to dismiss. In addition, Monroe

County attached exhibits 2 and 3 which were communications relied on by plaintiff in ¶ ¶ 6 and 40 of the Complaint. Further, Monroe County attached exhibits 4 and 5 relating to documents on the re-certification of plaintiff's FMLA benefits, which are integral to the Complaint in this action. Accordingly, in determining the adequacy of plaintiff's claims, the court shall consider the documents/exhibits set forth above, as well as the Complaint itself. *See Rothman v. Gregor,* 220 F.3d 81, 99-89 (2d Cir.2000) (Court found that the documents attached to the affidavit in support of motion to dismiss were documents relied upon by plaintiff and were "documents that plaintiff either possessed or knew about and upon which they relied in bringing the suit"); *Roth,* 489 F.3d at 509; *see also Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989); *Fagan v. AmerisourceBergen Corp.,* 356 F.Supp.2d 198, 220 n. 7 (E.D.N.Y.2004). Thus, the Court will consider the County's exhibits for purposes of deciding this motion.

## II. *Plaintiff Cannot Establish Municipal Liability Absent A Custom, Policy or Practice*

**\*4** A municipality may be held liable as a "person" for purposes of § 1983 when a civil rights violation results from a municipality's policy or custom. *See Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Coon v. Town of Springfield,* 404 F.3d 683, 686 (2d Cir.2005), citing *Monell,* 436 U.S. at 694. A municipality, however, cannot be held liable under § 1983 for the actions of its employees or agents on the basis of *respondeat superior. See Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983), citing *Monell,* 436 U.S. at 691. Instead, to establish municipal liability in a § 1983 action, for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.' " *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir.2007), quoting *Batista,* 702 F.2d at 397. A plaintiff may establish the existence of a policy or custom by submitting evidence of the policy itself, or by "establishing that responsible supervisory officials acquiesced in a pattern of unconstitutional conduct by subordinates." *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 336 (S.D.N.Y.1999).

Plaintiff fails to plead any of these three elements.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

The § 1983 claim against Monroe County appears to be based entirely on retaliation against employees who exercise their First Amendment rights. However, even when read liberally, the Complaint does not plead facts showing that plaintiff's rights were violated pursuant to a municipal policy or custom. *See Kamholtz v. Yates County,* 2008 WL 5114964 at *8 n. 6 (Court held plaintiff "failed to proffer any evidence of a policy, custom, or failure to train, that led to any alleged constitutional violation.") Nor is there evidence that any municipal policymaker adopted any policy attributable to the County. *See Fisk v. Letterman,* 501 F.Supp.2d 505, 527 (S.D.N.Y.2007) ("[A] single incident of unconstitutional conduct by a non-policymaking employee of the City will generally not suffice to establish liability [under Section 1983]") (internal quotation marks omitted); *Davis v. City of New York,* 228 F.Supp.2d 327, 336 (S.D.N.Y.2002) (same). Indeed, in his opposition papers, plaintiff has not produced evidence of any County policy or custom, let alone a relationship between such a policy and action by the County that affected the plaintiff. Moreover, the § 1983 claim against the County does not allege that plaintiff's injuries resulted from any policy or custom. Accordingly, Monroe County's motion to dismiss plaintiff's § 1983 claim is granted.

### III. *Plaintiff has Failed to State a Claim for a Violation of his First Amendment Rights*

The Second Circuit Court of Appeals has acknowledged that "the elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case before the district court." *See Williams v. Town of Greenburgh,* 535 F.3d 71, 76 (2d Cir.2008). In this instance, where the plaintiff, a Deputy in the Sheriff's Department is a public employee who claims First Amendment retaliation, he must allege the following: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *See Johnson v. Ganim,* 342 F.3d 105, 112 (2d Cir.2003) (internal quotation marks and citations omitted); *Morrison v. Johnson,* 429 F.3d 48, 51 (2d Cir.2005); *see also Woodlock v. Orange Ulster B.O.C.E.S.,* 281 Fed.Appx. 66, 68, 2008 WL 2415726 at *1 (2d Cir.2008);

*Skehan v. Vill. of Mamaroneck,* 465 F.3d 96, 106 (2d Cir.2006); *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996).

**\*5** The First Amendment protects the right of public employees to speak-out without fear of reprisal on issues of public concern. *See Frank v. Relin,* 1 F.3d 1317 (2d Cir., 1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *see also Ezekwo v. NYC Health & Hosp. Corp.,* 940 F.2d 775, 780 (2d Cir.1991) (It is well-settled that a public employer may not discharge an employee in retaliation for the exercise of his or her free speech right). However:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to an employee's behavior.

*See Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Moreover, even where an employee has spoken out on matters of public concern, a public employer may still take employment action against the employee if the speech is likely to, or in fact has, disrupted the performance of governmental activities, or is detrimental to governmental efficiency. *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,* 444 F.3d 158, 162 (2d Cir.2006); *Mandell v. Cty. of Suffolk,* 316 F.3d 368 (2d Cir.2003); *Connick,* 461 U.S. at 140 (While a public employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," the government, as an employer, has an interest "in promoting the efficiency of the public services it performs through its employees"). Thus, this Court is charged with the task of balancing these competing interests.

Whether or not particular speech relates to a matter of public concern is "ordinarily a question of law decided on the whole record by taking into account the content, form, and context of the given statement." *See Melzer v. Bd. of Educ.,* 336 F.3d 185, 196 (2d Cir.2003); *see also Ruotolo v. City of New York,* 514 F.3d 184, 189 (2d Cir.2008). If the plaintiff is able to establish a prima facie case of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

retaliation, the court must then determine whether or not the government employer was justified in taking action against the employee. *See Garcetti v. Cebballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

Applying the above principles to the instant case, I find that plaintiff's speech-his allegations about his complaint against Brown to the Union and reporting Brown to the IAU and the County's Human Resources office for Brown's allegedly inappropriate behavior and later speaking directly to other "high ranking officials" in the Sheriff's Department at the October 26, 2006 meeting-was in relation to the scope of his employment as a deputy with the Sheriff's Department and not protected speech under the *Garcetti* Court's interpretation of the First Amendment. Even when considering the Complaint in the light most favorable to plaintiff, the allegations show that plaintiff was speaking as an employee on matters of personal interest and not as a citizen on matters of public concern when he complained to the Union, the Human Resources Department and the IAU regarding Brown's behavior towards him. *See* Complaint ¶¶ 20, 70, 71, 82. Accordingly, plaintiff was not engaged in protected speech and cannot proceed on a First Amendment retaliation claim. *See Ruotolo,* 514 F.3d at 187-88.

**\*6** Further, the fact that a statement is made in private and at work, militates against a finding of "public concern," but that fact alone is not dispositive. *See Garcetti,* 547 U.S. at 421 ("That [plaintiff] expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work"). Matters that are purely personal or calculated to redress personal grievances will not qualify as public concerns. *See Hoyt v. Andreucci,* 433 F.3d 320, 330 (2d Cir.2006). Moreover, comments by a public employee on internal office matters do not constitute public concern and thus are not entitled to constitutional protection. *See Connick,* 461 U.S. at 148-149 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case."); *Kelly v. City of Mount Vernon,* 344 F.Supp.2d 395, 402 (S.D.N.Y.2004)

("Speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, cannot support a First Amendment claim."); *Cahill v. O'Donnell,* 75 F.Supp.2d 264, 272 (S.D.N.Y.1999) (same).

Here, as alleged in the Complaint, plaintiff spoke on both occasions as an employee, and in private about a personal grievance and not a matter of public concern. In addition, the comments as asserted in the Complaint contain no sense of urgency, nor formality, nor inclination to warn the citizenry of some pending harm. There is no allegation of any concern for the public welfare. Plaintiff's allegations show that he filed a grievance and sought redress with the Union for Brown's treatment towards him personally. *See* Gelormini Decl., Ex. 1, "I ask you to look into this matter as I fear future problems and conflicts will arise between myself [deputy Alessi] and him [Sgt. Brown] in the future.") Typically, a complaint similar to this made to the union, does not involve matters of public concern. *See Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 722 (S.D.N.Y.2005) ("We have serious doubts as to whether plaintiff's complaints to her union ... involves a matter of public concern.... To the contrary, it is clear that plaintiff's speech related primarily if not exclusively to her desire to protect her job and/or her reputation[.]") Here, plaintiff's complaint to the Union, which eventually involved the IAU was intended to redress his personal complaints against Brown. However, it did not speak to any matter of public concern or request any action except against Brown personally. Indeed, the IAU is not concerned with matters of public concern but with the personal conduct of officers.

Furthermore, assuming plaintiff directly complained to the Union, the IAU and eventually to the Human Resources Department that led to the October 2006 meeting with "high ranking officials," it was routine speech concerning an employment issue made in an employment context within institutional channels and accordingly, purely private speech. The content, form, and context of the comments alleged in plaintiff's Complaint do not suggest plaintiff was speaking as a citizen on a matter of public concern, but rather as an employee upset at what was happening to him. *See Fusco v. City of*

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

*Rensselaer, N.Y.,* 2006 WL 752794, at *8 (N.D.N.Y.2006) ("[S]peech about individual ... problems within a police department, or one of its officers, are not matters of public concern.")

**\*7** Plaintiff's contention that the real animus of his speech was his concern that Brown's verbal abuse and creation of a hostile work environment resulted in public safety concerns is unavailing. The speaker's motive for speaking is not dispositive in determining whether or not the speech in question touches on a matter of public importance or concern. *See Sousa v. Roque,* 578 F.3d 164, 173-174 (2d Cir.2009). In addition, the record as a whole reveals that the plaintiff complained about verbal harassment from Brown and possible FMLA violations regarding alleged abuses of sick time. These matters are quintessentially employment matters, and speech regarding these matters does not rise to the level of constitutionally protected speech. *See id.,* ("An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking 'upon matters only of personal interest.' ") (citation omitted). Moreover, plaintiff seeks only damages in his Complaint to compensate him for his personal losses but does not seek equitable relief including any sort of system-wide relief. *See Ruotolo,* 514 F.3d at 190. Thus, plaintiff's first cause of action, asserting a violation of his First Amendment retaliation claim is dismissed.

## IV. *FMLA Claims*

### A. Prejudice relating to FMLA Violations

"Employers covered by FMLA are required to grant leave to eligible employees: ... (3) To care for the employee's spouse, son, daughter, or parent with a serious health condition." 29 U.S.C. § 2612(a)(1). To prevail on a claim under the FMLA, the employee must show that the employer interfered with, restrained, or denied the exercise of his FMLA rights. *See Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (citing 29 U.S.C. §§ 2615, 2617).[FN3] In addition, the employee can only recover to the extent that the violation caused him injury. *See id.* at 89-93 (noting that § 2617 provides relief only for losses "by reason of the violation" and holding that plaintiff must therefore show prejudice). In this case, plaintiff has failed

to alleged sufficient facts to show that he was prejudiced or that he suffered financial harm or injury that could be recovered pursuant to § 2617. *See Santiago v. New York City Police Dept.,* 2007 WL 4382752, at *15 (S.D.N.Y.2007) ("employees can only recover to the extent that the [FMLA] violation caused him injury.")

> FN3. 29 U.S.C. § 2617 states: "To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered."

The FMLA provides for compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation the employee was denied or lost. 29 U.S.C. § 2617(a)(1)(A)(i)(I). If the employee was not denied or did not suffer a loss of income, the employee may recover other actual monetary losses that directly resulted from the violation. 29 U.S.C. § 2617(a)(1)(A)(i)(II). Here, plaintiff did not suffer any diminution of income, and, on the record before the Court, incurred no costs as a result of the alleged violation. *See Cianci v. Pettibone Corp.,* 152 F.3d 723, 728-729 (7th Cir.1998). Moreover, plaintiff merely alleges that he is "entitled to recover damages as provided ar 29 U.S.C. § 2917." *See* Complaint, ¶ 130. However, plaintiff does not assert that he incurred any of the loses for which § 2617 permits recovery as a result of the incidents he alleges in support of both his FMLA claims. *See* Complaint, ¶¶ 129, 134. Accordingly, plaintiff has failed to allege that he has a remedy and that he has been prejudiced under the FMLA.

### B. Willful Violations under the FMLA

**\*8** Plaintiff's second cause of action alleges that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

Monroe County willfully violated the FMLA when it denied, restrained and interfered with plaintiff's exercise or attempt to exercise his rights under the FMLA. *See* Complaint, ¶¶ 127-130. An alleged violation is willful if the defendant either knew or recklessly disregarded whether its conduct violated the FMLA. *See Porter v. New York Univ. Sch. of Law,* 392 F.3d 530, 531-32 (2d Cir.2004) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). Accordingly, if a defendant acts reasonably, or unreasonably but not recklessly, when considering the legality of its actions, the alleged violations should not be considered willful. *See Porter,* 392 F.3d at 531-32 (quoting *McLaughlin,* 486 U.S. at 135 n. 13). Defendant argues that any alleged violations cannot be considered willful because there is no evidence to suggest that it recklessly determined its actions were in compliance with the FMLA. Plaintiff sets forth no facts from which it could be inferred that Monroe County acted with actual knowledge that its conduct was prohibited by the FMLA or showed a reckless disregard for the matter.

The evidence, viewed in the light most favorable to plaintiff, shows that plaintiff filed the necessary paperwork for FMLA qualifying leave, which was granted by the Monroe County Human Resources Department in June 2006 due to his wife's illness. According to the Complaint, plaintiff took about 25 days of intermittent leave for each of the following one to two years, without incident. Seven months after the June 2006 grant of FMLA leave to plaintiff, Monroe County sent a letter to plaintiff informing him that a medical re-certification for his FMLA was necessary and thereafter, plaintiff's FMLA leave was re-certified. In January 2007 Capt. Palma allegedly disciplined plaintiff for calling Central Control when he needed to be out sick in December 2006. Capt. Palma issued a counseling memorandum, which plaintiff signed stating that plaintiff failed to comply with call-in requirements for two successive work absences. It is clear from the allegations in the Complaint that plaintiff has set forth no facts from which it could be inferred that the County acted with actual knowledge that its conduct was prohibited by the FMLA or that it acted recklessly in determining plaintiff's legal obligations under the FMLA. Accordingly, plaintiff has failed to properly plead that Monroe County willfully violated the FMLA.

**C. Denial and Interference With Benefits Under the FMLA**

To succeed on a cause of action for the denial of, or interference with, benefits under the FMLA, a plaintiff must establish that: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer under the FMLA; (3) he was entitled to take leave under the FMLA; (4) he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA. *See Matya v. Dexter Corp.,* 2006 WL 931870, at *10 (W.D.N.Y.2006); *Brown v. Pension Boards,* 488 F.Supp.2d 395, 408 (S.D.N.Y.2007). The first four elements have been met. Accordingly, to succeed, plaintiff must establish the fifth element, i.e. that he was denied benefits he was entitled to under the Act. However, as shown in the Complaint and described in more detail below, plaintiff does not allege he was denied FMLA leave benefits. Indeed, the Complaint asserts that after plaintiff's FMLA leave was initially approved in June 2006, plaintiff took about 25 days of intermittent leave for each of the following one to two years, without incident. Seven months after the June 2006 grant of FMLA leave rights to plaintiff, Monroe County informed plaintiff that a re-certification of his FMLA was necessary and thereafter, plaintiff's FMLA leave was re-certified. Thus, the facts demonstrate that plaintiff was granted FMLA leave and as such, plaintiff cannot satisfy the required fifth element that he was denied FMLA benefits. *See Esser v. Rainbow Advertizing Sales Corp. .,* 448 F.Supp.2d 574, 580 (S.D.N.Y.2006).

**\*9** Moreover, plaintiff outlines several incidents in support of his FMLA cause of action, none of which involved a denial of FMLA leave benefits. *See* Complaint 1128-29, 129. For instance, plaintiff complained that he was disciplined for calling Central Control when he needed to be out sick in December 2006 resulting in Capt. Palma issuing a counseling memorandum in January 2007 stating that plaintiff failed to comply with call-in requirements for two successive work absences. However, these were sick days and not related to plaintiff's FMLA leave since his FMLA was approved for his wife's illness. Thus, the January 2007 counseling memorandum did not result in any denial of FMLA leave benefits and did not constitute a FMLA violation. In addition, plaintiff alleges he was "required to do more frequent certifications." However, plaintiff was only asked once to re-certify his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

FMLA leave, which occurred seven months after the initial grant of FMLA leave. When the County acted upon the recertification in February 2007, it allowed plaintiff's FMLA leave extending it to June 2007. Plaintiff does not even assert that Monroe County violated the FMLA requirements in requesting re-certification. As a result, plaintiff was not denied any FMLA leave benefits due to the request for re-certification.[FN4]

> FN4. Nevertheless, plaintiff does not specify any statute or regulation as to why the February 2007 request to recertify was improper. The applicable FMLA regulation allows an employer to request re-certification "no more often than every 30 days" and expressly authorizes an employer to seek medical certification for FMLA leave concerning an employee's seriously ill spouse. *See* C.F.R. §§ 825.308[a] and 825.305 [a].

Finally, the Complaint alleges that plaintiff "was written up by Capt. Palma for using sick days" because he exhausted "used more than 21 sick days for the year." *See* Complaint ¶ 43. Plaintiff claims that Capt. Palma should have "count [ed] the time towards his FMLA qualified and certified leave." *See id.* ¶ 129. While defendants assert they have no record of any discipline taken against the plaintiff for using 21 days of sick leave, it appears that plaintiff is referring to a memo by Capt. Palma dated February 13, 2007. The memo informed plaintiff of the County's FMLA re-certification request letter and mentioned that plaintiff took "twenty one (21) full day FMLA absences." *See* Gelormini Decl., Ex. 4. Plaintiff asserts that the 21 days were not treated by the County as FMLA leave. However, this is inconsistent with plaintiff's admission that after his FMLA leave was initially approved in June 2006 he "took about 25 days of intermittent [FMLA] leave for each of the following 1 to 2 years without incident." *See* Complaint, ¶¶ 5-6. Further, plaintiff's assertion is inconsistent with the substance of the letter which treated the 21 days as FMLA leave. *See* Gelormini Decl., Ex. 4. Accordingly, even when considering the Complaint in the light most favorable to plaintiff, Monroe County did not deny or interfere with plaintiff's FMLA leave rights. Thus, the County's motion for judgment on the pleadings is granted and plaintiff's second cause of action is dismissed.

**D. FMLA Retaliation Claim**

Plaintiff alleges that he was retaliated against for asserting or attempting to assert his rights under the FMLA. A claim of retaliation for taking FMLA leave is analyzed pursuant to the *McDonnell Douglas* burden-shifting framework. *See Sista v. CDC Ixis North America, Inc.,* 445 F.3d 161, 176 (2d Cir.2006); *Potenza v. City of New York,* 365 F.3d 165, 168 (2d Cir.2004). Accordingly, to state a prima facie case for retaliation [under the FMLA], the plaintiff must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Sista,* 445 F.3d at 176. Plaintiff conclusory argues that he was engaged in protected activity. *See* Pl. Opp. Br. at 24. However, the Complaint does not show that plaintiff protested or opposed any practice by the County that was made unlawful by the FMLA [29 U.S.C. § 2615(a)(2) ]. *See Belgrave v. City of New York,* 1999 WL 692034 at *43 (E.D.N.Y.1999) ("a plaintiff possesses a claim for retaliation under the FMLA only to the extent he was discharged ... against for ... opposing practices made unlawful by the FMLA").

**\*10** Here, plaintiff merely alleges that "he engaged in protected activity when he in good faith requested, and received leave under the [FMLA]" and he was "wrongfully retaliated against for his requests for, and use of leave under the FMLA." *See* Complaint, ¶¶ 132-133. The allegations do not show that plaintiff made any statements opposing an unlawful employment practice. *See Fox v. Eagle Distrib. Co.,* 510 F.3d 587, 591 (6th Cir.2007) ("[plaintiff's] statements ... are not protected because they did not amount to opposition to an unlawful employment practice"). Accordingly, this Court finds that Alessi has not sufficiently plead that he has opposed or protested any practice made unlawful by the FMLA and as such his retaliation claim fails.

Assuming arguendo that plaintiff could satisfy the first element of a prima facie case, plaintiff has failed to allege that Monroe County knew or was aware of any alleged opposition or protest by plaintiff. *See Grupo v.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

FedEx Inc., 296 Fed.Appx. 660, 664 (10th Cir.2008) (plaintiff "did nothing more than convey his general concern that terminati[on] ... might be illegal, he did not adequately inform defendants of his protected opposition under FMLA"). Further, even if plaintiff could satisfy the first two elements of the prima facie case, he is unable to show that he suffered an adverse employment action. For instance, plaintiff alleges that when he returned from FMLA leave "defendants would shift his work assignments around causing him to work in different areas [.]" *See* Complaint, 144. In addition, the Complaint asserts that plaintiff "has suffered and will continue to suffer a loss of employment benefits and job opportunities" (*see* Complaint, 1134) but he does not set forth any specifics of such losses. Importantly, plaintiff does not allege that these shift changes caused any demotion or loss of pay. In fact, plaintiff is still currently employed at the Monroe County Jail and has never lost his job at the County.

A plaintiff must demonstrate that he or she was subjected to adverse employment action, which, for purposes of a retaliation claim, is a "materially adverse change in the terms and conditions of employment." *See Fairbrother v. Morrison,* 412 F.3d 39, 56 (2d Cir.2005), abrogated on other grounds, *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation omitted). This change must be one that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (internal quotation omitted). "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.' " *Fairbrother,* 412 F.3d at 56 (quoting *Galabya,* 202 F.3d at 640). Here, plaintiff's only assertion is that his job assignment changed but he does not allege that his job responsibilities or pay changed. Accordingly, plaintiff fails to satisfy the requirements of an FMLA retaliation claim. Thus, the County's motion for judgment on the pleadings is granted and plaintiff's third cause of action is dismissed.

**V. State Law Claim**

**\*11** A cause of action under the NYSHRL is subject to the notice of claim requirements of County Law § 52. *See Mills v. County of Monroe,* 59 N.Y.2d 307, 308, 464 N.Y.S.2d 709, 451 N.E.2d 456 cert. denied 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983) ("When an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court."); Hibbert v. Suffolk County Dept. of Probation, 267 A.D.2d 205, 699 N.Y.S.2d 466 (2d Dept.1999); Piontka v. Suffolk County Police Dept., 202 A.D.2d 409, 608 N.Y.S.2d 503 (2d Dept.1994). Accordingly, the Court determines that County Law § 52 requirement of a notice of claim does apply and does indeed bar plaintiff's NYSHRL claim. *See Mills,* 59 N.Y.2d at 308, 464 N.Y.S.2d 709, 451 N.E.2d 456. Plaintiff's failure to timely serve a notice of claim under County Law § 52 in this action against Monroe County to recover damages based on the NYSHRL is fatal. *See Picciano v. Nassau County Civil Service Com'n,* 290 A.D.2d 164, 736 N.Y.S.2d 55 (2d Dept.2001). Thus, the County's motion for judgment on the pleadings is granted and plaintiff's fourth cause of action, the NYSHRL claim is dismissed.

*CONCLUSION*

For the reasons set forth above, the Monroe County defendants' motion for judgment on the pleadings is granted. Plaintiff has conceded that the Sheriff's Department is not a proper defendant and as such, the Sheriff's Department is dismissed as a defendant with prejudice. Accordingly, the Complaint is dismissed with prejudice as to both the Monroe County Sheriff's Department and Monroe County. The only remaining defendant in this case is Robin Brown who did not separately move for dismissal. However, I find that dismissal of plaintiff's case against Brown is appropriate for the same reasons that dismissal of plaintiff's case against Monroe County was appropriate: plaintiff has failed to state a claim upon which relief may be granted, and accordingly, this court also dismisses the Complaint against Brown. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 6 (2d Cir.1990) (citation omitted) (*sua sponte* dismissal appropriate where issues concerning defendant are essentially the same as those issues faced by

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)

(Cite as: 2010 WL 161488 (W.D.N.Y.))

defendants whose motions for dismissal were granted); *Wachtler v. County of Herkimer,* 35 F.3d 77, 82 (2d Cir.1994) (a district court may dismiss a complaint *sua sponte* if it fails to state a claim against non-moving defendants). Therefore, plaintiff's Complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

W.D.N.Y.,2010.

Alessi v. Monroe County
Not Reported in F.Supp.2d, 2010 WL 161488 (W.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Paul L. MATYA, Plaintiff,
v.
The DEXTER CORPORATION, Defendant.
No. 97-CV-763C.

April 11, 2006.
Burgett & Robbins (Robert A. Liebers, Esq), Jamestown, NY, for Plaintiff.

Bond, Schoeneck & King, PLLC (Daniel P. Forsyth, Esq. and Subhash Viswanathan, Esq.), Buffalo, NY, for Defendant.

JOHN T. CURTIN, District Judge.

### INTRODUCTION

**\*1** Plaintiff brought this employment discrimination case on September 30, 1997, alleging causes of action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.,* the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.,* the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.,* and the New York State Human Rights Law, N.Y.Exec. Law § 290, *et seq.* ("NYSHRL"). Item 1. Plaintiff was employed by the defendant corporation [FN1] from September 1979 until his discharge in January 1996.

> FN1. On or about August 23, 1999, Loctite Corporation acquired all the assets and liabilities of the Dexter Corporation Electronics Materials Division. Dexter has since ceased to exist as an independent ongoing business entity. Item 48.

Following a bankruptcy proceeding and a change in plaintiff's counsel, the parties stipulated that plaintiff's age discrimination claims under the ADEA and NYSHRL were permanently withdrawn with prejudice. Item 58. On September 29, 2003, defendant moved for summary

judgment dismissing the complaint. Item 66. Plaintiff filed his response on January 7, 2004. Item 74. Thereafter, on February 19, 2004, plaintiff filed a motion for an adverse inference. Item 83. He argued that defendant failed to preserve evidence that was relevant to his ADA claim-specifically, evidence of plaintiff's interviews with an industrial psychologist.

Plaintiff also filed a motion to amend the complaint on March 19, 2004. Item 88. He sought to "clarify the plaintiff's claims based on the facts that have arisen during the lengthy period of discovery ." Item 88, Liebers Affidavit, ¶ 4. On April 2, 2004, defendant filed a response to plaintiff's motions (Items 92, 93) and a reply in support of its motion for summary judgment. Item 91. On April 28, 2004, plaintiff filed a surreply memorandum of law in opposition to the motion for summary judgment (Item 100) and a memorandum of law in support of his motion for an adverse inference. Item 101. Oral argument was heard on May 25, 2005. Thereafter, plaintiff filed a letter brief on October 12, 2005. Item 108. The court allowed defendant an opportunity to respond, and it filed a supplemental memorandum of law on November 18, 2005. Item 111. For the reasons that follow, the defendant's motion for summary judgment is GRANTED, the plaintiff's motion for an adverse inference is DENIED, plaintiff's motion to amend the complaint is DENIED, and the complaint is dismissed.

### FACTS[FN2]

> FN2. This factual statement is taken from the papers in support of and in opposition to the defendant's motion for summary judgment and the plaintiff's motion for an adverse inference.

Plaintiff began his employment with defendant Dexter Corporation on September 17, 1979. Item 67, Exh. C, Deposition of Paul Matya ("Matya Dep."), p. 8. In May 1993, plaintiff held the position of Director of Finance, Electronic Packaging Products ("EEP"), in the company's Olean, New York, facility, and was responsible for coordinating financial reporting for EEP locations

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

worldwide. *Id.,* p. 463. From 1989 until 1995, plaintiff reported directly to Dick Jensen, Vice President and General Manager of the EEP subgroup. *Id.,* p. 158; Item 67, Exh. D, Deposition of Richard Jensen ("Jensen Dep."), p. 7. In late 1995, Jon Kirk replaced Jensen as Vice President of EEP, and plaintiff began reporting to Kirk. Matya Dep., pp. 80-81. Plaintiff also had an indirect reporting relationship with Chuck Sharp, Vice President of Finance for Dexter Electronic Materials Division ("DEM"), of which EEP was a sub-group. Jensen Dep., pp. 7-8. Ron Benham was the President of DEM. Jensen Dep., p. 138.

**\*2** From 1992 until 1996, plaintiff suffered a series of personal problems. In October 1992, plaintiff's sister died after several months of hospitalization. Matya Deposition, pp. 141-43. In March 1993, plaintiff's mother died. *Id.,* p. 145. In October 1993, plaintiff and his wife separated and ultimately were divorced in May 1995. *Id.,* pp. 148-50. In November 1993, plaintiff's son was involved in a motor vehicle accident which resulted in the death of a pedestrian. A lawsuit was brought against both plaintiff and his son, which went to trial in 1996. *Id.,* pp. 151-54. In October 1994, criminal proceedings were brought against plaintiff's youngest son for an assault against a foreign exchange student. *Id.,* pp. 155-56. Plaintiff's superiors, including Dick Jensen, Chuck Sharp, and Ron Benham, were aware of these circumstances, and plaintiff was always given adequate time off to deal with these problems. *Id.,* pp. 160-65.

By plaintiff's own admission, his personal problems made him negative, irritable, and distracted. Matya Dep., p. 184. In a memorandum to Jensen in October 1993, plaintiff was critical of Sharp, complaining that Sharp "is not in touch with the reality of what we do, what our needs are, or what's best for the business." Item 67, Exh. 31. In June 1994, plaintiff's performance evaluation was satisfactory, yet Jensen wrote that plaintiff "had some conflicts/disagreements with division finance" and suggested seminars to help "deal with people and personnel situations." Item 67, Exh. 16. In his May 1995 performance evaluation, plaintiff was given ratings of less than competent in nine categories, including the ability to meet commitments on schedule, manage conflict effectively, and solicit, listen, and respond to the opinions

of others. *Id.,* Exh. 18. At that time, Jensen noted that plaintiff displayed a negative attitude toward people and functions outside of the Olean facility, and that some working relationships had been strained. *Id.* In May 1995, Jensen counseled plaintiff regarding plaintiff's criticism of his superiors, and advised him to show a more supportive and cooperative attitude. Item 67, Exh. 125. This performance evaluation was below average, yet plaintiff nonetheless was given a $4,000 raise. Jensen Dep., p. 70. Jensen explained that the performance evaluation was intended to help plaintiff "correct any problems that he had or any deficiencies, and ... not intended to be punitive...." Jensen Dep., p. 71.

In November 1995, plaintiff was informed by Dick Jensen in a memorandum that his performance had not improved. Item 67, Exh. 26. Specifically, plaintiff was advised that he had failed to complete a working capital reduction plan for EEP and monthly reports for Chuck Sharp. Jensen also said that plaintiff's criticism of coworkers and management was undermining his credibility and compromising his effectiveness. *Id.* Plaintiff was viewed as difficult to work with and not a team player, and was told that he was portraying "a cynical, negative and analytically superficial point of view." *Id.* Additionally, Jensen informed plaintiff that his executive compensation bonus rate had been reduced as a result of his performance problems. *Id.;* Jensen Dep., p. 84. In order to remedy the situation and protect his position, plaintiff was asked to prepare an action plan describing how he intended to complete his tasks and change his operating style, including a plan to accomplish certain tasks required of him by Chuck Sharp. *Id.* The deadline for the action plan was extended from November 24 until December 1, 1995, because plaintiff was scheduled to undergo carpal tunnel surgery on his right hand. Matya Dep., pp. 536-37.

**\*3** Kirk approved the plan on November 30, 1995, and Jensen approved the plan on December 1, 1995. Matya Dep., pp. 536-38. Plaintiff's proposed action plan, which included recommendations for re-engineering the finance function, was then reviewed by Sharp, who found the plan inadequate and superficial. Item 67, Exh. E, Deposition of Charles Sharp ("Sharp Dep."), pp. 98-99. Plaintiff was asked for a revised plan by January 5, 1996,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

but the deadline was extended until January 13, 1996 at plaintiff's request because he was scheduled to undergo carpal tunnel surgery on his left hand. Matya Dep., p. 540. Plaintiff did not submit a revised action plan at any time prior to his discharge. Matya Dep., p. 589.

As part of his general responsibilities, plaintiff was required to assist in preparing a quarterly forecast of EEP's financial performance, known as the 5Q forecast. Matya Dep., pp. 608-09. The EEP 5Q forecast was used by Sharp in preparing a 5Q forecast for DEM. Sharp Dep., pp. 112-13. In January 1996, Sharp realized that DEM's actual sales during 1995 were approximately $1.1 million short of projected sales, and thus earnings were approximately $900,000 short of the projected earnings set forth in the December 1995 5Q forecast for DEM. Sharp Dep., pp. 110-11. This inaccurate projection resulted in a drop in Dexter's stock price. Jensen Dep., pp. 145-46; Item 67, Exh. F, Deposition of Ronald Benham ("Benham Dep."), pp. 47-49. Benham made the decision to discharge both plaintiff and Sharp, as he felt they were responsible for the inaccurate 5Q forecast and had become unable to work together. He also felt that he needed to make an immediate change and could not wait for plaintiff to execute his action plan. Benham Dep., pp. 65-67. Plaintiff was informed of his discharge on January 22, 1996. Matya Dep., p. 8.

Prior to his discharge, on January 5, 1996, plaintiff received notification from the human resources director that William Plasse, an industrial psychologist, would be in Olean in late January. Item 83, Exh. 2, ¶ 7. Dr. Plasse was a consultant used by defendant as a resource for "management personnel for career development." *Id.,* ¶ 8. Plaintiff scheduled an appointment with Dr. Plasse for January 23, 1996, intending to discuss his action plan, but was discharged on January 22, 1996. *Id.,* ¶¶ 10-11. Dr. Plasse, now retired, stated in an affidavit that he first met with plaintiff on November 15, 1984. Item 83, Exh. 1, ¶ 5. While he believes he met with plaintiff on further occasions after that, Dr. Plasse stated that he has no records of those meetings. *Id.* Dr. Plasse further stated that on those occasions he met with Dexter employees, he prepared a report, reviewed his report with the employee, and sent a copy to the Vice President of the division in which the employee worked. *Id.,* ¶ 6. Dr. Plasse stated that

his primary purpose was to help with "career and individual development." *Id* . Plaintiff stated that he met with Dr. Plasse approximately six times during the course of his career at Dexter for purposes of "career development assessment." Matya Dep., p. 200. Plaintiff sought reports from Dr. Plasse as part of his discovery requests, but defendant was unable to locate or produce any reports other than a report regarding plaintiff from 1986. *Id.,* Exh. 7.

**\*4** In April 1995, plaintiff was referred to Margaret Balacki, a nurse practitioner in psychiatry, through the Employee Assistance Program at Dexter. Item 77, ¶¶ 4, 7. Plaintiff first saw Ms. Balacki on April 20, 1995. *Id.,* ¶ 8. Ms. Balacki concluded that plaintiff was clinically depressed, and requested a prescription for Zoloft, an anti-depressant medication. *Id.,* ¶¶ 9-10. Ms. Balacki saw plaintiff on April 27, May 11, and June 13, 1995, and again on January 30, 1996, after he was discharged from his employment. *Id.,* ¶ 11.

Plaintiff admitted that he did not inform his superiors that he had been diagnosed with and was being treated for depression because he did not want to appear weak. Matya Dep., pp. 177, 180-83, 196. Plaintiff states that his superiors should have noticed the changes in him and realized that he was suffering from a mental impairment. Matya Dep., pp. 187-88. Plaintiff never asked for an accommodation from his superiors to assist him in dealing with his mental impairment. Matya Dep., p. 191.

Bernard Morris, Human Resources Manager for Dexter Corporation at the Olean location, stated in an affidavit that plaintiff was offered a severance package upon his discharge which required the signing of a release. Plaintiff refused to sign the release and was denied the benefits of the severance package, including outplacement counseling. Item 75, ¶ 13.

## DISCUSSION

1. Motion for Summary Judgment

The standard of review on a motion for summary judgment is well established. Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden of establishing the absence of a genuine factual dispute rests on the party seeking summary judgment. *See* Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir.1994). The movant may discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case on an issue on which the nonmovant has the burden of proof. *See* Celotex, 477 U.S. at 323.

If the moving party meets its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Gallo v. Prudential Residential Servs.*, 22 F .3d 1219, 1224 (2d Cir.1994). In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Rattner v. Netburn*, 930 F.3d 204, 209 (2d Cir.1991). The nonmoving party may not rest upon unsubstantiated allegations, conclusory assertions, or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986). If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. Chambers, 43 F.3d at 37.

## A. Plaintiff's ADA and NYSHRL Claims

**\*5** ADA and NYSHRL claims are governed by the three-part analytical framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48-49 (2d Cir.), *cert. denied*, 537 U.S. 813 (2002) *(McDonnell Douglas* applied

to ADA); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir.2000) *(McDonnell Douglas* applied to NYSHRL). Under the *McDonnell Douglas* standard, a plaintiff bears the burden of proof and must ultimately establish, by a preponderance of the evidence: (1) membership in a protected group; (2) qualification for a position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See* Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2d Cir.1997).

Requirements for establishing a *prima facie* case are minimal. *See* Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir.1998), *abrogated on other grounds by* Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); *see also* Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir.1997). If a plaintiff is successful in demonstrating a *prima facie* case of disability discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory purpose for its adverse employment action. *Austin v. Ford Models, Inc.*, 149 F.3d at 153 (citing *McDonnell Douglas*, 411 U.S. at 802). The Second Circuit has held that "[a]ny such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision." *Id.* Once the employer satisfies its burden, a plaintiff may prevail only if he presents evidence that the employer's proffered reasons are a pretext for discrimination. *Id* . To demonstrate pretext, plaintiff must show both that the proffered reason was false and that discrimination was the real reason. *Id.*

The ADA prohibits discrimination in the hiring, advancement, or discharge of an otherwise qualified employee because of such individual's disability. Cavallaro v. Corning Inc., 93 F.Supp.2d 334 (W.D.N.Y.2000); 42 U.S.C. § 12112(a).

To establish a *prima facie* case of disability discrimination, a plaintiff must show:

(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

accommodation; and (4) he suffered [an] adverse employment action because of his disability.

*Cameron v. Cmty. Aid for Retarded Children, Inc.,* 335 F.3d 60, 63 (2d Cir.2003), quoting *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir.2003); *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 149-50 (2d Cir.1998); *Cavallaro,* 93 F.Supp.2d at 342.

**\*6** "Under the ADA a 'disability' is: 'A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such an impairment; or C) being regarded as having such an impairment." *Kotlowski v. Eastman Kodak Co.,* 922 F.Supp. 790, 797 (W.D.N.Y.1996), quoting 42 U.S.C. § 12102(2). "A physical impairment ..., standing alone, does not necessarily constitute a disability under the ADA," since an impairment " 'may affect an individual's life without becoming disabling.' " *Cavallaro,* 93 F.Supp.2d at 343 (quoting *Hazeldine v. Beverage Media, Ltd.,* 954 F.Supp. 697, 703 (S.D.N.Y.1997)). Therefore, plaintiff must demonstrate that the impairment "substantially limits" one or more of his "major life activities." *Id.; see also Toyota Motor Mfg., Kentucky, Inc., v. Williams,* 534 U.S. 184, 195 (2002); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 870 (2d Cir.1998); 42 U.S.C. § 12102(2).

For purposes of the ADA, major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(l). "Substantially limits" means that an individual is: 1) unable to perform a major life activity that the average person in the general population can perform; or 2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). In assessing whether a plaintiff has a disability for purposes of the ADA, courts have been careful to distinguish impairments "which merely *affect* major life activities from those that *substantially limit* those activities." *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d at 870. Thus, not any limitation, but only a "substantial" limitation of a "major" life activity will constitute a

disability within the meaning of the statute. *See Ryan,* 135 F.3d at 870; *see also Knapp v. Northwestern Univ.,* 101 F.3d 473, 481 (7th Cir.1996) ("Not every impairment that affects an individual's major life activities is a substantially limiting impairment."), *cert. denied,* 520 U.S. 1274 (1997).

Here, plaintiff has failed to sustain his burden of establishing a *prima facie* case of discrimination under the ADA as he has not shown that either his depression or his carpal tunnel syndrome constitutes a disability that substantially limits a major life function. In opposition to the motion, plaintiff did not argue that his carpal tunnel syndrome substantially limited a major life activity, and there is nothing in the record that would indicate a substantial limitation of any major life activity by virtue of carpal tunnel syndrome. At oral argument, plaintiff conceded that his ADA claim is based on depression alone.

**\*7** In his deposition, plaintiff stated that his depression substantially limited his ability to think, concentrate, work, and interact with others. Matya Dep., pp. 711-14. To establish a substantial limitation in the major life activity of working, plaintiff must show that his impairment places a significant restriction on his ability to perform either an entire class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training and ability. 29 C.F.R. § 1630.2(j). While plaintiff admitted that his depression had a negative impact on his job performance, he was nonetheless able to work, and stated in his complaint that he "effectively performed all the primary requirements of his position." Item 1, ¶ 45. In an affidavit submitted in opposition to the motion for summary judgment, plaintiff stated that in spite of the pressure to complete his action plan at the end of 1995, "I continued to do my job well and completed the audit in a satisfactory manner and addressed whatever issues needed to be addressed." Item 79, ¶ 14. Thus, plaintiff has not shown that he was unable to perform the functions of his position. Moreover, plaintiff has not established that he was unable to perform a broad range of jobs. Accordingly, he has not shown that his depression substantially limited the major life activity of working.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

To the extent that plaintiff contends his depression interfered with the activities of thinking, sleeping, concentrating, or maintaining interpersonal relationships, plaintiff has failed to establish that any of these activities were substantially limited by his depression. In her affidavit, Ms. Balacki stated that in April 1995, plaintiff reported feelings of "guilt, anger, worthlessness, ... lack of appetite, a failing memory, a lack of concentration and fatigue." Item 77, ¶ 12. However, there is no proof in the record beyond mere allegations that plaintiff was substantially limited in the performance of any major life activities in comparison to an average person. Given plaintiff's stated ability to perform his job, his alleged inability to concentrate does not evince a significant restriction on plaintiff's ability to think. *See Baerga v. Hospital For Special Surgery,* 2003 WL 22251294, *6 (S.D.N.Y. September 30, 2003) (plaintiff's satisfactory performance review contradicted allegations that he was unable to think). Additionally, while plaintiff was criticized by his superiors for his negative attitude and failure to be a "team player," mere trouble getting along with coworkers is not sufficient to show a substantial limitation in the activity of interacting with others. *See Zale v. Sikorsky Aircraft Corp.,* 2000 WL 306943, * 5 (D.Conn. February 7, 2000). In contrast, plaintiff stated that he maintained relationships with coworkers, friends, and family (Matya Dep., pp. 18-21), and thus was not substantially limited in his ability to interact with others. Finally, there is nothing in the record to show that plaintiff was substantially limited in his ability to sleep. It has been recognized that difficulty sleeping is a common problem, and the mere allegation that plaintiff had difficulty sleeping is not sufficient to show a substantial limitation in the major life activity of sleeping. *See Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 644 (2d Cir.1998), *cert. denied,* 526 U.S. 1018 (1999). Accordingly, the court finds that plaintiff has not shown that his depression substantially limited any major life activity, and thus he was not disabled for purposes of the ADA.

**\*8** Turning to plaintiff's claim under the NYSHRL, New York Executive Law § 296 makes it an unlawful discriminatory practice for an employer or licensing agency, because of the age, race, creed, color, national origin, sex, disability, genetic predisposition, or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment. N.Y. Exec. Law § 296(1)(A). Under the NYSHRL, a disability is defined in part as: "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques...." N.Y. Exec. Law § 292(21). Thus, under state law, a disability need only be a demonstrable impairment; it does not have to substantially limit a major life activity. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d at 154.

Even assuming that plaintiff has established a disability for purposes of the NYSHRL, he has failed to show that he was discharged because of his disability.[FN3] Plaintiff has offered no proof that his discharge was in any way motivated by his depression. It is undisputed that none of plaintiff's supervisors knew that plaintiff had been diagnosed with and was being treated for depression. Matya Dep., pp. 177-83; Jensen Dep., pp. 15-17; Sharp Dep., pp. 16-18; Benham Dep., pp. 8-13. Plaintiff stated that he purposely kept his diagnosis and treatment from his superiors because he did not want to appear weak. Matya Dep., pp. 195-96.

> FN3. This analysis also applies to plaintiff's ADA claim. Even if the court were to assume that plaintiff had established a disability for purposes of the ADA, he has not shown that his employer knew of his disability and discriminated against him based on that disability.

At the very least, for a plaintiff to show that he suffered an adverse employment action because of his disability, the employer must have knowledge of the alleged disability. *See Kolivas v. Credit Agricole,* 1996 WL 684167 (S.D.N.Y. November 26, 1996), *aff'd,* 125 F.3d 844 (2d Cir.1997) (summary judgment granted to employer where decision to terminate plaintiff was made before supervisor was aware of plaintiff's depression). Plaintiff argues that his supervisors were aware of his personal problems and a change in his behavior at work

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

and thus should have inferred that he was suffering from depression. However, the ADA does not require "clairvoyance" on the part of the employer. *See Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 934 (7th Cir.1995)* (if an employer discharged the plaintiff without having knowledge of plaintiff's disability, ADA claim cannot succeed); *Pace v. Paris Maint. Co., 107 F.Supp.2d 251, 262 (S.D.N.Y.2001), aff'd, 7 Fed. Appx. 94 (2d Cir. April 3, 2001)* (since plaintiff could not introduce evidence that suggested defendants were aware of his past alcoholism, he was unable to prove that his disability was the cause of the adverse employment action); *Barnett v. Revere Smelting & Refining Corp., 67 F.Supp.2d 378, 392 (S.D.N.Y.1999)* ("At a minimum, for there to be causation, the employer must have knowledge of the disability."). In *Kolivas v. Credit Agricole,* the employee was alleged to have acted in an unprofessional and offensive manner when given his performance evaluation, and the employer subsequently decided to terminate him. The employer subsequently learned that the employee had seen a psychiatrist and been medicated for depression. Because the employer did not learn of the diagnosis until after it decided to terminate the employee, the employee failed to establish that he was discharged because of a disability. *See Kolivas v. Credit Agricole, 1996 WL 684167, at *4.* Here, plaintiff's supervisors were unaware that plaintiff had been diagnosed and was being treated for depression. The employer cannot be expected to infer a disability for purposes of the NYSHRL or the ADA on the basis of plaintiff's personal problems and performance deficits. Accordingly, plaintiff has failed to establish a *prima facie* case of discrimination under either the ADA or the NYSHRL.

**\*9** Finally, even if plaintiff was able to establish a *prima facie* case of discrimination under either the ADA or the NYSHRL, defendant has set forth legitimate non-discriminatory reasons for plaintiff's discharge. Ron Benham, President of DEM, testified that he made the decision to discharge both plaintiff and Sharp at a management meeting in Florida in January 1996. Benham Dep., pp. 63-65. Mr. Benham stated that the working relationship between plaintiff and Sharp had become "dysfunctional," and the inaccurate 5Q forecast was "the straw that broke the camel's back." *Id.,* pp. 66-67. Additionally, plaintiff's performance problems are well

documented-specifically, his strained relationship with Sharp. Thus, defendant has sustained its burden under the *McDonnell Douglas* analysis. The burden then shifts to plaintiff to show that the proffered reasons were pretextual and plaintiff was discharged based on his depression.

Plaintiff's attempts to portray the reasons for his discharge as a pretext for discrimination are unavailing. He argues that his superiors, knowing that he had suffered personal problems, put him under stress at a busy time of year when he planned to be out of the office for carpal tunnel surgery. However, the record indicates that plaintiff was given additional time to complete his action plan when he advised his superiors of the upcoming surgeries. Additionally, he argues that his superiors wanted to discharge him before he could address his performance and interpersonal problems. Benham stated that he was aware that plaintiff was in the midst of formulating an action plan, yet he felt that he needed "immediate change." Benham Dep., p. 67. Plaintiff has offered nothing but conclusory allegations in support of his position that the stated reasons for his discharge were a pretext for disability-related discrimination. Accordingly, defendant's motion for summary judgment dismissing plaintiff's ADA and NYSHRL claims is GRANTED.

B. Reasonable Accommodations

Plaintiff's claims under the ADA and the NYSHRL, that defendant failed to provide a reasonable accommodation for his disability, must also be dismissed. While defendant argues that plaintiff failed to assert such a claim before the EEOC, the court finds that plaintiff stated a claim for the denial of a reasonable accommodation in his administrative charge. Nonetheless, plaintiff has failed to establish a *prima facie* case of denial of a reasonable accommodation.

To establish a *prima facie* case of failure to provide a reasonable accommodation under the ADA, a plaintiff must show that: (1) he has a disability protected by the statute; (2) he is otherwise qualified for his position; (3) the employer had notice of his disability; and (4) the employer refused to provide a reasonable accommodation despite such notice. *Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir.1997), cert. denied, 522 U.S. 1112 (1998); Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1515 (2d*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

Cir.1995). Plaintiff contends that the reasonable accommodation he sought and was denied was time in which to complete and implement his action plan.

**\*10** Plaintiff has not established a disability protected by the ADA. As noted above, plaintiff's depression did not substantially limit any major life activities. Additionally, it is undisputed that defendants were not aware of plaintiff's diagnosis and treatment for depression until after his discharge. The record indicates that the action plan proposed by plaintiff's superiors was not an "accommodation" to address plaintiff's known mental disability, as plaintiff's superiors were unaware of his condition. Plaintiff did not request any accommodation; he was required to prepare the plan to address certain work-related problems. It is also undisputed that defendant accommodated plaintiff's requests for time off to attend to his personal problems and medical needs. Plaintiff has failed to show that defendant denied any reasonable accommodation under the ADA or the NYSHRL, and the claim must be dismissed.

C. Family and Medical Leave Act (FMLA)

Finally, plaintiff's cause of action for discrimination under the FMLA must be dismissed. A plaintiff asserting a FMLA claim must establish *prima facie* that (1) he availed himself of a protected right under the FMLA; (2) that he was subjected to an adverse employment action; and (3) that there is a causal connection between the protected right and the adverse employment action. *See Potenza v. City of New York,* 365 F.3d 165, 167 (2d Cir.2004); *Morgan v. Hilti, Inc.* 108 F.3d 1319, 1318-319 (10th Cir.1997); *Bond v. Sterling, Inc.,* 77 F.Supp.2d 300, 303 (N.D.N.Y.1999). The FMLA makes it unlawful for any employer either "to interfere with, restrain or deny the exercise of or the attempt to exercise, any right" it grants. 29 U.S.C. § 2615(a)(1). To succeed on a cause of action for the denial of, or interference with, benefits under the FMLA, a plaintiff must establish that: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer under the FMLA, as defined in 29 U.S.C. § 2611(4); (3) he was entitled to take leave under the FMLA, as defined in 29 U.S.C. § 2612(a)(1); (4) he gave notice to the defendant of his intention to take leave, as defined in 29 U.S.C. § 2612(e)(1) and 29 C.F.R. § 825

.302-.303; and (5) that he was denied benefits to which he was entitled under the FMLA. *Santos v. Knitgoods Workers' Union, Local 155,* 1999 WL 397500, \*3 (S.D.N.Y. June 15, 1999), *aff'd,* 252 F .3d 175 (2d Cir.2001); *Bond v. Sterling, Inc.,* 77 F.Supp.2d at 306. In analyzing such claims, courts have borrowed the framework employed in cases brought pursuant to Title VII. *Bond,* 77 F.Supp.2d at 303.

Plaintiff has failed to set out a *prima facie* case of interference with the FMLA in that he cannot show that he was denied any benefits under the FMLA. Plaintiff states that defendant interfered with his right to medical leave in that he was compelled to complete his action plan at a busy time of year and at a time when he was scheduled for carpal tunnel surgery. However, the FMLA does not guarantee that an employer will not make inconvenient work-related demands on an employee. It is undisputed that plaintiff took leave from his position to have surgery to address his carpal tunnel syndrome, and also took time off as a result of his personal and family problems. Additionally, plaintiff argues that defendant interfered with his rights under the FMLA when it discharged him one day before his planned appointment with Dr. Plasse, the industrial psychologist. Plaintiff contends that "each time that [he] ... tried to take care of a medical issue," defendant would interfere. Item 74, p. 23. However, there is nothing in the record to suggest that plaintiff's scheduled appointment with Plasse was a medical appointment to address a medical need. Thus, it cannot be said that plaintiff's discharge prior to his appointment with Plasse was an interference with his right to leave under the FMLA. Plaintiff was never denied any time off, nor was he punished for his use of leave. Accordingly, plaintiff's FMLA claim must be dismissed.

2. Motion for an Adverse Inference

**\*11** Plaintiff sought records of his interviews with Dr. William Plasse, the industrial psychologist, in support of his ADA cause of action to show that defendant was aware of his depression prior to his discharge. Dr. Plasse has averred that he submitted copies of his reports of consultations with employees to division vice presidents. Plaintiff states that defendant was aware that litigation was likely from February 14, 1996, but failed to retain the records in contravention of its own record retention policy.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

A party seeking sanctions for spoliation of evidence has the burden of proving three elements: "(1) that the [alleged spoliator] had an obligation to preserve the evidence; (2) that the [alleged spoliator] acted culpably in destroying the evidence; and (3) that the evidence would have been relevant to [the aggrieved party's] case, in that a reasonable jury could conclude that the evidence would have been favorable to [the aggrieved party]." *Golia v. Leslie Fay Co.,* 2003 WL 21878788, *9 (S.D.N.Y. August 7, 2003); *see also Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 107-08 (2d Cir.2001); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.,* 154 F.Supp.2d 527, 541 (S.D.N.Y.2001), *aff'd,* 283 F.3d 73, (2d Cir.), *cert. denied,* 537 U.S. 883 (2002) (destruction due to gross negligence is sufficient to support finding of spoliation). A party is not guilty of spoliation when it destroys documents as part of its regular business practices and is unaware of their potential relevance to litigation. *Remee Prods. Corp. v. Sho-Me Power Elec. Co-op.,* 2002 WL 31323827, *8 (S.D.N.Y. October 17, 2002).

In order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed. This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation, most commonly when suit has already been filed, providing the party responsible for the destruction with express notice. Additionally, a party may have an obligation to preserve evidence under circumstances when it should have known that the evidence may be relevant to future litigation. *Kronisch v. United States,* 150 F.3d 112, 126-27 (2d Cir.1998).

Here, plaintiff has failed to sustain his burden in seeking the adverse inference. He has offered no proof that any of Dr. Plasse's records were lost or destroyed after February 14, 1996, when plaintiff argues that Dexter should have been on notice of the impending litigation. Plaintiff has offered proof that records may have been purged in the ordinary course of business at the end of 1994 (Item 83, Exh. 14), but has offered no proof that plaintiff met with Dr. Plasse after that time. Additionally, there is no proof of an intentional or bad faith destruction of documents. Finally, plaintiff has offered no proof that Dr. Plasse was aware of plaintiff's depression, or that any

of his reports would include information regarding plaintiff's depression. Plaintiff has not indicated the dates of his consultations with Dr. Plasse, nor any proof that these consultations occurred after plaintiff began having personal problems or was treated for depression. Significantly, plaintiff does not state that he discussed personal problems with Dr. Plasse, or divulged his diagnosis of depression. According to Dr. Plasse, he reviewed his report with the employee and sent a copy to the employee's division Vice President. If any of the reports contained relevant information, plaintiff would be aware of it and could offer proof of such relevance to the court, but he has not. Accordingly, plaintiff has failed to establish that any such evidence would be relevant on the issue of defendant's knowledge of plaintiff's depression, and the motion for an adverse inference is DENIED.

3. Motion to Amend the Complaint

*12 Finally, plaintiff seeks permission to amend the complaint. He states that the purpose of the amendment is "simply to clarify the plaintiff's claims based on the facts that have arisen during the lengthy period of discovery." Item 88, Exh. 2 (Liebers Affidavit), ¶ 4. Defendant opposes the motion, arguing that plaintiff has not provided a satisfactory explanation for his failure to raise the claims earlier, that defendant will be prejudiced by the amendment, and that amendment will be futile. The new causes of action sought to be added include: a discrimination claim based on "perceived disability" under the ADA and the NYSHRL, retaliation clams under the ADA, NYSHRL, and FMLA, and a hostile work environment claim under the ADA and NYSHRL.

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading is served, a plaintiff may amend the complaint "only by leave of court or by written consent of the adverse party...." Fed.R.Civ. P. 15(a). Under Rule 15(a), leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A motion to amend should be denied, however, "if there is an 'apparent or declared reason-such as undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.' " *Dluhos v. Floating and Abandoned Vessel Known as "New*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

York." 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)); *see also Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (citation omitted) (A "motion to amend should be denied only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.' "). The decision whether to grant leave to amend is within the sound discretion of the court. *See Foman,* 371 U.S. at 182.

Mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for denying a motion to amend. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) (quoting *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981)). In determining whether a party's interests will be unduly prejudiced by an amendment, courts generally consider "whether the assertion of the new claim ... would: '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction,' " *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284 (2d Cir.) (quoting *Block,* 988 F.2d at 350), *cert. denied,* 531 U.S. 1035 (2000), with more emphasis on the first two considerations. *See, e.g., E.E .O.C. v. Morgan Stanley & Co.,* 211 F.R.D. 225, 227 (S.D.N.Y.2002); *Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986).

**\*13** Although there is a general presumption in favor of permitting amendment, the court has broad discretion in deciding whether to allow plaintiff to amend his pleadings. Leave to amend may be denied where it appears that the proposed amendments are "unlikely to be productive...." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see also Kaster v. Modification Sys., Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984) ("That the amendments would not serve any purpose is a valid ground to deny a motion for leave to amend."). Thus, if the proposed amended complaint would be subject to "immediate dismissal" for failure to state a claim or on some other ground, the court will not permit the amendment. *Jones v. New York State Div. of Military and Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999). By contrast,

if plaintiff has at least colorable grounds for relief, justice requires that the motion to amend be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 783 (2d Cir.1984).

Here, plaintiff moved to amend the complaint in March 2004, six and one-half years after the commencement of the action, two and one-half years after he changed attorneys, one year after the close of discovery, six months after defendant filed its motion for summary judgment, and two months after plaintiff responded to the motion for summary judgment. Plaintiff explains the delay in asserting the additional claims by citing the bankruptcy proceedings, his change in counsel, and the complexity of the case and the law. While the bankruptcy stayed proceedings in this case, the delay in bringing this motion is not otherwise satisfactorily explained. The court notes that plaintiff's current attorney filed his notice of appearance on October 19, 2001 (Item 56), and the salient facts and circumstances of the proposed claims were known at the time of the filing of the original complaint. The additional discovery required to defend these additional claims, while not alone a sufficient reason to deny a motion for leave to amend, will result in prejudice to the defendant.

The most compelling basis for denial of the motion is futility. None of plaintiff's claims would survive a motion to dismiss. In cases claiming perceived disability under the ADA, a court must first determine whether a plaintiff was viewed or was recorded as having an impairment. Second, it must determine whether that impairment, as perceived or recorded, affects a "major life activity" as the ADA defines that term. Finally, the court must consider whether plaintiff's perceived or recorded disability is one that, if existed, would substantially limit the identified major life activity. *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998), *cert. denied,* 526 U.S. 1018 (1999); *Bater v. Kraft Foods Inc.,* 2005 WL 602383, *6 (W.D.N.Y. March 14, 2005).* This third requirement ensures that only significant impairments (and perceptions and records thereof) are covered by the ADA. *Colwell,* 158 F.3d at 642. As noted above, the NYSHRL employs a broader definition of disability, but plaintiff nonetheless cannot show that defendant regarded him as disabled under either statute. It is undisputed that none of plaintiff's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

superiors knew that he had been diagnosed with and was being treated for depression. Further, plaintiff stated in his deposition that he did not expect his superiors to have concluded that he was depressed. There is no proof that plaintiff's superiors regarded him as suffering from either a demonstrable disability under the NYSHRL or a disability that affected a major life activity as required by the ADA. Accordingly, allowing plaintiff to amend his complaint to add claims under the ADA and NYSHRL for "perceived" disability would be futile.

**\*14** Plaintiff also seeks to assert a claim that defendant discriminated against him by subjecting him to a hostile work environment based upon his disability. Although the Second Circuit has not determined whether the ADA gives rise to a cause of action for hostile work environments, *see Bonura v. Sears Roebuck & Co.,* 62 Fed. Appx. 399, 400 n. 3 (2d Cir.2003), *cert. denied,* 540 U.S. 1113 (2004), several other circuit courts and several district courts in this circuit have held that such claims are cognizable. *See, e.g., Fox v. General Motors Corp.,* 247 F.3d 169, 176 (4th Cir.2001); *Flowers v. Southern Reg'l Physician Servs. Inc.,* 247 F.3d 229, 232-35 (5th Cir.2001); *Hendler v. Intelecom USA, Inc.,* 963 F.Supp. 200, 208 (E.D.N.Y.1997) (analyzing ADA work environment claim under the same standard as in Title VII); *Hudson v. Loretex Corp.,* 1997 WL 159282, at \*2-3 (N.D.N.Y. April 2, 1997). It is unnecessary to reach this issue because the court finds that plaintiff would not be able to establish a *prima facie* case of hostile work environment under the standards utilized in Title VII cases, and this claim would not survive a motion for summary judgment.

A work environment is hostile " '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Torres v. Pisano,* 116 F.3d 625, 630-31 (2d Cir.) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)), *cert. denied,* 522 U.S. 997 (1997). When analyzing a hostile work environment claim, courts should consider the totality of the circumstances, including " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.' " *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767-68 (2d Cir.1998) (quoting *Harris,* 510 U.S. at 23). Generally, isolated incidents of harassment do not give rise to a hostile work environment claim; instead, the incidents must be "sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997) (internal citations and quotation marks omitted).

Here, the conduct alleged by plaintiff is not so severe or pervasive as to have altered his working conditions. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80-81 (1998) (noting the Supreme Court's desire to set the standards for a viable hostile work environment claim sufficiently high to prevent converting Title VII into a "general civility code" for the workplace). In his proposed amended complaint, plaintiff states that he was not given sufficient time to implement his action plan, he was expected to present the plan at a time when he was scheduled for surgery, and then he was discharged before he could meet with the industrial psychologist. These incidents are not sufficient to meet the standard for an actionable claim of hostile work environment based upon disability. Plaintiff asked for and was allowed additional time to complete the action plan due to his scheduled carpal tunnel surgery. Moreover, the timing of his discharge, while unfortunate, does not constitute "discriminatory intimidation, ridicule, and insult." *Torres v. Pisano,* 116 F.3d at 630-31. The alleged conduct is not "so severe or egregious" as to alter the terms and conditions of plaintiff's employment. Accordingly, the claim would not survive a motion to dismiss, and the motion to amend the complaint to add this claim would be futile.

**\*15** Finally, plaintiff seeks to add claims for retaliation under the ADA, NYSHRL, and FMLA, stating that he was not provided severance pay, outplacement services, or references in retaliation for bringing his EEOC charge. To establish a *prima facie* case of retaliation under the ADA, NYSHRL, and FMLA, plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action. *Potenza v. City of New York,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)

(Cite as: 2006 WL 931870 (W.D.N.Y.))

365 F.3d 165, 167 (2d Cir.2004); *Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 130 (2d Cir.1996), *cert. denied,* 520 U.S. 1228 (1997). Proof of causal connection can be established: 1) indirectly by showing that the protected activity was followed closely by discriminatory treatment; 2) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or 3) directly through evidence of retaliatory animus directed against a plaintiff by the defendant. *DeCintio v. Westchester County Medical Ctr.,* 821 F.2d 111, 155 (2d Cir.), *cert. denied,* 484 U.S. 965 (1987).

Here, plaintiff is unable to establish a *prima facie* case of retaliation. While he engaged in protected activity-*i.e.,* the filing of an administrative charge with the EEOC, the charge was filed in October 1996, months after he was denied severance pay and outplacement services. Thus, it cannot be said that defendant retaliated against plaintiff by withholding severance pay and other benefits as a result of his protected activity. The requisite causal connection for retaliation claims may be established only if the protected activity preceded the claimed retaliation. *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980); *Cronin v. ITT Corp.,* 737 F.Supp. 224, 230 (S.D.N.Y.1990).

Additionally, the payment of severance pay and provision of outplacement counseling services was contingent on plaintiff's agreement to sign a release of claims, which plaintiff refused to sign. As plaintiff was not otherwise entitled to receive severance pay and benefits, the award of severance pay and benefits was a privilege rather than a right. *See Jackson v. Lyons Falls Pulp & Paper, Inc.,* 865 F.Supp. 87, 95 (N.D.N.Y.1994). As such, defendant's refusal to grant plaintiff severance pay and benefits cannot be characterized as an adverse action. Instead, defendant merely declined to enlarge plaintiff's rights to compensation. Such a decision does not form the basis of a retaliation claim. *Id.; Cronin v. ITT Corp.,* 737 F.Supp. at 231 (granting summary judgment on retaliation claim where defendant's refusal to pay severance to which plaintiff not legally entitled was based on plaintiff's refusal to sign a release). Finally, the record indicates that it was the defendant's policy not to provide references to a discharged employee. *See* Deposition of Donald

Christiansen, p. 57. Plaintiff cannot show that defendant treated him differently than any other discharged employee, and cannot show that the denial of a reference was in retaliation for his participation in protected activity. Accordingly, plaintiff's retaliation claims would be futile.

**\*16** As amendment of the complaint would be futile, the motion for leave to amend is DENIED.

### CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (Item 66) is GRANTED, plaintiff's motion for an adverse inference (Item 83) is DENIED, plaintiff's motion to amend the complaint (Item 88) is DENIED, and the complaint is dismissed.

So ordered.

W.D.N.Y.,2006.

Matya v. Dexter Corp.
Not Reported in F.Supp.2d, 2006 WL 931870 (W.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 118379 (S.D.N.Y.)
(Cite as: 1997 WL 118379 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Jeanette HARMON, Plaintiff,
v.
Marvin T. RUNYON, Postmaster General, United
States Postal Service, Defendant.
**No. 96 CIV. 6080(SAS).**

Mar. 17, 1997.

Jeanette Harmon, pro se.

Aaron Katz, Asst. U.S. Atty., New York, N.Y., for
Defendant.

*MEMORANDUM ORDER*

SCHEINDLIN, District Judge.

**\*1** On August 12, 1996, plaintiff filed this action pursuant
to 42 U.S.C. §§ 2000e to 2000e-17 and § 29 U.S.C. §§
621 to 634 for employment discrimination on the basis of
her age, race and gender. On November 21, 1996, plaintiff
applied for the appointment of counsel on the grounds that
she lacks sufficient knowledge of the law to continue to
maintain her claims *pro se.* For the reasons set forth
below, plaintiff's application for appointment of counsel is
denied with leave to renew.

Discussion As an initial matter, there is no constitutional
right to appointed counsel in civil cases. Moreover, due
to the scarcity of volunteer attorneys, the Second Circuit
has cautioned against the routine appointment of *pro
bono* counsel in civil cases. *See Cooper v. A. Sargenti
Co. Inc., 877 F.2d 170, 172 (2d Cir.1989).* In *Hodge v.
Police Officers, 802 F.2d 58, 61-62 (2d Cir.1986),* cert.

*denied,* 502 U.S. 986, 112 S.Ct. 596, 116 L.Ed.2d 620
(1991), the Second Circuit set forth the factors courts
should consider in deciding whether to grant a *pro se*
plaintiff's request for the appointment of counsel. As a
threshold requirement, the court must decide whether
the plaintiff's claim "seems likely to be of substance."
*Hodge,* 802 F.2d at 61. If the plaintiff meets this
requirement, the court must next consider factors
including:

the indigent's ability to investigate the crucial facts,
whether conflicting evidence implicating the need for
cross-examination will be the major proof presented to
the fact finder, the indigent's ability to present the case,
the complexity of the legal issues and any special reason
in that case why appointment of counsel would be more
likely to lead to a just determination.
Id. at 61-62. As plaintiff is not indigent, the court is also
required to consider plaintiff's efforts to obtain a lawyer.
*Cooper,* 877 F.2d at 172, 174.

In the instant case, plaintiff has not met the threshold
requirement set forth in *Hodge.* Plaintiff has presented no
evidence whatever to support her claims regarding
defendant's allegedly improper actions. Without presenting
any evidence to support her claims, Harmon cannot meet
the first requirement of the *Hodge* test described above.
Accordingly, plaintiff's application is denied.

Given the early stage of these proceedings, it is possible
that plaintiff eventually will be able to provide some
evidence to support her claims. Plaintiff's application is
therefore denied with leave to renew. If plaintiff wishes to
apply again for the appointment of counsel, she must make
some attempt to refer to evidence which supports her
claims.

SO ORDERED.

S.D.N.Y.,1997.
Harmon v. Runyon
Not Reported in F.Supp., 1997 WL 118379 (S.D.N.Y.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 118379 (S.D.N.Y.)
(Cite as: 1997 WL 118379 (S.D.N.Y.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.